Case No. 23-5493

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

Robert Holman,

*Plaintiff – Appellant,*

v.

Thomas Vilsack, et al.,

*Defendants – Appellees.*

On Appeal from the United States District Court
for the Western District of Tennessee, No. 1:21-cv-02085 (Anderson, S.)

## BRIEF OF APPELLANT ROBERT HOLMAN

William E. Trachman
MOUNTAIN STATES LEGAL
FOUNDATION
2596 S. Lewis Way
Lakewood, CO
(303) 292-2021
wtrachman@mslegal.org

Braden H. Boucek
Kimberly S. Hermann
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Rd., Ste. 104
Roswell, GA 30075
(770) 977-2131
bboucek@southeasternlegal.org
khermann@southeasternlegal.org

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................... ii

TABLE OF AUTHORITIES ............................................................... iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT ...................... ix

STATEMENT OF JURISDICTION ..................................................... 1

STATEMENT OF THE ISSUE ............................................................ 1

STATEMENT OF THE CASE ............................................................. 2

I.     Congress enacted a race-based loan forgiveness and payment
       scheme in Section 1005 ............................................................. 2

II.    Plaintiff-Appellant Robert Holman ............................................ 4

III.   The Proceedings Below ............................................................. 4

IV.    Congress repealed Section 1005 ................................................ 6

STANDARD OF REVIEW ................................................................. 7

SUMMARY OF ARGUMENT ............................................................ 8

ARGUMENT ..................................................................................... 10

I.     Plaintiff is entitled to attorney fees and costs under EAJA as the
       prevailing party. ....................................................................... 10

       A.    Holman was the prevailing party ...................................... 12

             1.    The preliminary injunction was an emphatic indication
                   of likely success on the merits ................................. 16

             2.    The preliminary injunction was material because it was
                   a court-ordered change in the relationship between the
                   parties. ..................................................................... 18

             3.    The preliminary injunction was enduring. ............... 20

4.     Disallowing attorney fees in this case would encourage gamesmanship and undermine important congressionally-designed purposes behind fee shifting. ................................................... 25

II.    Plaintiff meets the other EAJA factors. ....................................... 28

A.    Plaintiff is a party.............................................................. 29

B.    The government's position was not substantially justified.    29

C.    No special circumstances justify denying a fee award....... 32

CONCLUSION ...................................................................................... 34

CERTIFICATE OF COMPLIANCE........................................................ 35

CERTIFICATE OF SERVICE.............................................................. 36

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS    37

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Acosta v. Cathedral Buffet, Inc.*,
  892 F.3d 819 (6th Cir. 2018) ............................................................. 33

*Adarand Constr. v. Pena*,
  515 U.S. 200 (1995) ......................................................................... 23

*Berger v. Medina City Sch. Dist.*,
  348 F.3d 513 (6th Cir. 2003) ............................................................. 12

*Bobay v. Wright State Univ.*,
  No. 22-4007, 2023 U.S. App. LEXIS 14825 (6th Cir. June 13,
  2023) .................................................................................... 16, 17, 18

*Bonnell v. Lorenzo*,
  241 F.3d 800 (6th Cir. 2001) ............................................................. 23

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum.*,
  532 U.S. 598 (2001) ................................................................. 12, 19, 20

*Comm'r, INS v. Jean*,
  469 U.S. 154 (1990) ......................................................................... 10

*Comm'r, INS v. Jean*,
  496 U.S. 154 (1990) ..................................................................... 26, 30

*Delta Eng'g v. United States*,
  41 F.3d 259 (6th Cir. 1994) ............................................................... 29

*Dubuc v. Green Oak Twp.*,
  312 F.3d 736 (6th Cir. 2002) ......................................................... 16, 17

*Faust v. Vilsack*,
  2021 U.S. Dist. LEXIS 125062 (E.D. Wis. July 6, 2021) ................... 5

*Faust v. Vilsack*,
  No. 21-C-548, 2021 U.S. Dist. LEXIS 108719 (E.D. Wis. June 10, 2021)   5

*G.S. v. Lee*,
  No. 22-5969, 2023 U.S. App. LEXIS 21419 (6th Cir. Aug. 14, 2023) .... *Passim*

*Grason Elec. Co. v. NLRB*,
  951 F.2d 1100 (9th Cir. 1991) ........................................................... 32

*Griffith v. Comm'r of Soc. Sec.*,
  987 F.3d 556 (6th Cir. 2021) ............................................................ 29, 30, 31

*Hall v. Cole*,
  412 U.S 1 (1973) ................................................................................ 27

*Heckler v. Mathews*,
  465 U.S. 728 (1984) .......................................................................... 23, 24

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .......................................................................... 12, 13

*Hewitt v. Helms*,
  482 U.S. 755 (1987) .......................................................................... 12

*Holman v. Vilsack*,
  No. 21-01085, 2021 U.S. Dist. LEXIS 127334 (W.D. Tenn. July 8,
  2021) .................................................................................................. 3

*Koss v. Sullivan*,
  982 F.2d 1226 (8th Cir. 1993) ........................................................... 31

*McQueary v. Conway*,
  614 F.3d 591 (6th Cir. 2010) ............................................................. *Passim*

*Miller v. Caudill*,
  936 F.3d 442 (6th Cir. 2019) ............................................................. *Passim*

*Miller v. Vilsack*,
  No. 4:21-cv-0595-O, 2021 U.S. Dist. LEXIS 264778 (N.D. Tex. July 1,
  2021) .................................................................................................. 5

*N.Y. State Rifle & Pistol Assoc. v. City of N.Y.*,
  140 S. Ct. 1525 (2020) ...................................................................... 28

*Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*,
  972 F.2d 669 (6th Cir. 1992) ............................................................. 32

*Ne. Fla. Chapter, of Assoc. Gen. Cont. of Am. v. City of Jacksonville*,
  508 U.S. 656 (1993) .......................................................................... 23

*Obama for Am. v. Husted*,
  67 F.3d 423 (6th Cir. 2012) ............................................................... 23

*Occupy Nashville v. Haslam*,
No. 3:11-cv-01037, 2015 U.S. Dist. LEXIS 104550 (M.D. Tenn. Aug. 10, 2015) ........................................................................................... 33

*Pierce v. Underwood*,
487 U.S. 552 (1988) ........................................................... 29, 30, 31

*Planned Parenthood Great Plains v. Williams*,
863 F.3d 1008 (8th Cir. 2017) ............................................................ 25

*Planned Parenthood Sw. Ohio Region v. Dewine*,
931 F.3d 530 (6th Cir. 2019) .................................................... 13, 17, 22

*Riverside v. Rivera*,
477 U.S. 561 (1986) .............................................................. 26, 27

*Roberts v. Neace*,
65 F.4th 280 (6th Cir. 2023) ............................................... *Passim*

*Sakhawati v. Lynch*,
839 F.3d 476 (6th Cir. 2016) ............................................................ 32

*Scarborough v. Principi*,
541 U.S. 401 (2004) ........................................................................ 11

*Shaw v. Reno*,
509 U.S. 630 (1993) ........................................................................ 23

*Sole v. Wyner*,
551 U.S. 74 (2007) .......................................................................... 17

*Stinnie v. Holcomb*,
No. 20-71093, 2023 U.S. App. LEXIS 20327 (4th Cir. Aug. 7, 2023) ......................................................................................... 25, 28

*Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll. (SFFA)*,
143 S. Ct. 2141 (2023) ......................................................... 26, 27, 32

*Taucher v. Brown-Hruska*,
396 F.3d 1168 (D.C. Cir. 2005) ........................................................ 30

*Tenn. State Conf. of NAACP v. Hargett*,
53 F.4th 406 (6th Cir. 2022) ............................................... *Passim*

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
    489 U.S. 782 (1989)............................................................ 12

*Townsend v. Soc. Sec. Admin.*,
    486 F.3d 127 (6th Cir. 2007).............................................. 10

*Ultima Servs. Corp. v. U.S. Dep't of Agric.*,
    2023 U.S. Dist. LEXIS 124268 (E.D. Tenn., Jul. 19, 2023)............... 32, 33

*Vitolo v. Guzman*,
    999 F.3d 353 (6th Cir. 2021).............................................. *Passim*

*Watson v. Cnty. of Riverside*,
    300 F.3d 1092 (9th Cir. 2002)............................................. 17

*Wynn v. Vilsack*,
    545 F. Supp. 3d 1271 (M.D. Fla. 2021)................................... 5

**<u>Statutes</u>**

7 U.S.C. § 1921 ................................................................... 6

28 U.S.C. § 1291.................................................................. 1

28 U.S.C. §§ 1331................................................................. 1

28 U.S.C. §§ 1343................................................................. 1

28 U.S.C. § 2412.................................................................. ix

28 U.S.C. § 2412 (EAJA) ......................................................... 7

28 U.S.C. § 2412(a) .............................................................. 11

28 U.S.C. § 2412(a)(2)(G) ........................................................ 10

28 U.S.C. § 2412(d)(1)(A) ........................................................ 10

28 U.S.C. § 2412(d)(2)(B) ........................................................ 29

Pub. L. No. 96-481 Section 202(c)(1), 94 Stat. 2321, 2325 (1980)........ 11

Pub. L. No. 117-169.............................................................. 6

Pub. L. No. 117-2, § 1005 (2021) (ARPA).......................................... 2

**<u>Rules</u>**

Fed. R. App. P. 32................................................................ 35

Sixth Circuit Rule 28(b).......................................................... 37

**Regulations**

Notice of Funds Availability; American Rescue Plan Act of 2021 Section 1005
   Loan Payment (ARPA),
   86 Fed. Reg. 28329 (May 26, 2021).................................................    3

**Other Authorities**

American Rescue Plan Debt Payments FAQ, Question 1 .....................    3

Ellyn Ferguson, Roll Call, Civil rights lawyer Crump sues US over repealed
   aid to Black farmers (Oct. 12, 2022)..................................................    20

H.R. Rep. No. 1418, at 11 ....................................................................    32

Oral Argument before the U.S. Supreme Court in *Department of Education v.
   Brown*, No. 22-535, 7:23-8:5 (Feb. 28, 2023)....................................    26

**STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Appellant Holman is a Tennessee farmer who obtained a preliminary injunction that prevented congressionally-authorized Equal Protection Clause violations from occurring, but his case was dismissed after Congress repealed the enjoined statute more than a year later. Despite obtaining the preliminary injunction that secured Holman's rights for as long as he needed it to—over thirteen months—Holman's motion for attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, was denied. Whether Appellant Holman is a "prevailing party," and is therefore entitled to an attorney fee award, is a significant question of law. Oral argument would therefore likely be materially helpful to the Court in considering the issues presented.

## STATEMENT OF JURISDICTION

No party disputes that the district court had jurisdiction to hear Plaintiff-Appellant Robert Holman's claims. Holman alleged that Thomas Vilsack and Zach Ducheneaux, acting in their official capacities for the United States Department of Agriculture, violated his constitutional rights protected by the Fifth Amendment to the United States Constitution. (Compl., R. 1, Page ID # 1-17); *see* 28 U.S.C. §§ 1331, 1343. The preliminary injunction by the district court remained in effect for more than a year until the district court entered a final judgment on September 15, 2022, after the parties agreed to dismiss the case pending a motion for attorney fees. (J., R. 84, Page ID # 1286.) The district court denied Holman's request for attorney fees on April 4, 2023. (Order Att'y Fees, R. 96, Page ID # 1637-45.) Holman filed a timely notice of appeal on May 26, 2023. (Notice of Appeal, R. 97, Page ID # 1646-47.) This Court has jurisdiction to hear Holman's appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

This case involves a congressional statute—Section 1005 of the American Rescue Plan Act—that provided up to 120% debt relief to certain farmers and ranchers, based on their race. In July 2021, the district court entered a preliminary injunction that barred the implementation of Section 1005, holding, among other things, that Holman was likely to succeed on the merits of his claim that Section 1005 was unconstitutional because it discriminated against him because of his race.

1

The district court also ruled that Section 1005's discriminatory treatment caused ongoing, irreparable harm that necessitated a preliminary injunction. (Order Prelim. Inj., R. 41, Page ID # 876-77.) Over a year after Holman preserved his right to equal protection of the laws, Congress repealed Section 1005. The parties agreed to dismiss the case before the district court, and to litigate the issue of attorney fees. Subsequently, the district court ruled that Holman was not a "prevailing party" for attorney fee purposes under the Equal Access to Justice Act (EAJA), despite the fact that Holman obtained a preliminary injunction that secured his rights for over a year.

This appeal presents the following question: Was Holman the "prevailing party" when his preliminary injunction was based on his likelihood of success, lasted for over a year until Congress repealed the offending statute, was never reversed, was not even appealed, and prevented Holman from suffering discrimination during the period between the preliminary injunction and the repeal of Section 1005?

## STATEMENT OF THE CASE

**I.     Congress enacted a race-based loan forgiveness and payment scheme in Section 1005.**

On March 11, 2021, President Biden signed into law the American Rescue Plan Act of 2021. Pub. L. No. 117-2, § 1005 (2021) (ARPA). Under Section 1005 of ARPA, the Secretary of Agriculture was directed to "pay off" the outstanding farm loans of each "socially disadvantaged farmer or rancher. . . in an amount up to 120 percent of the outstanding indebtedness . . . as of January 1, 2021." § 1005(a)(2).

2

The additional 20% was to cover tax liabilities that would arise from the benefit of the loan payoffs. (Order Prelim. Inj., R. 41, Page ID # 857.)

"Socially disadvantaged" was defined based on specific racial categories. Under the United States Department of Agriculture's (USDA) definition, the term meant "'Black, American Indian/Alaskan Native, Hispanic, or Asian, or Hawaiian/Pacific Islander.'" *Holman v. Vilsack*, No. 21-01085, 2021 U.S. Dist. LEXIS 127334, at *2 (W.D. Tenn. July 8, 2021) (quoting *American Rescue Plan Debt Payments FAQ*, Question 1, https://www.farmers.gov/americanrescueplan/arp-faq); *see* Notice of Funds Availability; American Rescue Plan Act of 2021 Section 1005 Loan Payment (ARPA), 86 Fed. Reg. 28329 (May 26, 2021).

White farmers were categorically excluded. (Order Prelim. Inj., R. 41, Page ID # 857.) Thus, based solely on skin color, farmers like Holman were ineligible to have their farm loans fully paid off, and receive the 20% gross for taxes, "without any consideration of need." (Id.)

According to the government, the law was intended to remedy "the lingering effects of the unfortunate but well documented history of racial discrimination" in USDA farm loan lending programs—a reprehensible historic practice that Holman never disputed. (Id. at Page ID # 858 n.5.) Notably though, the historic victims of this discrimination had already received more than $2.4 billion in settlements from the government when Section 1005 was enacted, (id. at Page ID # 859-60 (listing

3

settlements). Yet the government maintained those payments were insufficient. (Id. at Page ID # 860.) The government also contended that Section 1005 was intended to remedy previous pandemic relief that disproportionately went to white farmers. (Id. at Page ID # 862.)

## II.    Plaintiff-Appellant Robert Holman

Holman is a farmer in West Tennessee. (Decl. of Robert Holman, R. 7-3, Page ID # 72.) He raises his family and works with his father on a small family farm in Union City (Obion County). (Id.) He is white. (Id. at Page ID # 72-73.)  He had two outstanding farm loans when Section 1005 took effect. (Id. at Page ID # 72.) "The Government did not dispute that Holman, as the holder of two USDA direct farm loans, would have been eligible for debt relief if he were a member of one of the specified racial classifications." (Id. at Page ID # 857.)

## III.   The Proceedings Below

Holman filed suit on June 2, 2021. (Compl., R. 1, Page ID # 1.) On June 6, 2021, Holman moved for a preliminary injunction, alleging that Section 1005 violated his constitutional right to equal protection, as guaranteed to him under the Due Process Clause of the Fifth Amendment. (Mot. Prelim. Injunction, R. 7, Page ID # 29-30.) The district court held a hearing on June 29, 2021. (Order Prelim. Inj., R. 41, Page ID # 858.) On July 8, 2021, the district court granted Holman's motion, and enjoined disbursement of Section 1005 funds nationwide. (Id. at Page ID # 856-

4

880.) Challenges to Section 1005 were pending in other district courts (though none were in the Sixth Circuit). But when Holman filed his motion for injunctive relief on June 6, 2021, no court had enjoined the program. On June 10, 2021, Section 1005 was temporarily halted by a district court in Wisconsin, which issued a temporary restraining order.[1] Before Holman's motion could be considered on June 29, 2021, district courts in two other circuits issued preliminary injunctions, one of which applied nationwide. (Order Att'y Fees, R. 96, Page ID # 1638) (citing *Wynn v. Vilsack*, 545 F. Supp. 3d 1271 (M.D. Fla. 2021) (nationwide preliminary injunction on June 23, 2021);[2] *Miller v. Vilsack*, No. 4:21-cv-0595-O, 2021 U.S. Dist. LEXIS 264778 (N.D. Tex. July 1, 2021). At the time that the district court held its hearing on June 29, 2021, and entered a preliminary injunction on July 8, 2021 (Order Prelim. Inj., R. 41, Page ID # 858, 877-79), the government was still within the period to appeal the other injunctions, and gave the district court "no assurance that they will not appeal those decisions." (Id. at Page ID # 876.)

The district court in *Miller* also certified a class action. *See Miller*, 2021 U.S. Dist. LEXIS 264778, at *21-23, *35. According to the district court, Holman fell

---

[1] *Faust v. Vilsack*, No. 21-C-548, 2021 U.S. Dist. LEXIS 108719 (E.D. Wis. June 10, 2021). The TRO issued in *Faust* was later dissolved on July 6, 2021. *Faust v. Vilsack*, 2021 U.S. Dist. LEXIS 125062, at *12 (E.D. Wis. July 6, 2021).
[2] On August 1, 2023, a magistrate judge recommended a denial of attorney fees in *Wynn*. *See Wynn*, 3:21-cv-00514, ECF No. 110 (M.D. Fla. Aug. 1, 2023). Objections to the recommendation have not yet been considered.

5

under those classes. (Order Att'y Fees, R. 96, Page ID # 1638.) The government requested a stay, arguing that because Holman fell under the classes, whether he wanted to or not, he should be forced to wait on the *Miller* case. (Order, R. 49, Page ID # 1027–29.) The district court initially denied this request on August 2, 2021. (Id.) The government subsequently filed a renewed motion to stay on February 1, 2022. (Defs.' Renewed Mot. Stay, R. 77, Page ID # 1219.) On February 16, 2022, the district court relented, staying Holman's case pending resolution of the *Miller* class action. (Order, R. 79, Page ID # 1273.)

## IV.     Congress repealed Section 1005.

None of the challenges to Section 1005 reached a final merits ruling because on August 16, 2022, President Biden signed a statute entitled the Inflation Reduction Act (IRA) into law. *See* Pub. L. No. 117-169. Section 22008 of the IRA is entitled "Repeal of Farm Loan Assistance" and states: "Section 1005 of the American Rescue Plan Act of 2021 (7 U.S.C. § 1921 note; Public Law 117-2) is repealed." *Id*.

On September 14, 2022, the parties entered a joint stipulation of dismissal, with Holman reserving the right to seek costs and attorney fees. (Joint Stip., R. 83, Page ID # 1284.) The district court entered a judgment on September 15, 2022, dismissing the case without prejudice. (J., R. 84, Page ID # 1286.)

Holman then requested attorney fees and costs, contending that he was the prevailing party because the merits-based preliminary injunction was never

dissolved until Congress repealed the challenged provision. (Pl.'s Mot. Attorney Fees and Mem. Supp., R. 85, 85-1, Page ID # 1287-1304.) He requested a total of $48,592 in fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA). (Supp. Br., R. 95, Page ID # 1625.)

On April 4, 2023, the district court determined that the repeal of Section 1005 meant that Holman was not the prevailing party. (Order Att'y Fees, R. 96, Page ID # 1637-45.) The district court ruled that Holman did not prevail in the case, despite indefinitely preserving his equal protection rights under the preliminary injunction, because he received "nothing lasting," or no "irrevocable benefit." (Id. at Page ID # 1645.)

Holman timely appealed on May 26, 2023. (Notice of Appeal, R. 97, Page ID # 1646–47.)

## STANDARD OF REVIEW

Holman appeals the district court's order denying attorney fees under EAJA, based on the finding that he was not a prevailing party. This Court reviews a district court's prevailing party determinations *de novo*. *See Tenn. State Conf. of NAACP v. Hargett*, 53 F.4th 406, 410 (6th Cir. 2022).

## SUMMARY OF ARGUMENT

Holman's preliminary injunction entitled him to attorney fees under the factors set forth by this Court when determining whether plaintiffs who obtain an injunction that is later mooted by a governmental cessation are the prevailing party.

As an initial matter, Holman's injunction meets the first, and most important, factor. The injunction was based on an emphatic likelihood of success on the merits. There was no chance—in this case or any other like it—that the result would have been different, had the case continued. The government did not even appeal the preliminary injunction, even though its 4-billion-dollar, congressionally enacted program had just been halted nationwide. This alone makes Holman the prevailing party.

Second, the preliminary injunction changed the relationship between the parties. The government was already spending the discriminatory funds. The government only stopped because courts made it stop.

Third, Holman's injunction was enduring. It was never vacated or reversed. It lasted for over thirteen months, until the government repealed the unconstitutional law—exactly as long as it was needed. As this Court has recently held, there is no support in this Circuit for a rule that fees are only available when a plaintiff has obtained a one-time, irrevocable benefit, such as the right to participate in a specific protest. Nevertheless, Holman got an enduring benefit when the injunction halted an

injury—unequal treatment towards Holman's fellow farmers who met Section 1005's racial criteria—that this Court had just called "irreparable" only one month earlier. *See Vitolo v. Guzman*, 999 F.3d 353, 360, 365 (6th Cir. 2021) (preliminary injunction appropriate for different part of ARPA because of risk of "irreparable injury").

Moreover, Holman's injunction prevented other injuries from occurring that could never be remedied. In a challenge to the spending of a finite pot of funds, attorneys must move swiftly to stop funds from being entirely depleted, potentially mooting the action altogether. And the corollary is that if the government can prevent a party from obtaining attorney fees simply by repealing a statute once an injunction shows it what the likely result will be in court, it would encourage gamesmanship on the part of the government, and discourage civil rights litigation.

In addition to being the party who prevailed, Holman meets the other EAJA factors as well. The government's defense of its odious discrimination—which again, did not even include an appeal of the injunction of a federal statute—lacked any substantial justification. And no special circumstances, whatever they might be, would make a fee award unjust. While the district court opted not to reach these other factors, in the interests of judicial economy, Appellant Holman asks this Court to rule on these issues.

9

**ARGUMENT**

**I.    Plaintiff is entitled to attorney fees and costs under EAJA as the prevailing party.**

Ordinarily, under the "American rule," a party bears his or her own litigation costs. *McQueary v. Conway*, 614 F.3d 591, 597 (6th Cir. 2010). Fees, however, may be awarded to a prevailing party when required by statute. *Id*. EAJA is one such statute. Under EAJA:

> a court *shall* award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).

EAJA allows plaintiffs to recover attorney fees and expenses when (1) the fee applicant is a prevailing party, (2) the government's position was not substantially justified, (3) no special circumstances make an award unjust, and (4) the fee applicant files the requisite application within thirty days of a final judgment.[3] *Townsend v. Soc. Sec. Admin.*, 486 F.3d 127, 129-30 (6th Cir. 2007) (citing *Comm'r, INS v. Jean*, 469 U.S. 154, 158 (1990)).

Congress enacted EAJA to "diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an

---

[3] A "'final judgment' means a judgment that is final and not appealable and includes an order of settlement." 28 U.S.C. § 2412(a)(2)(G).

award of attorney fees, expert witness fees, and other costs against the United States." *See* EAJA, Pub. L. No. 96-481 Section 202(c)(1), 94 Stat. 2321, 2325 (1980), reprinted in 1980 U.S. Code Cong. & Admin. News 2325–33. "The burden of establishing 'that the position of the United States was substantially justified,' § 2412(d)(1)(A) indicates and courts uniformly have recognized, must be shouldered by the Government." *Scarborough v. Principi*, 541 U.S. 401, 414 (2004).

EAJA separately provides for costs. *See* 28 U.S.C. § 2412(a). Unlike fees, the government cannot avoid costs by showing that its position was justified or that special circumstances would make an award unjust. *Id.*

The district court erred by ruling that Holman was not the prevailing party on the basis that the injunction did not allow him to participate in a one-time irrevocable opportunity. (Order Att'y Fees, R. 96, Page ID # 1645.) Indeed, announcing a rule that plaintiffs may never recover attorney fees in this situation would provide the government with a roadmap for gamesmanship: it may enact an indeterminate number of race-based discriminatory subsidy plans, and simply repeal the ones that are preliminarily enjoined, without consequences. In such a way, a truly colorblind republic would remain out of reach.

Separately, Holman asks this Court to reach the other three EAJA factors, *infra* Sec. II, which the district court declined to do. (Id. at Page ID # 1640 n.2.)

**A.    Holman was the prevailing party.**

The preliminary injunction (1) was an emphatic indication of success on the merits, (2) changed the relationship between the parties by halting the irreparable injury inflicted by Section 1005, and (3) was never dissolved. It qualifies.

Plaintiffs are prevailing "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[4] To be the prevailing party, a plaintiff must "receive at least some relief on the merits of his claim." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001) (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)).

The "touchstone" of prevailing party status is "the material alteration of the legal relationship of the parties." *Berger v. Medina City Sch. Dist.*, 348 F.3d 513, 526 (6th Cir. 2003) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989)). The change in relationship must be judicially sanctioned; plaintiffs do not obtain prevailing party status based merely on the ultimate decision of the government to change the offending policy in response to the litigation, without more. *See Buckhannon*, 532 U.S. at 605 (rejecting the "catalyst

---

[4] The district court correctly recognized that the standards under Section 1988 fee awards are "generally applicable" in all cases in which Congress awards fees to prevailing parties, including EAJA. (Order Att'y Fees, R. 96, Page ID # 1639 n.1 (citing cases).)

theory"). Yet a party need not obtain a final judgment to be the prevailing party. Otherwise, a federal entity—such as an Executive Branch agency—could prevent parties from seeking fees and costs simply by repealing statutes between a court order and an entry of judgment, after a preliminary injunction leaves no doubt where things are headed.

Instead, "[a] party achieves a material alteration [in relationship] when it 'succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 538 (6th Cir. 2019) (quoting *Hensley*, 461 U.S. at 433).

Whether a plaintiff who obtains a preliminary injunction but not a final judgment is a prevailing party is a question that often returns to this Court. *See, e.g., McQueary*, 614 F.3d at 596 (calling it a "thorny question"); *Planned Parenthood*, 931 F.3d at 540–41 (awarding fees despite plaintiff not obtaining the "primary relief" it sought or showing anyone "relied upon the injunction"); *Miller v. Caudill*, 936 F.3d 442,448-450 (6th Cir. 2019) (awarding fees to litigants who challenged refusal to issue same-sex marriage licenses, even though some did not ultimately marry, because they obtained the right to equal treatment); *Hargett*, 53 F.4th at 410-411 (awarding fees where plaintiff obtained seven-month injunction during which their right to conduct voting activity was secured); *Roberts v. Neace*, 65 F.4th 280, 284-286 (6th Cir. 2023) (ruling in favor of plaintiffs challenging COVID-19

13

restrictions on religious activities, after obtaining injunctions lasting six months and over one year); *G.S. v. Lee*, No. 22-5969, 2023 U.S. App. LEXIS 21419 at *18 (6th Cir. Aug. 14, 2023) (ruling in favor of students challenging executive order allowing for opt-out of mask mandates lasting from two to sixth months).

In *McQueary*, this Court ruled that "the *preliminary* nature of the relief does not by itself provide a ground for *never* granting fees," 614 F.3d at 600, and that, conversely, preliminary-injunction winners are not "*always* eligible for fees." *Id.* The requirement that preliminary injunctions not merely "catalyze" the government to voluntary action and preliminary nature will generally "counsel against fees." *Id.* at 601. Thus, this Court has recognized that fees under these circumstances lay on a "spectrum." *Hargett*, 53 F.4th at 410. When a preliminary injunction is based on likelihood of success and changes the relationship of the parties in a "material and enduring way," then it "may well suffice." *Roberts*, 65 F.4th at 284.

This Court recently articulated the test for when fees for preliminary injunctions that are mooted by governmental cessation are appropriate. An "emphatic" indication of probable success on the merits that all but concludes the case "as a practical matter" confers prevailing party status. *Hargett*, 53 F.4th at 411 (quoting *McQueary*, 614 F.3d at 598). Courts should award fees if the plaintiff obtained "some" court-ordered relief, that was *material*, meaning it "modif[ied] the defendant's behavior toward him," and *enduring*, meaning that it was never

"reversed, dissolved, or undone by the final decision in the same case." *Id*. at 410;
*see also Caudill*, 936 F.3d at 448–49.

Although the district court never revisited its finding that Holman would almost certainly prevail in his challenge to Section 1005, it nevertheless determined that the preliminary injunction did not make Holman the prevailing party for purposes of attorney fees. The district court contrasted Holman's relief with injunctions that allow protestors to participate in one-time events, like exercising their First Amendment rights "at a specific time and place," (Order Att'y Fees, R. 96, Page ID # 1642–43 (citing *McQueary*, 614 F.3d at 599)) or conducting voter registration drives. (Id. at Page ID #1644 (citing *Hargett*, 53 F.4th at 408).) According to the district court, Holman's injunction did not meet the "enduring" factor because it did not enable him to participate in a similar one-time irrevocable opportunity. (Id. at Page ID # 1644-45.) The district court's categorical approach excluded all preliminary injunction recipients except for a narrow subclass of those that allow a plaintiff to participate in a one-time irrevocable opportunity.

Holman was the prevailing party because the preliminary injunction was an emphatic indication of likely success, it changed the relationship between the parties, and it was never undone or dissolved. The district court erred by ruling that Plaintiff must show that the preliminary injunction provided him with a one-time irrevocable opportunity. *See G.S.*, 2023 U.S. App. LEXIS 21419, at *16. ("Notably, we have not

15

imposed this one-time rule in every case."). And in any event, Holman did get an irrevocable benefit when the preliminary injunction halted an ongoing equal protection violation, even though this is not a required showing.

### 1.    The preliminary injunction was an emphatic indication of likely success on the merits.

The preliminary injunction was an "emphatic and an 'unambiguous indication of probable success on the merits of [his] claims.'" *Hargett*, 53 F.4th at 411 (quoting *McQueary*, 614 F.3d at 598). After thoroughly considering all of the government's arguments that Section 1005 survived strict scrutiny, the district court concluded that it failed, and that Holman was likely to prevail. (Order Prelim. Inj., R. 41, Page ID # 872.)

Holman qualifies for fees on this basis alone. This unambiguous finding of likely success "vault[s] a litigant over the § 1988 bar." *Bobay v. Wright State Univ.*, No. 22-4007, 2023 U.S. App. LEXIS 14825 at *4–5 (6th Cir. June 13, 2023) (citing *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 753 (6th Cir. 2002)). Also, the government did not even attempt to appeal the injunction, even though the injunction stopped a congressionally enacted program. *See Hargett*, 53 F.4th at 411. Nor was it a "stay-put" injunction, *McQueary*, 614 F.3d at 600, that merely preserved the status quo until "time allowed for a closer look." *Roberts*, 65 F.4th at 284; *see, e.g., Bobay*, 2023 U.S. App. LEXIS 14825 at *8.

16

Similarly, this certainly was not a "hasty" injunction, soon to be dissolved under scrutiny as in *Sole v. Wyner*, 551 U.S. 74, 84 (2007); *see Hargett*, 53 F.4th at 410. And there was "little prospect—none, really—that 'the court would reverse course, and enter judgment in favor of defendants.'"[5] *Roberts*, 65 F.4th at 285 (quoting *Hargett*, 53 F.4th at 411). This preliminary injunction was fit to be called "final in all but name." *Roberts*, 65 F.4th at 284 (quoting *Hargett*, 53 F.4th at 408). This finding alone sufficiently qualifies Holman as the prevailing party. *See Bobay*, 2023 U.S. App. LEXIS 14825 at *5 (recognizing that it "is the case" that injunction based on probable success qualifies for fees under § 1988) (citing *Dubuc*, 312 F.3d at 753.)

The simple fact that the injunction became unnecessary upon Section 1005's repeal does not disqualify Holman from prevailing party status. *See Planned Parenthood*, 931 F.3d at 540 (distinguishing *Sole*: "'vacatur at that juncture is not for 'lack of entitlement'"') (quoting *Watson v. Cnty. of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002)); *Stinnie v. Holcomb*, No. 20-71093, 2023 U.S. App. LEXIS 20327 at *31 (4th Cir. Aug. 7, 2023) (en banc) ("[P]laintiff's victory is now sure to

---

[5] Even according to the attorneys for the proposed Defendants-Intervenors below, *see* Conditional Mot. Leave Intervene, R. 27, Page ID # 507, "the government is unlikely to win [this] case." Leah Douglas and Christopher Walljasper, Reuters.com, *Insight: Biden farm debt relief plan to exclude thousands of minority farmers* (Dec. 17, 2021) <https://www.reuters.com/markets/us/biden-farm-debt-relief-plan-exclude-thousands-minority-farmers-data-shows-2021-12-17/>.

be enduring, as there is no longer any risk that the court-ordered relief will lose its judicial imprimatur.").

> 2. **The preliminary injunction was material because it was a court-ordered change in the relationship between the parties.**

The preliminary injunction was surely material. Before Section 1005 was enjoined, the government was congressionally authorized to spend billions of dollars—engaging in thousands of equal protection violations with respect to Holman's similarly situated fellow farmers—in a racially discriminatory manner. The injunctions stopped it before all of the money could be dispersed, and exhausted.

As the district court found, "[a]bsent action by the Court, socially disadvantaged farmers will obtain debt relief, while Plaintiff will suffer the irreparable harm of being excluded from that program solely on the basis of his race." (Order Prelim. Inj., R. 41, Page ID # 877.) Because the government was already spending money in a discriminatory manner (Cobb Decl., R. 31-1, Page ID # 678–79, ¶¶ 29–33), it took action by the courts to change the status quo. *See contra Bobay*, 2023 U.S. App. LEXIS 14825 at *8 (TRO did not qualify for fees when it maintained status quo). The preliminary injunction was essential because without it "all the funds allotted for the program would have already been spent," and Holman's injury would have faced mootness problems. (Order Prelim. Inj., R. 41,

Page ID # 874.) This racially discriminatory program that had no hope of surviving strict scrutiny would have evaded accountability altogether, had courts not halted it.[6]

By contrast, the government's argument that merely preventing an equal protection injury can never result in a plaintiff being the "prevailing party" would prove far too much. Indeed, even if Holman had obtained a *permanent* injunction— preventing Section 1005 from ever being fully implemented—he would have still, under the government's theory, gotten nothing material because he would have merely preserved the prior status quo *ante* under the district court's understanding. That would be a strange result, because a statute like EAJA is designed to encourage Americans to challenge unreasonable governmental action. *See infra* Part I.A.4 (purposes of EAJA and Section 1988 fee shifting). The better result is that a plaintiff may "prevail" by preventing imminent and concrete equal protection injuries from occurring, and by securing his right to equal protection going forward.

Finally, Holman has never, and does not now, invoke the catalyst theory. The change in the government's behavior only occurred after Holman obtained "some relief," which was never taken away. *Roberts*, 65 F.4th at 285 (quoting *Buckhannon*, 532 U.S. at 603); *see McQueary*, 614 F.3d at 598 ("McQueary does not invoke the

---

[6] It is true, of course, that Congress repealed Section 1005, before any court could give Holman full relief. But Holman's injunction effectively prevented Appellants from ever implementing a duly enacted but racially discriminatory federal statute, for the entire life of its existence.

'catalyst' theory; he did not ultimately lose on the merits."). Nor is Holman contending that the repeal of Section 1005 is what changed the relationship between the parties.[7] *See Buckhannon*, 532 U.S. at 605 (under catalyst theory, plaintiff could recover fees when no "judicially sanctioned change in the legal relationship of the parties"). The preliminary injunction had already changed the relationship, placing Holman outside "*Buckhannon's* domain." *Roberts*, 65 F.4th at 285.

### 3.  The preliminary injunction was enduring.

When assessing whether a preliminary injunction based on the firm likelihood of success qualifies as enduring, this Court examines "[t]he nature of the injunction[], the longevity of the relief, and the irrevocability of the relief." *Roberts*, 65 F.4th at 284. Each of these elements weighs in Holman's favor. As pointed out above, the injunction was not entered in haste, or merely as prophylactic measure, but instead based on the likelihood of success after "full briefing and an opportunity for each side to present evidence supporting its position." *Hargett*, 53 F.4th at 410.

---

[7] For what it is worth, the government appears to openly acknowledge that it strategically repealed Section 1005, rather than try to litigate it. *See* Ellyn Ferguson, Roll Call, *Civil rights lawyer Crump sues US over repealed aid to Black farmers* (Oct. 12, 2022) (explaining repeal: "the $5 billion that was intended to help farmers was frozen by three nationwide injunctions that prevented USDA from getting payments out the door. . . . This litigation would likely have not been resolved for years," Perry said in a statement.") (quoting Marissa Perry, Spokeswoman for USDA)  <https://rollcall.com/2022/10/12/civil-rights-lawyer-crump-sues-us-over-repealed-aid-to-black-farmers/>. No difficult "analysis of the defendant's subjective motivations in changing its conduct," *Buckhannon*, 532 U.S. at 609, is involved here.

Moreover, the district court's ruling on the preliminary injunction constitutes an "enduring" win because it lasted for more than thirteen months, and gave Holman and his farm full and complete protection for as long as he needed it. It was never reversed; indeed, the government declined even to try to appeal the ruling. For these reasons, the district court erred by limiting fees to one-time events, like specific protests or voter registration drives. Even so, Holman's injunction halted an injury that this Court has called "irreparable." *Vitolo,* 999 F.3d at 360, 365. That is an irrevocable benefit, even though one is not required to be a prevailing party.

"Time looked favorably on the preliminary injunction." *Roberts*, 65 F.4th at 284. It was never "reversed, dissolved, or otherwise undone" by the final decision in the same case. *Hargett*, 53 F.4th at 410. None of the other challenges to Section 1005 resulted in a different outcome. *See Roberts*, 65 F.4th at 285 (unanimity in rulings "confirms that there is little prospect" that injunction would have been reversed).

The longevity of the relief also "points the same way." *Id*. In *Roberts*, this Court ruled that a preliminary injunction that lasted for over a year before becoming moot was enduring. *Id*. Here, the preliminary injunction stood for a comparable thirteen months, far more than the seven months in *Hargett*, 53 F.4th at 408, or the two months asserted by the state in *G.S.*, 2023 U.S. App. LEXIS 21419 at *18.

The district court erroneously believed that because the preliminary injunction did not allow Holman to participate in a one-time irrevocable opportunity, it was not

21

enduring. But a preliminary injunction need not provide a plaintiff with a one-time irrevocable opportunity. *See G.S.*, 2023 U.S. App. LEXIS 21419 at *16. The district court thought Holman's injunction compared unfavorably to the one in *Hargett* and *Caudill* for this reason. (Order Att'y Fees, R. 96, Page ID # 1644–45.) But the *G.S.* decision itself specified that *Hargett* did not satisfy the one-time rule because the election that voters were registering for happened after the case became moot, and that the language the district court relied upon in *Caudill* did not "establish[] a bright line rule." 2023 U.S. App. LEXIS 21419 at *16–17; *see id.* ("Under the Governor's proposed 'one-time' blanket rule, the plaintiffs in *Hargett* would not have prevailed for purposes of attorneys' fees because the case became moot before the election, so the specific time and event had not occurred."). The district court mistook examples for a rule thereby erroneously excluding Holman and sharply cabining fees for those who prevail with a preliminary injunction.

Long before *G.S.*, this Court rejected the argument that plaintiffs must show that they capitalized on the injunction in some way that could not theoretically be revoked to qualify for fees. *Caudill,* 936 F.3d at 449 ("[A] decision not to reap the benefits of victory doesn't transform victory into defeat."). Indeed, in *Planned Parenthood*, this Court rejected the idea that plaintiffs did not prevail because they presented no evidence that the preliminary injunction delivered anyone any benefits. 931 F.3d at 541.

22

Here, however, Holman did obtain an irrevocable benefit, even though one is not required to meet this element. *See Hargett*, 53 F.4th at 410–11 (also considering that relief came after suits were filed, both sides fully briefed the issue, ruling was "emphatic" and never vacated); *Roberts*, 65 F.4th at 284 (also considering forcefulness of ruling, prospect of reversal, whether the government appealed, and the longevity of the preliminary injunction). Unconstitutionally discriminating against Americans based on the color of their skin is an injury so grave that it is an "irreparable" injury. *Vitolo,* 999 F.3d at 360, 365 (striking down similar race-preference in ARPA because "[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed") (quoting *Obama for Am. v. Husted*, 67 F.3d 423, 436 (6th Cir. 2012); *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001)). If racial discrimination is an injury that must be halted immediately because it is irreparable, then it naturally follows that each day an injury did *not* occur toward Holman and his farm is a benefit to him that could never be undone.

Americans are injured when a "discriminatory classification prevent[s] the plaintiff from competing on an equal footing." *Adarand Constr. v. Pena*, 515 U.S. 200, 211 (1995) (quoting *Ne. Fla. Chapter, of Assoc. Gen. Cont. of Am. v. City of Jacksonville*, 508 U.S. 656, 667 (1993)); *c.f.*, *Shaw v. Reno*, 509 U.S. 630, 643 (1993) (racial classifications "threaten to stigmatize individuals by reason of their membership in a racial group and to incite racial hostility"); *Heckler v. Mathews*,

465 U.S. 728, 739–40 (1984) ("[S]tigmatizing members of the disfavored group . . . can cause serious noneconomic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group."). Day-by-day equal treatment under the law is no less important than voter registration drives (*Hargett*) or access to abortion drugs (*Planned Parenthood*). If would-be parade protesters who win an injunction allowing them to protest are prevailing plaintiffs even if instead of protesting "they opted for a long brunch," *Caudill*, 936 F.3d at 449, then halting for over thirteen months a discriminatory federal loan forgiveness program worth billions of dollars easily clears the bar.

*Caudill* remains instructive even though it did not involve unequal treatment in obtaining governmental funds. The case concerned the refusal of a county clerk to issue marriage licenses to same-sex couples. 936 F.3d at 446. After the district court issued a preliminary injunction, the state started issuing licenses and so the district court vacated the injunction. Plaintiffs then moved for fees. *Id*. at 447. The state argued that the plaintiffs did not all prevail because some obtained no lasting benefit since two of them never obtained a license, and two never wed. *Id*. at 449. This Court rejected the argument. *Id*. This Court held that what those couples obtained was an equal *opportunity* to marry, even if they never capitalized on it by getting the irrevocable *benefit* of a marriage license. *Id*. at 448–49 ("[P]laintiffs

24

needed only the *opportunity* to obtain marriage licenses") (emphasis preserved).
Equal opportunity, however fleeting a window, is an irrevocable benefit, regardless
of what successful plaintiffs make of it. *Cf. Planned Parenthood Great Plains v.
Williams*, 863 F.3d 1008, 1011–12 (8th Cir. 2017) (preliminary and permanent
injunction halting equal protection violation mooted after abortion provider lost its
license still made party prevailing because "litigation afforded it an additional six
months to attempt to do so").

Holman got the relief he needed "for precisely as long as []he need[ed] it."
*Stinnie*, 2023 U.S. App. LEXIS 20327 at *29. It was legal error to ask whether some
*benefit* from the injunction lasted instead of whether the *injunction* lasted past the
point where it was unnecessary. (Order Att'y Fees, R. 96, Page ID # 1644.)

### 4. Disallowing attorney fees in this case would encourage gamesmanship and undermine important congressionally-designed purposes behind fee shifting.

Fees are necessary to encourage attorneys to take cases such as these, which
involve unambiguous race discrimination over a finite and definite period, and where
state actors are authorized to distribute a rapidly expiring pot of funds. Without them,

Congress's purposes in shifting fees in civil rights cases to individuals who thwart constitutional violations would be easily and repeatedly undermined.[8]

If "[e]liminating racial discrimination means eliminating all of it," *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll. (SFFA)*, 143 S. Ct. 2141, 2161 (2023), then attorneys must be incentivized to move swiftly when the discrimination at hand involves a rapidly expiring pot of funds. And an injunction must occur before the case potentially becomes moot. Otherwise, a particularly noxious form of race discrimination would manage to evade judicial review by simply working as it intended: to deliver finite benefits in a discriminatory manner. Congressional purposes in designing fee-shifting provisions would be undermined in the very cases where incentives matter most. *See Comm'r, INS v. Jean*, 496 U.S. 154, 163, n.11 (1990) (EAJA's purpose was to "eliminate" deterrent effect individuals face when challenging unreasonable governmental action); *Riverside v.*

---

[8] Notably, the Solicitor General of the United States recently articulated how—because the *sine qua non* of an equal protection injury is differential treatment—a successful litigant may obtain *either* the benefit of "leveling up" or leveling down": General Prelogar: "I think that the equal protection cases are fundamentally different because, there, your injury is your complaint of unequal treatment. And so, whether you level up or level down, your injury is being redressed. You're no longer being subject to unequal treatment, and, instead, everyone is being subject to the same treatment." *See* Oral Argument before the U.S. Supreme Court in *Department of Education v. Brown*, No. 22-535, 7:23-8:5 (Feb. 28, 2023), at https://www.supremecourt.gov/oral_arguments/argument_transcripts/2022/22-535_4g15.pdf

*Rivera*, 477 U.S. 561, 577 (1986) (fee-shifting under § 1988 "is particularly important and necessary if Federal civil and constitutional rights are to be adequately protected.") (quotation omitted); *Hall v. Cole*, 412 U.S 1, 13 (1973) (lack of fees under § 29 U.S.C. 412 "frustrat[es] its basic purpose" and renders the "grant of federal jurisdiction … but a gesture").

The injunction below was essential because it ensured that the case remained justiciable until Holman could get full relief. Indeed, the government's haste to spend Holman's case into mootness was perhaps the only means of implementing Section 1005, because otherwise, the legal prospects for a program that was this bluntly discriminatory were extremely grim.[9] It is hard to imagine that anyone realistically expected that Section 1005's "incoherent" racial categories could be defended on the merits, even if there were a compelling interest.[10] *SFFA*, 143 S. Ct. at 2210 (2023) (Gorsuch, J., concurring) ("Where do these boxes come from? Bureaucrats."); *see also Vitolo*, 999 F.3d at 361 ("[P]references for Pakistanis but

---

[9] Notably, the government acted expeditiously to begin spending money, not even waiting for people to apply. (Cobb Decl., R. 31-1, Page ID # 676–77.)

[10] The racial categories in Section 1005 set a new standard for incoherence. As observed by the district court, the government never explained why female farmers were not included, even though they were included with the "socially disadvantaged" in the restaurant portion of ARPA considered by this Court in *Vitolo*. Also, the government presented "little to no evidence . . . concerning discrimination toward Hawaiian/Pacific Islander farmers." (Order Prelim. Inj., R. 41, Page ID # 859 n.7.)

not Afghans; Japanese but not Iraqis; Hispanics but not Middle Easterners—is not supported by any record evidence at all."). It is easy to imagine that the legal architects of Section 1005 were counting on the ability to escape judicial review once the appropriated funds ran out. *C.f., N.Y. State Rifle & Pistol Assoc. v. City of N.Y.*, 140 S. Ct. 1525, 1533 (2020) (Alito, J., dissenting) (Courts are "particularly wary of attempts to manufacture mootness in order to evade review"). When a preliminary injunction based on likely success is essential to keeping a case alive, the party obtaining the objection prevails in the fullest sense of the word.

On the other hand, what the government should *not* be allowed to do is avoid paying attorney fees by strategically repealing a constitutionally offensive program after a preliminary injunction gives it insight into where things are headed. *Stinnie*, 2023 U.S. App. LEXIS 20327 at *17–18 ("[W]hen the court confirms the likely merit of the plaintiff's claim, the government will have ample time to cease the challenged conduct, moot the case, and avoid paying fees."). If it can, then the "predictable outcome of this gamesmanship is fewer attorneys willing to represent civil rights plaintiffs in even clearly meritorious actions—*particularly those whose urgent situations call for interim relief." Id*. at *18 (emphasis added).

No amount of gamesmanship can disguise the nature of Holman's victory. *See Stinnie*, 2023 U.S. App. LEXIS 20327 at *17 (reflexively disallowing fees when the

28

government repeals an offending law after preliminary injunction would "allow government defendants to game the system").

## II.    Plaintiff meets the other EAJA factors.

Although the district court did not address the other EAJA factors (Order Att'y Fees, R. 96, Page ID # 1640 n.2), in the interest of judicial economy, Holman asks the Court to address these factors as well. And Holman meets them. He is a party. The government's position on § 1005 lacked any substantial justification considering this Court's nearly contemporaneous opinion in *Vitolo*. Nor are there any special circumstances warrant overlooking EAJA's mandatory terms.

### A.    Plaintiff is a party.

Holman is a "party" under the terms of EAJA. The government does not dispute that he is an "individual whose net worth did not exceed $2,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B); *see* Decl. of Robert Holman, R. 85-2, Page ID # 1342.

### B.    The government's position was not substantially justified.

"The government's 'position' comprehends both the United States' underlying action and its litigation position." *Delta Eng'g v. United States*, 41 F.3d 259, 261 (6th Cir. 1994). "'[S]ubstantially justified' means 'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.'" *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "When considering whether the government's position is substantially justified, [courts] focus on the

29

merits of that position." *Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 563 (6th Cir. 2021).

Courts "distinguish between cases in which 'the government lost because it vainly pressed a position flatly at odds with the controlling case law' and cases in which 'the government lost because an unsettled question was resolved unfavorably.'" *Id*. at 564 (quoting *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1174 (D.C. Cir. 2005) (Roberts, J.). "Substantially justified" does not mean merely "undeserving of sanctions for frivolousness." *Jean*, 496 U.S. at 158 n.6 (quoting *Pierce*, 487 U.S. at 566).

If there were ever an example of the government pushing a position that is flatly at odds with controlling case law, this is it. When Appellant moved below for a preliminary injunction, this Court had just affirmed a preliminary injunction against another racially discriminatory portion of ARPA, which used similarly discriminatory racial categories. *See Vitolo*, 999 F.3d 353. When it did, this Court reiterated that the government must present evidence of current, intentional discrimination when seeking to uphold a racial preference scheme, and "[s]tatistical disparities don't cut it." *Id*. at 361.

Yet at the preliminary injunction hearing in this case, the government "presented no evidence of current intentional discrimination by Defendants, and they acknowledged this lack of evidence at the hearing." (Order Prelim. Inj., R. 41, Page

ID # 868.) And "[i]nstead, Defendants attempted to rely on statistical and anecdotal evidence, even though this type of evidence to show intentional discrimination has been rejected by the Sixth Circuit." *Id*. (citing *Vitolo*, 999 F.3d at 361). While Appellant respects that the government's attorneys are duty-bound to defend congressional statutes, the government's position was flatly at odds with controlling—and very recent—circuit precedent and was not substantially justified. *See Koss v. Sullivan*, 982 F.2d 1226, 1229 (8th Cir. 1993) (finding failure to follow clear circuit precedent constituted unjustified position).

Furthermore, the government's stale justifications for its race-based preference scheme had failed in other courts by the time it reheated them here. "[A] string of losses can be indicative" of the government's lack of substantial justification. *Pierce*, 487 U.S. at 569. And courts may "place more weight on these objective indicia" when several courts have decided the issue. *Griffith*, 987 F.3d at 574 n.2. The government acknowledged that the evidence it used to support Section 1005 was no different here (Order, R. 41, Page ID # 868), yet it was upon this very evidence that its case rested.

Lastly, the fact that Section 1005 employed the same racially exclusive categories rejected by this Court in *Vitolo* slams the door shut on any notion that the government had a substantial justification here. *See Vitolo*, 999 F.3d at 361. Laws

like this never belonged on American shores. Any defense of them lacked a substantial justification, certainly in this century.

### C.    No special circumstances justify denying a fee award.

Special circumstances "that would justify denying an award of attorney fees are 'equitable considerations [that] dictate an award should not be made,'" such as unclean hands. *Sakhawati v. Lynch*, 839 F.3d 476, 478 (6th Cir. 2016) (quoting H.R. Rep. No. 1418, at 11 (1980)) (alteration in original)). The Sixth Circuit has "never (to our knowledge) found a 'special circumstance' justifying the denial of fees." *McQueary,* 614 F.3d at 604. Special circumstances "are only substantive issues, such as close or novel questions of law." *Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 972 F.2d 669, 672 (6th Cir. 1992) (citing *Grason Elec. Co. v. NLRB*, 951 F.2d 1100, 1103-05 (9th Cir. 1991)).

This case was not close. The issue was settled under basic equal protection law. Indeed, since the district court entered the preliminary injunction in 2021, the Supreme Court has further emphasized the danger of engaging in racial discrimination for purportedly "benign" reasons, invoking precedents harkening back to the 19th Century. *See SFFA*, 143 S. Ct. at 2175 ("That is a remarkable view of the judicial role—remarkably wrong. Lost in the false pretense of judicial humility that the dissent espouses is a claim to power so radical, so destructive, that it required a Second Founding to undo."); *see also Ultima Servs. Corp. v. U.S. Dep't*

*of Agric.,* 2:20-CV-00041-DCLC-CRW, 2023 U.S. Dist. LEXIS 124268, *49–50 & n.8 (E.D. Tenn., Jul. 19, 2023) (applying *SFFA* in the government contracting context).

Equitable considerations only bolster the case for fees. The only reason this case never reached a ruling on the merits is because the government delayed this case over Holman's objections. (Order, R. 79, Page ID # 1273); *c.f., Occupy Nashville v. Haslam*, No. 3:11-cv-01037, 2015 U.S. Dist. LEXIS 104550, at *22 (M.D. Tenn. Aug. 10, 2015) (Plaintiff "cannot be faulted for not seeking permanent or dispositive relief" earlier). Holman opposed every request to stay (*see*, *e.g.*, Pl.'s Opp'n to Defs.' Mtn. Stay, R. 48, Page ID # 933; Resp. in Opp'n to Defs.' Renewed Mtn. Stay, R. 78, Page ID # 1234) and advocated for a scheduling order that would have completed summary judgment filings on January 28, 2022, long before Section 1005 was repealed. (Joint Proposed Sched. Order, R 51, Page ID # 1038.) Holman should not be penalized by his inability to make his preliminary relief permanent.

Holman was the prevailing party. The district court should award him his costs and fees, including the time spent litigating this appeal. *See Acosta v. Cathedral Buffet, Inc.*, 892 F.3d 819, 821 (6th Cir. 2018) (district court is in the best position to decide the appropriate amount of costs and fees for the entire litigation under EAJA).

33

## CONCLUSION

This Court should reverse the finding of the district court that Holman was not the prevailing party, hold that he meets the other EAJA factors, and remand this case to the district court to determine the amount of fees and costs, adjusted to include time spent on the appeal.

Respectfully submitted,

/s/ Braden H. Boucek
BRADEN H. BOUCEK
KIMBERLY S. HERMANN
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, Georgia 30075
Telephone: (770) 977-2131
bboucek@southeasternlegal.org
khermann@southeasternlegal.org

WILLIAM E. TRACHMAN
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
E-mail: wtrachman@mslegal.org

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. Proc. 32(g)(1), this is to certify the foregoing complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,932 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). The foregoing complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared on a computer using Times New Roman font (14 point).

  August 30, 2023.                /s/ Braden H. Boucek
                                    BRADEN H. BOUCEK

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent through the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail and/or facsimile. Parties may access the filing through the Court's electronic filing system.

 August 30, 2023.                                    /s/ Braden H. Boucek
                                                     BRADEN H. BOUCEK

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 28(b), the following filings from the district

court's records are designated as relevant to this appeal:

| Record Entry & Page ID Range | Description of Entry |
|---|---|
| R. 1, Page ID # 1-17 | Complaint |
| R. 7, Page ID # 29-31 | Plaintiff's Motion for Preliminary Injunction |
| R. 7-3, Page ID # 72-73 | Declaration of Robert Holman |
| R. 27, Page ID # 507-519 | Conditional Motion for Leave to Intervene as Defendants |
| R. 31-1, Page ID # 674-680 | Declaration of William D. Cobb |
| R. 41, Page ID # 856-880 | Order Granting Preliminary Injunction |
| R. 48, Page ID # 933-949 | Plaintiff's Opposition to Defendants' Motion to Stay |
| R. 49, Page ID # 1026-1029 | Order Denying Motion to Stay Pending Resolution of Related Class Action |
| R 51, Page ID # 1037-1044 | Joint Proposed Scheduling Order |
| R. 77, Page ID #1219-1233 | Defendants' Renewed Motion to Stay |
| R. 78, Page ID # 1234-1253 | Response in Opposition to Defendants' Renewed Motion to Stay |
| R. 79, Page ID # 1273-74 | Order Granting Defendants' Renewed Motion to Stay |
| R. 83, Page ID #1284-85 | Joint Stipulation of Dismissal |
| R. 84, Page ID # 1286 | Judgment |
| R. 85, Page ID #1287-89 | Plaintiff's Motion for Attorney Fees and Costs |
| R. 85-1, Page ID # 1290-1304 | Memorandum in Support of Motion for Attorney Fees and Costs |
| R. 85-2, Page ID # 1342-43 | Declaration of Robert Holman |
| R. 95, Page ID # 1618-626 | Supplemental Brief in Support of Motion for Attorney Fees |
| R. 96, Page ID # 1637-644 | Order Denying Attorney Fees |
| R. 97, Page ID # 1646-47 | Notice of Appeal |