No. 23-5493

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ROBERT HOLMAN,

Plaintiff-Appellant,

v.

THOMAS VILSACK, et al.,

Defendants-Appellees.

On Appeal from the United States District Court
for the Western District of Tennessee

**BRIEF FOR DEFENDANTS-APPELLEES**

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

THOMAS PULHAM
JEFFREY E. SANDBERG
*Attorneys, Appellate Staff*
*Civil Division, Room 7214*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 532-4453*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ................................................................. 1

STATEMENT OF THE ISSUES ................................................................... 1

STATEMENT OF THE CASE .................................................................... 2

A.    Statutory Background ................................................................ 2

B.    Factual Background and Prior Proceedings ............................................ 3

    1. ARPA Section 1005 .................................................................. 3

    2. Litigation Challenging Section 1005 .................................................. 5

    3. Further Litigation .................................................................. 10

    4. Repeal of Section 1005 .............................................................. 11

C.    Plaintiff's Request for Attorney's Fees ............................................... 12

SUMMARY OF ARGUMENT .................................................................... 15

STANDARD OF REVIEW ....................................................................... 17

ARGUMENT ................................................................................. 18

THE DISTRICT COURT PROPERLY DENIED PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES. ........................................................... 18

A.    Plaintiff Does Not Qualify As A "Prevailing Party" ................................... 18

B.    Plaintiff Also Does Not Satisfy EAJA's Other Requirements ............................. 31

    1.    The Government's Position Was Substantially Justified ............................ 31

    2.    A Fee Award Would Be Unjust In These Circumstances. ........................... 39

CONCLUSION ............................................................................... 42

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

# TABLE OF AUTHORITIES

**Cases:**                                                                          **Page(s)**

*Air Transp. Ass'n of Canada v. FAA,*
   156 F.3d 1329 (D.C. Cir. 1998) ............................................................... 39

*Ardestani v. Immigration & Naturalization Serv.,*
   502 U.S. 129 (1991) ............................................................................3, 18

*Biodiversity Conserv. Alliance v. Stem,*
   519 F.3d 1226 (10th Cir. 2008) ............................................................... 22

*Bobay v. Wright State Univ.,* No. 22-4007,
   2023 WL 3963847 (6th Cir. June 13, 2023) (unpublished) ........................ 22

*Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of*
   *Health & Human Servs.,* 532 U.S. 598 (2001) ........................................*passim*

*Carpenter v. Vilsack,* Nos. 22-8079, 23-1122,
   2023 WL 6810960 (10th Cir. Oct. 16, 2023) (unpublished) ....................... 11

*Comptroller of the Treasury of Md. v. Wynne,*
   575 U.S. 542 (2015) ................................................................................. 30

*D.T. v. Sumner Cty. Sch.,*
   942 F.3d 324 (6th Cir. 2019) ...............................................................29, 30

*Daunt v. Benson,*
   956 F.3d 396 (6th Cir. 2020) .................................................................... 25

*DeLong v. Commissioner of Soc. Sec. Admin.,*
   748 F.3d 723 (6th Cir. 2014) ...............................................................2, 18

*Donnell v. United States,*
   682 F.2d 240 (D.C. Cir. 1982) ................................................................. 40

*Dubuc v. Green Oak Twp.,*
   312 F.3d 736 (6th Cir. 2002) ................................................................... 22

*Dvorkin v. Gonzales,*
   173 F. App'x 420 (6th Cir. 2006) ............................................................. 33

*Faust v. Vilsack,*
   519 F. Supp. 3d 470 (E.D. Wis. 2021) ...................................................... 7

*Gonzales v. Free Speech Coal.*,
  408 F.3d 613 (9th Cir. 2005) ..................................................... 33

*Grace v. Burger*,
  763 F.2d 457 (D.C. Cir. 1985) ...........................................33, 35

*Griffith v. Commissioner of Soc. Sec.*,
  987 F.3d 556 (6th Cir. 2021) ....................................... 17, 31, 32, 34, 37, 40

*Heeren v. City of Jamestown*,
  39 F.3d 628 (6th Cir. 1994) ...................................................... 19

*John T. ex rel. Paul T. v. Delaware Cty. Intermediate Unit*,
  318 F.3d 545 (3d Cir. 2003)....................................................... 22

*Kiareldeen v. Ashcroft*,
  273 F.3d 542 (3d Cir. 2001) ...............................................33, 34

*Markham v. International Ass'n of Bridge, Structural & Ornamental Iron Workers*, 901 F.2d 1022 (11th Cir. 1990) ........................... 22

*Marshall v. Commissioner of Soc. Sec.*,
  444 F.3d 837 (6th Cir. 2006) .................................................... 19

*McLaughlin v. Hagel*,
  767 F.3d 113 (1st Cir. 2014) .................................................... 32

*McQueary v. Conway*:
  614 F.3d 591 (6th Cir. 2010) ..............................................*passim*
  508 F. App'x 522 (6th Cir. 2012) ........................................... 22

*Memphis A. Philip Randolph Inst. v. Hargett*,
  978 F.3d 378 (6th Cir. 2020) .................................................... 29

*Miller v. Caudill*,
  936 F.3d 442 (6th Cir. 2019) ..............................................*passim*

*Miller v. Vilsack*, No. 4:21-cv-595,
  2021 WL 11115194 (N.D. Tex. July 1, 2021)............................... 7

*Munaf v. Geren*,
  553 U.S. 674 (2008) ................................................................ 25

*National Truck Equip. Ass'n v. National Highway Traffic Safety Admin.*,
  972 F.2d 669 (6th Cir. 1992) .................................................... 40

*Northern Cheyenne Tribe v. Jackson*,
    433 F.3d 1083 (8th Cir. 2006) .................................................................... 22

*Orner v. Shalala*,
    30 F.3d 1307 (10th Cir. 1994) .................................................................. 37

*Pierce v. Underwood*,
    487 U.S. 552 (1988) ........................................................................... 32, 39

*Planned Parenthood Sw. Ohio Region v. Dewine*,
    931 F.3d 530 (6th Cir. 2019) .................................................................... 22

*Riddell v. National Democratic Party*,
    624 F.2d 539 (5th Cir. 1980) .................................................................... 40

*Roanoke River Basin Ass'n v. Hudson*,
    991 F.2d 132 (4th Cir. 1993).................................................................... 32

*Roberts v. Neace*,
    65 F.4th 280 (6th Cir. 2023) ..............................................................21, 28

*Scarborough v. Principi*,
    541 U.S. 401 (2004) ................................................................................. 32

*Shaw v. Hunt*,
    517 U.S. 899 (1996) ................................................................................. 35

*Sole v. Wyner*,
    551 U.S. 74 (2007) ................................................................................... 19

*Stinnie v. Holcomb*,
    77 F.4th 200 (4th Cir. 2023) (en banc) .................................................... 25

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023) ................................................................................. 35

*Tennessee State Conference of the NAACP v. Hargett*,
    53 F.4th 406 (6th Cir. 2022) .................................................... 21, 27, 30

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
    489 U. S. 782 (1989) ................................................................................ 19

*Thomas v. National Sci. Found.*,
    330 F.3d 486 (D.C. Cir. 2003) ................................................................ 22

*United States v. 4880 S.E. Dixie Highway*,
  838 F.2d 1558 (11th Cir. 1988) ................................................................. 33

*United States v. One Parcel of Real Prop.*,
  960 F.2d 200 (1st Cir. 1992) ............................................................... 33, 34

*United States v. Paradise*,
  480 U.S. 149 (1987) ................................................................................. 35

*United States v. Tennessee*,
  780 F.3d 332 (6th Cir. 2015) .................................................................... 18

*United States v. 27.019 Acres of Land, More or Less*,
  43 F.3d 769 (2d Cir. 1994) ...................................................................... 40

*University of Tex. v. Camenisch*,
  451 U.S. 390 (1981) ................................................................................. 10

*Vacchio v. Ashcroft*,
  404 F.3d 663 (2d Cir. 2005) .................................................................... 33

*Vitolo v. Guzman*,
  999 F.3d 353 (6th Cir. 2021) ................................................................. 8, 38

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................... 7

*Wilder v. Bernstein*,
  965 F.2d 1196 (2d Cir. 1992) .................................................................. 40

*Wilson v. Williams*,
  961 F.3d 829 (6th Cir. 2020) ................................................................... 25

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .................................................................................... 25

*Wynn v. Vilsack*:
  545 F. Supp. 3d 1271 (M.D. Fla. 2021) .............................................. 26, 30
  No. 3:21-cv-514, 2023 WL 6158488 (M.D. Fla. Sept. 21, 2023) ............... 15

*Young v. City of Chicago*,
  202 F.3d 1000 (7th Cir. 2000) ................................................................. 21

**U.S. Constitution:**

Art. II, § 3 ................................................................................................ 33


**Statutes:**

American Rescue Plan Act of 2021,
  Pub. L. No. 117-2, 135 Stat. 4 ................................................ 3
    § 1005, 135 Stat. at 12-13 ...........................................*passim*
    § 1005(a)(1)-(2), 135 Stat. at 12-13 ..................................... 4
    § 1005(b)(3), 135 Stat. at 13 ................................................ 4
Equal Access to Justice Act (EAJA):
  28 U.S.C. § 2412 ....................................................................... 2
  28 U.S.C. § 2412(a)(1) .......................................................1, 2, 18
  28 U.S.C. § 2412(d) ........................................... 1, 12, 18, 31
  28 U.S.C. § 2412(d)(1)(A) ...........................................*passim*
  28 U.S.C. § 2412(d)(2)(D) ................................................31, 41
  28 U.S.C. § 2412(d)(4) ..................................................3, 31, 41
Inflation Reduction Act,
  Pub. L. No. 117-169, 136 Stat. 1818 (2022)............................. 11
    § 22008, 136 Stat. at 2023 .................................................... 11
7 U.S.C. § 2279(a) .......................................................................... 4
7 U.S.C. § 2279(a)(5)-(6) ............................................................... 4
28 U.S.C. § 1291 ........................................................................... 1
28 U.S.C. § 1331 ........................................................................... 1
28 U.S.C. § 1343 ........................................................................... 1


**Rule:**

Fed. R. Civ. P. 23(b)(2) ................................................................ 7

**Legislative Materials:**

167 Cong. Rec. H765-66 (daily ed. Feb. 26, 2021) ............................................ 4

167 Cong. Rec. H1273 (daily ed. Mar. 10, 2021) ............................................ 4

167 Cong. Rec. S1262 (daily ed. Mar. 5, 2021) ............................................... 4

H.R. Rep. No. 96-1418 (1980) ......................................................... 39

H.R. Rep. No. 117-7 (2021) ........................................................... 3

S. Rep. No. 98-586 (1984) ............................................................. 33

S. 278, 117th Cong. § 4(a)(1)-(2) (2021) ......................................... 4

**Other Authorities:**

86 Fed. Reg. 28,329 (May 26, 2021) ......................................... 4, 5

*The Attorney General's Duty to Defend the Constitutionality of Statutes*,
5 Op. O.L.C. 25 (1981) ...................................................... 33-34

*The Attorney General's Duty to Defend and Enforce Constitutionally Objectionable Legislation*, 4A Op. O.L.C. 55 (1980) .................................... 34

*Responsibility of Agencies to Pay Attorney's Fee Awards Under the Equal Access to Justice Act*, 31 Op. O.L.C. 229 (2007) .................................. 31

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-appellant has requested oral argument.  The government does not believe argument is necessary but stands ready to present it if the Court would find it helpful.

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. §§ 1331 and 1343.  Compl. ¶ 18, Record Entry (RE) 1, PageID#5.  Plaintiff's motion for attorney's fees was denied on April 4, 2023, Order, RE96, PageID#1637-45, and he timely appealed that denial on May 26, 2023, Notice of Appeal, RE97, PageID#1646-47.  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Plaintiff brought suit challenging the constitutionality of a statute that would have provided loan-repayment assistance to socially disadvantaged farmers and ranchers.  After several other courts enjoined implementation of the statute, the district court in this case also entered its own preliminary injunction.  Congress subsequently repealed the statute, and this litigation was dismissed as moot by agreement of the parties.  Plaintiff then filed an application for attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(a)(1), (d)(1)(A).  The questions presented are:

**1.**  Whether the district court properly determined that plaintiff does not qualify as a "prevailing party" under EAJA, 28 U.S.C. § 2412(a)(1), (d)(1)(A).

**2.**  Whether plaintiff is not entitled to EAJA fees in any event because (a) the United States' position was "substantially justified" and (b) "special circumstances make an award unjust."  *Id.* § 2412(d)(1)(A).

## STATEMENT OF THE CASE

### A.     Statutory Background

"[U]nder what is known as the 'American Rule,' each party pays his, her, or its own fees unless a statute explicitly provides otherwise." *Miller v. Caudill*, 936 F.3d 442, 447 (6th Cir. 2019).  The Equal Access to Justice Act allows for recovery of attorney's fees against the federal government in certain limited circumstances.  28 U.S.C. § 2412.[1]

As relevant here, EAJA Section 2412(d) provides that a court "shall award to a prevailing party … fees and other expenses … incurred by that party in any civil action … unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).  Thus, "[t]o recover attorney fees under the EAJA, a plaintiff must satisfy three conditions: (1) [he] must be a 'prevailing party'; (2) the Government's opposing position must have been without substantial justification; and (3) there must be no special circumstances that warrant denying relief." *DeLong v. Commissioner of Soc. Sec. Admin.*, 748 F.3d 723, 725 (6th Cir. 2014).

---

[1] EAJA also permits, in the court's discretion, an award of costs "to the prevailing party in any civil action brought by or against the United States." 28 U.S.C. § 2412(a)(1).

Because "[t]he EAJA renders the United States liable for attorney's fees for which it would not otherwise be liable," it "amounts to a partial waiver of sovereign immunity" that must be "strictly construed in favor of the United States." *Ardestani v. Immigration & Naturalization Serv.*, 502 U.S. 129, 137 (1991). Any fees awarded under Section 2412(d)(1)(A) are "paid by [the] agency over which the party prevails" from the agency's own funds. 28 U.S.C. § 2412(d)(4).

**B.    Factual Background and Prior Proceedings**

**1. ARPA Section 1005**

This case arose as a constitutional challenge to one provision of the American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat. 4 (ARPA). Congress enacted ARPA in March 2021 to provide various forms of emergency assistance in the wake of the COVID-19 pandemic and resulting economic downturn, and placed particular focus on the "most vulnerable communities" who "b[ore] the brunt of" the crisis. H.R. Rep. No. 117-7, at 2 (2021). Among them were minority farmers and ranchers, a group which had suffered "longstanding and widespread discrimination" in the administration of U.S. Department of Agriculture (USDA) programs and which had received a disproportionately small share of recent pandemic assistance and agricultural subsidies. *Id.* at 12. Congress found that urgent relief was warranted for

3

minority farmers and ranchers to prevent a "wave of foreclosures" and to help them remain and fully participate in the farming economy.  167 Cong. Rec. S1266 (daily ed. Mar. 5, 2021) (statement of Sen. Booker); *see also, e.g.*, 167 Cong. Rec. S1262-67 (daily ed. Mar. 5, 2021); 167 Cong. Rec. H765-66 (daily ed. Feb. 26, 2021); 167 Cong. Rec. H1273 (daily ed. Mar. 10, 2021); S. 278, 117th Cong. § 4(a)(1)-(2) (2021).

To that end, Congress created a new debt-relief program to be administered by USDA.  ARPA Section 1005 directed the agency to "provide a payment in an amount up to 120 percent of the outstanding indebtedness" for certain direct and guaranteed farm loans held by a "socially disadvantaged farmer or rancher" and outstanding as of January 1, 2021.  ARPA § 1005(a)(1)-(2), 135 Stat. at 12-13.  Congress specified that the term "socially disadvantaged farmer or rancher" would carry the same meaning set forth in 7 U.S.C. § 2279(a).  ARPA § 1005(b)(3), 135 Stat. at 13.  That latter provision, in turn, defines the term as a "farmer or rancher who is a member of" a group "whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities."  7 U.S.C. § 2279(a)(5)-(6).

To implement Section 1005, USDA issued a Notice of Funds Availability in May 2021.  *See* 86 Fed. Reg. 28,329 (May 26, 2021).  The

4

Notice explained that, consistent with the statutory definition and past practice, "[m]embers of socially disadvantaged groups include, but are not limited to[,] American Indians or Alaskan Natives; Asians; Blacks or African Americans; Native Hawaiians or other Pacific Islanders; and Hispanics or Latinos." *Id.* at 28,330.  The Notice indicated that the Secretary of Agriculture would "determine on a case-by-case basis whether additional groups qualify under this definition." *Id.*

### 2. Litigation Challenging Section 1005

**a.** A dozen lawsuits were brought challenging ARPA Section 1005.[2] Among them was this suit by plaintiff Robert Holman, who alleged he would be eligible for assistance under Section 1005 but for the fact that he was not "socially disadvantaged."  Compl., RE1, PageID#3-5.  In June 2021, plaintiff filed a complaint alleging that Section 1005's eligibility criteria violated the equal protection component of the Due Process Clause.  *Id.* ¶¶ 64-74,

---

[2] *See Miller v. Vilsack*, 4:21-cv-595 (N.D. Tex. filed Apr. 26, 2021); *Faust v. Vilsack*, 1:21-cv-548 (E.D. Wis. filed Apr. 29, 2021); *Wynn v. Vilsack*, 3:21-cv-514 (M.D. Fla. filed May 18, 2021); *Carpenter v. Vilsack*, 2:21-cv-103 (D. Wyo. filed May 24, 2021); *Holman v. Vilsack*, 1:21-cv-1085 (W.D. Tenn. filed June 2, 2021); *Kent v. Vilsack*, 3:21-cv-540 (S.D. Ill. filed June 7, 2021); *McKinney v. Vilsack*, 2:21-cv-212 (E.D. Tex. filed June 10, 2021); *Joyner v. Vilsack*, 1:21-cv-1089 (W.D. Tenn. filed June 15, 2021); *Dunlap v. Vilsack*, 2:21-cv-942 (D. Or. filed June 24, 2021); *Rogers v. Vilsack*, 1:21-cv-1779 (D. Colo. filed June 29, 2021); *Tiegs v. Vilsack*, 3:21-cv-147 (D.N.D. filed July 6, 2021); *Nuest v. Vilsack*, 21-cv-1572 (D. Minn. filed July 7, 2021).

PageID#13-15.[3]  As relief, plaintiff sought to "enjoin[] Defendants from applying racial classifications when determining eligibility for … payments under Section 1005 of ARPA" or, "[i]n the alternative," to "enjoin Defendants from enforcing Section 1005 of ARPA in its entirety." *Id.* at 17, PageID#17. Plaintiff also sought an award of costs and fees. *Id.*

Several days later, plaintiff moved for a preliminary injunction seeking to temporarily halt further payments under Section 1005.  Mot. for P.I., RE7-1, PageID#32-44.  Plaintiff asserted that absent such an order, "funds may run out before th[e] [district court] can issue a ruling on the merits, leaving Plaintiff and countless others" without the ability to share in Section 1005's benefits. *Id.* at 2, PageID#33.  Plaintiff thus sought an "immediate injunction" to "maintain the status quo ante" pending further litigation. *Id.* at 2, 11, 13, PageID#33, 42, 44.

While that motion was pending, however, other courts in earlier-filed suits entered the same nationwide relief.  On June 10, 2021, a district court in Wisconsin issued a temporary restraining order preventing USDA from "forgiving any loans pursuant to Section 1005" pending further proceedings.

---

[3] Plaintiff also asserted two other claims alleging that USDA was planning to "[i]llegally [a]llow[] [f]uture [USDA loan] [e]ligibility" for recipients of Section 1005 assistance.  Compl. ¶¶ 75-85, RE1, PageID#15-16.

*Faust v. Vilsack*, 519 F. Supp. 3d 470, 478 (E.D. Wis. 2021).[4]  On June 23,

2021, a district court in Florida entered a nationwide preliminary injunction

indefinitely barring USDA "from issuing any payments, loan assistance, or

debt relief" under Section 1005.  *Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1295

(M.D. Fla. 2021).  And on July 1, 2021, a district court in Texas not only

enjoined USDA from considering race under Section 1005, but also certified a

mandatory class action under Federal Rule of Civil Procedure 23(b)(2)

including "[a]ll farmers and ranchers in the United States" who would be

eligible under Section 1005 but for the "socially disadvantaged" criterion.

*Miller v. Vilsack*, No. 4:21-cv-595, 2021 WL 11115194, at \*3, 12 (N.D. Tex.

July 1, 2021).  That class necessarily included plaintiff.  *Cf. Wal-Mart Stores, Inc.*

*v. Dukes*, 564 U.S. 338, 361-62 (2011) (explaining that Rule 23(b)(2) classes are

"mandatory classes" with "no opportunity for … class members to opt out").

    **b.**  On July 8, 2021, the district court in this case entered its own,

duplicative preliminary injunction.  Order Granting Mot. for P.I. (PI Order),

RE41, PageID#856-80.  The court acknowledged the injunctions entered in

*Wynn* and *Miller*, which already afforded plaintiff the relief he sought.  *See id.* at

9, 21, PageID#864, 876.  The court concluded, however, that a further

---

    [4] The restraining order in *Faust* was later dissolved in light of the subsequent preliminary injunction in *Wynn*.

protective injunction was warranted because the government had "given no assurance that [it would] not appeal" the existing preliminary injunctions and because those injunctions had been entered by courts in other circuits. *Id.* at 21, PageID#876.

On the merits, the district court concluded that plaintiff had established a sufficient likelihood of success to warrant equitable relief. PI Order 9-17, RE41, PageID#864-72. With respect to Congress's factual basis for enacting the challenged remedial legislation, the court acknowledged that the record contained ample "evidence … reveal[ing] systemic racial discrimination by the USDA … which has compounded over time, resulting in bankruptcies, land loss, a reduced number of minority farmers, and diminished income for the remaining minority farmers." *Id.* at 10-11, PageID#865-66. The court also concluded, however, that the government had "failed to establish that [it] ha[d] a compelling interest in remedying" that discrimination because it had not tendered all of the evidence specifically required by this Court's then-one-month-old decision in *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021). PI Order 14, RE41, PageID#869. It also concluded that "[o]n the record before the Court at this stage in the case, it does not appear that Section 1005 is narrowly tailored such that it 'eliminates no more than the exact source of the "evil" it seeks to remedy.'" *Id.* at 16-17, PageID#871-72 (quoting *Wynn*, 545 F.

Supp. 3d at 1286). But the court explained that the government "will have the opportunity to present such evidence at a trial on the merits," *id.* at 12 n.12, PageID#867 n.12, and contemplated that "[o]n a more fully developed record" the government might well prevail in showing that "narrowly tailored affirmative relief is warranted" for the past discrimination that Congress sought to redress, *id.* (quoting *Wynn*, 545 F. Supp. 3d at 1281 n.9).

The district court also concluded that equitable factors weighed in favor of a preliminary injunction. PI Order 18-22, RE41, PageID#873-77. It credited plaintiff's fear that "if the program is not enjoined" and "[p]laintiff [were] later determined to be eligible for the program" upon final judgment, "all the funds allotted for the program would have already been spent," leaving plaintiff without any financial benefit. *Id.* at 19, PageID#874. The court acknowledged that any delay in implementing Section 1005 posed a "disproportionately higher risk of foreclosure" among minority farmers, but it found this concern "lessened" by the government's voluntary policy of not foreclosing on USDA direct loans. *Id.* at 22, PageID#877. "[T]he only way to preserve the status quo," the court reasoned, was "to issue a nationwide injunction" barring any payments under Section 1005 pending further litigation. *Id.* at 24, PageID#879; *see also id.* at 8, PageID#863 (commencing analysis by observing that "[t]he purpose of a preliminary injunction is merely

9

to preserve the relative positions of the parties until a trial on the merits can be held") (quoting *University of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

### 3. Further Litigation

The government did not take interlocutory appeals of the preliminary injunctions entered in *Wynn*, *Miller*, or this case, instead choosing to further develop the record in support of Section 1005's constitutionality and then to seek summary judgment. The government also moved to stay the various individual cases pending the outcome of the class litigation in *Miller*.

The district court initially denied a stay because plaintiff had asserted additional claims not presented in *Miller*. Order Denying Defs.' Mot. to Stay Proceedings, RE49, PageID#1026-29; *see supra* p. 6 n.3. But the court soon granted the government's motion to dismiss those claims on various grounds, including lack of standing, ripeness, or a cause of action. *See* Order Granting Defs.' Mot. for Partial Dismissal, RE72, PageID#1189-1209. As to the sole remaining claim (violation of equal protection), the court then granted a stay, over plaintiff's objection, pending the outcome of *Miller*. Order Granting Defs.' Renewed Mot. to Stay, RE79, PageID#1273-74.

The class litigation in *Miller* proceeded through discovery. In March 2022, the government filed a motion for summary judgment, supported by additional factual and expert evidence that had not been presented at the

10

preliminary-injunction stage.  Following adjustment of the litigation schedule in light of third-party intervention, the government filed a renewed summary-judgment motion in *Miller* in July 2022.  *See* Defs.' Mot. for S.J., *Miller*, No. 4:21-cv-595 (N.D. Tex. July 18, 2022).

### 4. Repeal of Section 1005

In August 2022—before the summary-judgment motion in *Miller* could be adjudicated—Congress enacted the Inflation Reduction Act, Pub. L. No. 117-169, 136 Stat. 1818 (2022).  That Act repealed Section 1005 of ARPA in its entirety.  *See id.* § 22008, 136 Stat. at 2023 ("Section 1005 of the American Rescue Plan Act of 2021 … is repealed.").

Following this repeal, all pending litigation challenging Section 1005 was dismissed (including the class action in *Miller*), in nearly every instance with the consent of the respective plaintiffs.[5]  In this case, too, the parties "agree[d] that Plaintiff's challenge to Section 1005 is moot" and accordingly stipulated to dismissal of the action without prejudice.  Joint Stip. of Dismissal, RE83, PageID#1284; *see* Judgment, RE84, PageID#1286.

---

[5] In two of the 12 cases (*Carpenter* and *Rogers*), the district court dismissed the suits as moot over the objection of the plaintiffs.  The Tenth Circuit recently affirmed those two dismissals in a consolidated opinion.  *See Carpenter v. Vilsack*, Nos. 22-8079, 23-1122, 2023 WL 6810960 (10th Cir. Oct. 16, 2023) (unpublished).

C.    **Plaintiff's Request for Attorney's Fees**

Plaintiff thereafter moved for attorney's fees under EAJA Section 2412(d) (as well as for costs under Section 2412(a)).  The government opposed the motion on various grounds, including that plaintiff did not qualify as a "prevailing party"; that the government's position had been substantially justified; and that special circumstances made an award of fees unjust, including insofar as plaintiff primarily sought fees for hours worked that did not culminate in court-ordered success.  *Cf.* 28 U.S.C. § 2412(d)(1)(A).

The district court denied plaintiff's motion because he did not qualify as a prevailing party.  Order Denying Pl.'s Mot. for Attorney's Fees & Costs (Fee Order), RE96, PageID#1637-45.  The court explained that "[t]o be considered a prevailing party, a litigant must have 'receive[d] at least some relief on the merits of his claim' amounting to 'a court-ordered change in the legal relationship between the plaintiff and the defendant.'"  *Id.* at 4, PageID#1640 (quoting *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001)).  Here, because plaintiff's equal-protection claim was ultimately "dismissed by a joint stipulation of the parties," and his other claims were dismissed on the government's motion, "the only 'success' that Plaintiff obtained … was the issuance of the preliminary injunction."  *Id.*

The question, then, was "whether obtaining [this] preliminary injunction, without more, elevate[d] … plaintiff to prevailing party status." *Id.*

Summarizing this Court's precedent, the district court explained that "while preliminary injunction recipients may sometimes be prevailing parties, the nature of preliminary relief, which usually does not create lasting change in the legal relationship between the parties, 'will generally counsel against fees.'" Fee Order 5, RE96, PageID#1641 (quoting *McQueary v. Conway*, 614 F.3d 591, 601 (6th Cir. 2010)).  That is, "a plaintiff who 'wins a preliminary injunction and nothing more' is almost never a prevailing party." *Id.* at 4, PageID#1640 (quoting *McQueary*, 614 F.3d at 604).  The court explained that, in determining whether an exception exists to that general rule, courts apply a "contextual and case-specific inquiry" to determine whether "plaintiff obtained a change to 'the legal relationship between the parties' that was 'court-ordered, material,' and 'enduring.'" *Id.* at 5-6, PageID#1641-42 (first quoting *McQueary*, 614 F.3d at 601, then quoting *Miller*, 936 F.3d at 448).  An injunction that provides "something that could not later be taken away"—*i.e.*, where "preliminary relief becomes, in effect, permanent relief"— will generally qualify a plaintiff as a prevailing party, whereas an injunction that provides "temporary and revocable" relief will not.  *Id.* at 7-8, PageID#1643-44 (citations omitted).

13

Applying those principles, the district court concluded that the July 8, 2021 preliminary injunction had not awarded plaintiff any material, enduring benefit. "Here, Plaintiff received preliminary relief that was by nature 'temporary and revocable,' *i.e.*, an injunction precluding the Government from implementing § 1005 until a decision on the merits of the case could be rendered." Fee Order 8, RE96, PageID#1644. That order provided "nothing lasting—no permanent change of status, no irrevocable benefit, and no enduring opportunity to profit from the Court's order." *Id.* at 9, PageID#1645. To the extent plaintiff can be deemed to have ever obtained any permanent relief, it was only as a product of Congress's repeal of Section 1005. But "a legislative repeal of a challenged statutory provision … does not amount to a 'court-ordered change in the legal relationship' between the plaintiff and defendant, as required to establish prevailing-party status." *Id.* at 5, PageID#1641 (quoting *McQueary*, 614 F.3d at 597).

Having concluded that plaintiff did not qualify as a "prevailing party" within the meaning of EAJA, the district court did not address whether plaintiff could satisfy the other prerequisites for an award of EAJA fees. *See* Fee Order 4 n.2, RE96, PageID#1640 n.2.[6]

---

[6] Of the 12 cases brought challenging Section 1005, only one other case has involved any fee litigation. In that case, *Wynn*, the district court likewise

*Continued on next page.*

14

## SUMMARY OF ARGUMENT

The district court properly denied plaintiff's motion for attorney's fees and costs under the Equal Access to Justice Act. Plaintiff brought suit to challenge the constitutionality of a duly enacted statute, Section 1005 of the American Rescue Plan Act, that would have provided loan-repayment assistance to socially disadvantaged farmers and ranchers. The district court entered a preliminary injunction to preserve the status quo and prevent a feared exhaustion of program funds, but Congress repealed the statute before the court could finally adjudicate the dispute. The parties accordingly stipulated to dismissal of this litigation as moot. Plaintiff's request for attorney's fees and costs fails for multiple reasons.

**A.** As the district court concluded, plaintiff does not qualify as a "prevailing party" under well-established precedent. For a plaintiff to prevail, he generally must obtain an "enforceable judgment[] on the merits" or a "court-ordered consent decree[]." *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Servs.*, 532 U.S. 598, 604 (2001). In order for a preliminary injunction to qualify, the injunction must afford relief that is

---

denied the fee request on the basis that entry of a status-quo injunction, without more, did not render the plaintiff a prevailing party. *See Wynn v. Vilsack*, No. 3:21-cv-514, 2023 WL 6158488 (M.D. Fla. Sept. 21, 2023).

"material" and "enduring"—that is, concrete and irrevocable. *McQueary v. Conway*, 614 F.3d 591, 597-98 (6th Cir. 2010).

Plaintiff has failed to show that the July 8, 2021 order satisfies those requirements. The order did not afford "enduring" relief in the legally relevant sense because it did not provide plaintiff any irrevocable benefit but, instead, served only to preserve the status quo during the litigation. Moreover, because the district court's order was duplicative of injunctions entered by other courts from which plaintiff already benefited, its order did not afford plaintiff any material relief. Any change in the parties' relationship that did endure is attributable not to the district court's order but to Congress's legislative action.

**B.** In any event, plaintiff cannot satisfy EAJA's other requirements.

**1.** The government's position in this litigation was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The Executive Branch is almost invariably justified in defending the constitutionality of duly enacted federal statutes. That rule holds here: Congress had a legitimate basis for concluding that Section 1005 was within its authority to enact; USDA is not asserted to have done anything other than begin to faithfully implement its statutory instructions; and the government's conduct of this litigation has been beyond reproach. It is simply implausible that Congress intended the substantial-

justification requirement to make agencies second-guess whether they should implement and defend congressional enactments.

**2.**  For similar reasons, this Court may also affirm because an award of fees in these circumstances would be "unjust."  28 U.S.C. § 2412(d)(1)(A). The preliminary injunction entered in this case was duplicative (both in its reasoning and in its scope of relief) of injunctions previously entered by other courts.  Plaintiff wrongly seeks to impose an attorney's fees penalty on USDA when the Executive Branch has done nothing more than faithfully implement and defend Congress's own enactments.  And the fee award plaintiff seeks is largely directed to work that post-dated the preliminary injunction and, as to the remaining hours, is out of proportion to any marginal relief he obtained.

## STANDARD OF REVIEW

This Court "review[s] a district court's decision denying EAJA fees for abuse of discretion."  *Griffith v. Commissioner of Soc. Sec.*, 987 F.3d 556, 563 (6th Cir. 2021).  The determination whether plaintiff qualifies as a "prevailing party" is ultimately a question of law reviewed de novo, *Miller v. Caudill*, 936 F.3d 442, 448 (6th Cir. 2019), but involves a "contextual and case-specific inquiry" ordinarily best undertaken by the district court, *McQueary v. Conway*, 614 F.3d 591, 604 (6th Cir. 2010).

## ARGUMENT

## THE DISTRICT COURT PROPERLY DENIED PLAINTIFF'S MOTION FOR ATTORNEY'S FEES.

The United States, as sovereign, is immune from liability for attorney's fees except to the extent Congress has specifically provided otherwise. *See, e.g.*, *Ardestani v. Immigration & Naturalization Serv.*, 502 U.S. 129, 137 (1991). To recover attorney's fees under EAJA Section 2412(d), "a plaintiff must satisfy three conditions: (1) [he] must be a 'prevailing party'; (2) the Government's opposing position must have been without substantial justification; and (3) there must be no special circumstances that warrant denying relief." *DeLong v. Commissioner of Soc. Sec. Admin.*, 748 F.3d 723, 725 (6th Cir. 2014). Plaintiff satisfies none of these conditions.

## A.    Plaintiff Does Not Qualify As A "Prevailing Party"

**1.**  EAJA authorizes an award of attorney's fees or costs against the government only to the extent that the party seeking the award qualifies as a "prevailing party." 28 U.S.C. §§ 2412(a)(1), 2412(d)(1)(A). "The party seeking fees bears the burden of proving that it was a prevailing party[.]" *United States v. Tennessee*, 780 F.3d 332, 336 (6th Cir. 2015).

The term "prevailing party," as used in numerous fee-shifting statutes, is a "legal term of art." *McQueary v. Conway*, 614 F.3d 591, 597 (6th Cir. 2010) (quoting *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human*

*Servs.*, 532 U.S. 598, 603 (2001)); *see Heeren v. City of Jamestown*, 39 F.3d 628,

631 (6th Cir. 1994) (interpreting "prevailing party" in EAJA "consistently with

its use in other fee-shifting statutes").  "'The touchstone of the prevailing party

inquiry' … is 'the material alteration of the legal relationship of the parties in a

manner which Congress sought to promote in the fee statute.'"  *Sole v. Wyner*,

551 U.S. 74, 82 (2007) (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch.

Dist.*, 489 U. S. 782, 792-93 (1989)).

To gain prevailing-party status, a plaintiff must obtain relief that is

"judicially sanctioned." *Buckhannon*, 532 U.S. at 605.  "[E]nforceable

judgments on the merits and court-ordered consent decrees create the 'material

alteration of the legal relationship of the parties' necessary to permit an award

of attorney's fees." *Id.* at 604.  "Conversely, '[a] defendant's voluntary change

in conduct, although perhaps accomplishing what the plaintiff sought to

achieve by the lawsuit, lacks the necessary judicial imprimatur on the change'

sufficient for a plaintiff to be considered a prevailing party." *Marshall v.

Commissioner of Soc. Sec.*, 444 F.3d 837, 840 (6th Cir. 2006) (quoting

*Buckhannon*, 532 U.S. at 605).  It is thus commonplace that federal litigation

terminates without any "prevailing party," such as when a case ends in

mootness, voluntary dismissal, or private settlement.

19

This Court has often had occasion to apply these principles to plaintiffs who obtain preliminary injunctions prior to their case being rendered moot. In *McQueary*, the Court explained that "the 'preliminary' nature of [such] relief" usually does not "create a lasting change in the legal relationship between the parties" but rather simply preserves the status quo pending further litigation. *McQueary*, 614 F.3d at 601. The Court accordingly reasoned that "when a claimant wins a preliminary injunction and nothing more, that usually will not suffice" to establish prevailing-party status. *Id.* at 604.

The Court stopped short of concluding that "preliminary-injunction winners are *never* eligible for prevailing-party status," however. *McQueary*, 614 F.3d at 600. In some circumstances, a court order is not a mere "holding-pattern injunction[]" but instead provides an irrevocable material benefit. *Id.* at 601. In these circumstances—in which a plaintiff's request for permanent relief is rendered moot not by the defendant's voluntary action but instead by "court-ordered success and the passage of time," *id.* at 599—it may be proper to deem the plaintiff a prevailing party. Whether or not this "occasional exception[]" exists is to be determined through "contextual and case-specific inquiry," *id.* at 604, which this Court approaches "with both hesitancy and skepticism" given that entry of preliminary relief ordinarily does not render a plaintiff a prevailing party, *Miller v. Caudill*, 936 F.3d 442, 448 (6th Cir. 2019).

20

In conducting this case-specific inquiry, this Court considers whether there has been a "change in the legal relationship between the parties" that is "court-ordered, material, [and] enduring." *Miller*, 936 F.3d at 448. To be "court-ordered," the change in the parties' relationship "must [be] caused" by the court's own order, not by a "voluntary modification" of the defendant's conduct (whether in response to being sued or otherwise). *Id.*; *see also McQueary*, 614 F.3d at 601. A change is "material" only if it "directly benefits a plaintiff by modifying the defendant's behavior toward him." *McQueary*, 614 F.3d at 598 (brackets and quotation marks omitted). And "for the change to have been *enduring*, it must have been irrevocable." *Miller*, 936 F.3d at 448.

These principles are illuminated by this Court's recent decisions. Other plaintiffs were held to qualify as prevailing parties when preliminary injunctions enabled them to accomplish the concrete objectives they sought— to "conduct voter-registration drives," *Tennessee State Conference of the NAACP v. Hargett*, 53 F.4th 406, 410 (6th Cir. 2022); to resume religious gatherings, *Roberts v. Neace*, 65 F.4th 280 (6th Cir. 2023); to obtain licenses to marry, *Miller*, 936 F.3d at 449; or to "exercise their First Amendment rights at a specific time and place," *McQueary*, 614 F.3d at 599 (discussing *Young v. City of Chicago*, 202 F.3d 1000 (7th Cir. 2000)). In those instances, the injunctive order provided immediate relief that could not later be undone; any question of

21

permanent relief as to the matters addressed by the injunction was "mooted" by "the passage of time." *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 541 (6th Cir. 2019).

In contrast, plaintiffs have been held *not* to qualify as prevailing parties in circumstances where the preliminary injunction afforded them no irrevocable material benefit, such as where the order precluded enforcement of a statute in general terms, *see McQueary v. Conway*, 508 F. App'x 522 (6th Cir. 2012), or simply maintained the status quo, *see, e.g.*, *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 753-54 (6th Cir. 2002); *Bobay v. Wright State Univ.*, No. 22-4007, 2023 WL 3963847, at *1, 4 (6th Cir. June 13, 2023) (unpublished).  In those cases, any permanent success obtained by the plaintiffs was a result of voluntary action by the defendant, not court-ordered success and "the passage of time."  *Dewine*, 931 F.3d at 541.  *Accord, e.g.*, *Biodiversity Conserv. Alliance v. Stem*, 519 F.3d 1226, 1232 (10th Cir. 2008); *Northern Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1086 (8th Cir. 2006); *Thomas v. National Sci. Found.*, 330 F.3d 486, 493 (D.C. Cir. 2003); *John T. ex rel. Paul T. v. Delaware Cty. Intermediate Unit*, 318 F.3d 545, 558-59 (3d Cir. 2003); *Markham v. International Ass'n of Bridge, Structural & Ornamental Iron Workers*, 901 F.2d 1022, 1027 (11th Cir. 1990).

**2.**  The district court correctly applied these principles in determining that plaintiff does not qualify as a prevailing party.  This case ended not in any

"enforceable judgment[] on the merits" or "court-ordered consent decree[],"
but instead in a stipulated dismissal by all parties on mootness grounds.
*Buckhannon*, 532 U.S. at 604; *see* Stipulation, RE83, PageID#1284-85;
Judgment, RE84, PageID#1286.  And the July 8, 2021 preliminary injunction
did not afford plaintiff any court-ordered relief that was enduring or material,
much less both.

First, the injunction entered in this case did not provide any permanent
relief.  The court understood its order as a holding-pattern injunction "to
preserve the status quo."  PI Order 24, RE41, PageID#879; *see id.* at 8,
PageID#863.  By its terms, the order simply enjoined defendants "from
implementing Section 1005 … until further orders of the Court."  *Id.* at 24,
PageID#879.  The order did not authorize plaintiff to take or forgo any
concrete action—it provided him "no permanent change of status, no
irrevocable benefit, and no enduring opportunity to profit from the Court's
order."  Fee Order 9, RE96, PageID#1645.  Any lasting relief plaintiff has
obtained is the product not of "court-ordered success and the passage of time,"
*McQueary*, 614 F.3d at 599, but rather of Congress's decision to rescind Section
1005.  This "legislative repeal" does not qualify plaintiff for prevailing-party
status.  Fee Order 5, RE96, PageID#1641; *see Miller*, 936 F.3d at 448 ("[F]or

23

the change to have been *court ordered*, … it can't stem from [defendant's] voluntary modification of [its] conduct.").

Second, the district court's preliminary injunction did not effectuate any material change. A plaintiff qualifies as a prevailing party only if he wins relief that "directly benefited [him] by altering how [the government] treated [him]." *Miller*, 936 F.3d at 448. Here, even before entry of the district court's preliminary injunction, USDA was already subject to, and acting in compliance with, multiple directives from other courts that afforded the same relief.[7] The district court's additional order reiterating that the government was barred from "implementing Section 1005" thus did not change the requirements under which USDA was already operating. *Cf.* PI Order 24, RE41, Page ID#879. Indeed, the district court itself understood as much, and deemed its injunction to be warranted only because of the risk that the earlier-entered injunctions might somehow be dissolved.

**3.** None of plaintiff's arguments identify any error in this analysis.

**a.** Plaintiff's assertion that he should be deemed a prevailing party because "his preliminary injunction was based on his likelihood of success,"

---

[7] As discussed above (pp. 6-7), these orders included not only a temporary restraining order (*Faust*) and a preliminary injunction that enjoined implementation of Section 1005 nationwide (*Wynn*), but also an order barring USDA from considering the race of plaintiff or other class members to the extent any implementation of Section 1005 proceeded (*Miller*).

Br. 2, reflects a misunderstanding of the prerequisites for equitable relief.

Every preliminary injunction is "merits-based" (Br. 6) in the sense that "[a]

plaintiff seeking a preliminary injunction *must establish* that he is likely to

succeed on the merits." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20

(2008) (emphasis added); *see, e.g.*, *Stinnie v. Holcomb*, 77 F.4th 200, 213 (4th Cir.

2023) (en banc) ("Today, we may expect all preliminary injunctions to be

solidly merits-based[.]").  Precedent from both the Supreme Court and this

Court affirmatively requires a district court to evaluate the merits before

issuing any injunction and, in turn, directs that relief be denied "where the

movant presents no likelihood of merits success." *Wilson v. Williams*, 961 F.3d

829, 844 (6th Cir. 2020) (quoting *Daunt v. Benson*, 956 F.3d 396, 421 (6th Cir.

2020); *see Munaf v. Geren*, 553 U.S. 674, 690 (2008) (reversing injunction were

no likelihood of success on the merits was found).  If it were enough that the

likelihood-of-success criterion were satisfied, every plaintiff who obtains a

preliminary injunction would qualify as a prevailing party, contrary to this

Court's rejection of the proposition that "preliminary-injunction winners are

*always* eligible for fees." *McQueary*, 614 F.3d at 600.

Plaintiff's suggestion that the district court's view of the merits was final

(Br. 14) is both factually inaccurate and legally insufficient to establish

prevailing-party status.  As a factual matter, the district court did *not* conclude

25

that there was "no chance … that the result would have been different" at trial.

Br. 8. On the contrary, it made clear that its preliminary injunction was

intended not to end the dispute but rather to "preserve the status quo" pending

further litigation, PI Order 24, RE41, PageID#879; that its merits assessment

was preliminary and based "[o]n the record before the Court at this stage in the

case," *id.* at 16-17, PageID#871-72 (quoting *Wynn v. Vilsack*, 545 F. Supp. 3d

1271, 1286 (M.D. Fla. 2021)); and that the government "will have the

opportunity to present [further] evidence at a trial on the merits," *id.* at 12 n.12,

PageID#867. In any event, as a legal matter, a plaintiff may qualify as a

prevailing party not merely when he succeeds on the merits ("emphatic[ally]"

or otherwise, Br. 8) but when he obtains court-ordered relief that is both

material and enduring.[8]

    **b.** Though claiming to have obtained material relief, plaintiff does not

seriously dispute that the preliminary injunction in *this* case did not "modif[y]"

the government's behavior. *McQueary*, 614 F.3d at 598. USDA had already

halted implementation of Section 1005 in compliance with nationwide

---

[8] Plaintiff's suggestion that the government's failure "even [to] appeal" the preliminary injunction "alone makes [him] the prevailing party," Br. 8, is without basis. A defendant is not required to take an interlocutory appeal from a preliminary injunction. Here, the government reasonably decided that, in lieu of interlocutory appeal, it would work to prepare a stronger evidentiary record and then seek relief at summary judgment. *See supra* p. 10.

injunctive orders entered by other courts.  The fact that these other courts, at the behest of other litigants, "made [the agency] stop" (*cf.* Br. 8) is not a reason why plaintiff in *this* case should be deemed a prevailing party.  It is not enough that some other tribunal caused a change to the government's behavior—for a plaintiff to prevail, plaintiff himself must have effectuated the change.

Plaintiff likewise fails to explain how the preliminary injunction provided him any permanent, irrevocable relief.  Plaintiff theorizes that the injunction should be deemed "enduring" simply because it was "never vacated" and "lasted for over a year," which he says was "exactly as long as it was needed."  Br. 2, 8.  But the fact that a preliminary injunction is never formally vacated (and, instead, dissolves by operation of law at final judgment) is not enough in itself to establish prevailing party status.  *See Hargett*, 53 F.4th at 410.  More fundamentally, plaintiff's assertions establish nothing more than that the district court's order was a prototypical "holding-pattern injunction[]," preserving the status quo pending further litigation.  *McQueary*, 614 F.3d at 601; *see* PI Order 8, 24, RE41, PageID#863, 879.  The relevant question is not simply whether an injunction lasts for some minimum period of time but, rather, whether it awards concrete relief that cannot later be taken away. *See Miller*, 936 F.3d at 448 ("[F]or the change to have been *enduring*, it must have been irrevocable[.]").  Plaintiff's assertion that an injunction need not

27

provide any "irrevocable benefit" (Br. 15-16) is flatly inconsistent with precedent. *See, e.g.*, *Roberts*, 65 F.4th at 284 (considering not simply "the longevity of the relief" but also "the nature of the injunction[]" and the "irrevocability of the relief").

Plaintiff's duration-based argument, though disclaiming reliance on the "catalyst theory" rejected in *Buckhannon*, effectively restates that theory in other terms. Like this case, *Buckhannon* involved a "court-ordered preliminary injunction" (albeit one entered on consent) that was later rendered "moot" by a legislative repeal. *McQueary*, 614 F.3d at 597 (discussing *Buckhannon*, 532 U.S. at 601). The order at issue in *Buckhannon* could just as easily be said to have "secured [the plaintiff's] rights for as long as [the plaintiff] needed" (Br. ix). But the Supreme Court specifically held that the plaintiff did not qualify as a prevailing party because it had obtained no permanent "court-ordered 'change in the [parties'] legal relationship,'" notwithstanding that the injunction had temporarily benefited the plaintiff in the interim by suspending enforcement of the challenged provisions. *Buckhannon*, 532 U.S. at 604 (alterations omitted).[9]

---

[9] The Supreme Court in *Buckhannon* also rejected arguments resembling plaintiff's that were founded upon the alleged "gamesmanship" and deterrence of litigation that might result "if the government can prevent a party from obtaining attorney fees simply by repealing a statute." *Cf.* Br. 9, 11, 25-29.

*Continued on next page.*

**c.** Plaintiff's final set of arguments—that the relief awarded here should be deemed "irrevocable" because the injunction was intended to "halt[] the irreparable injury inflicted by Section 1005," Br. 12—is similarly unavailing. As discussed, it was the government's adherence to other court orders, not the preliminary injunction entered here, that "halt[ed]" further implementation of Section 1005. *See supra* p. 24.

Moreover, even if (contrary to fact) plaintiff could show that the district court's injunction in this case had had any practical effect of obviating irreparable harm that otherwise would have occurred, that is not enough to render plaintiff a prevailing party. "Irreparable harm is an 'indispensable' requirement" for issuance of *any* preliminary injunction: "'even the strongest showing' on the other factors cannot justify a preliminary injunction if there is no 'imminent and irreparable injury.'" *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) (quoting *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 326-27 (6th Cir. 2019)). That is because, absent proof of impending irreparable injury, "there's no need to grant relief *now* as opposed to

---

The Court explained that such arguments were both "entirely speculative" and inappropriately "discount[ed] the disincentive" that significant fee awards "may have upon a defendant's decision to voluntarily change its conduct." *Buckhannon*, 532 U.S. at 608. Regardless, these policy arguments are unavailing "[g]iven the clear meaning of 'prevailing party' in the fee-shifting statutes." *Id.* at 610.

29

at the end of the lawsuit." *D.T.*, 942 F.3d at 327; *see also id.* at 329 (Nalbandian, J., concurring).

Again, on plaintiff's theory, if preventing irreparable harm were enough to prevail, then every preliminary injunction would of necessity render the plaintiff a prevailing party. Yet, as plaintiff recognizes, "preliminary-injunction winners are not 'always eligible for fees.'" Br. 14 (emphasis omitted) (quoting *McQueary*, 614 F.3d at 600). Forestalling interim harm is not enough; to prevail, a plaintiff must receive concrete, irrevocable relief.

Finally, plaintiff posits that a judicial guarantee of "[e]qual opportunity," for "however fleeting a window," should be deemed "an irrevocable benefit." Br. 24-25. But no such "equal opportunity" was bestowed here. The district court's July 8, 2021 order did not guarantee equal access to Section 1005's benefits; rather, it prevented implementation of the program altogether. Plaintiff could have pursued a different injunction that would have afforded him affirmative relief (*i.e.*, relief akin to the voting-registration drives in *Hargett* or marriage licenses in *Miller*), but he did not do so. *Cf. Comptroller of the Treasury of Md. v. Wynne*, 575 U.S. 542, 569 (2015) (noting that a denial of equal treatment can be cured "by either 'leveling up' or 'leveling down'"). The "holding-pattern" relief that plaintiff instead chose to pursue does not render him a prevailing party. *McQueary*, 614 F.3d at 600.

30

**B.    Plaintiff Also Does Not Satisfy EAJA's Other Requirements**

The district court correctly ruled that plaintiff is not a prevailing party, and its order may be affirmed on that basis.  But this Court could additionally or alternatively affirm on other grounds raised below:  plaintiff cannot recover fees under EAJA in any event because "the position of the United States was substantially justified" and because "special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  Plaintiff urges this Court to reach those questions (Br. 9, 11, 29), and the government would welcome affirmance on any available ground.

**1.    The Government's Position Was Substantially Justified.**

**a.**  Unlike other fee-shifting statutes, Section 2412(d) of EAJA does not automatically award attorney's fees to a "prevailing party."  Rather, fees are authorized only where the government's position is not "substantially justified."  28 U.S.C. § 2412(d)(1)(A).  That determination is made "as a whole" and includes both the government's arguments "during litigation as well as its pre-litigation conduct."  *Griffith v. Commissioner of Soc. Sec.*, 987 F.3d 556, 564 (6th Cir. 2021); *see* 28 U.S.C. § 2412(d)(2)(D).  Any fees awarded must be paid by the agency whose program or conduct is at issue.  28 U.S.C. § 2412(d)(4); *see Responsibility of Agencies to Pay Attorney's Fee Awards Under the Equal Access to Justice Act*, 31 Op. O.L.C. 229 (2007).

"[S]imply because [the government] lost the case" does not "raise a[ny] presumption that the Government position was not substantially justified." *Scarborough v. Principi*, 541 U.S. 401, 415 (2004). Rather, to be "substantially justified," a position need only be "'justified in substance or in the main'"— that is, "justified to a degree that could satisfy a reasonable person." *Griffith*, 987 F.3d at 563 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "In other words, a position is substantially justified if 'a reasonable person could think it correct.'" *Id.* (quoting *Pierce*, 487 U.S. at 566 n.2). Though this standard requires "that the government's position must be 'more than merely undeserving of sanctions for frivolousness,'" a position can readily be "'justified even though it [was] not correct.'" *Id.* (quoting *Pierce*, 487 U.S. at 566 & n.2). By incorporating this substantial-justification standard, EAJA thus avoids "chill[ing] the government's right to litigate" and only imposes fee liability as necessary to "redress[] governmental abuse." *Id.* (quoting *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993)).[10]

---

[10] A district court's determination whether the government's position is "substantially justified" is ordinarily reviewed for abuse of discretion. *Pierce*, 487 U.S. at 558. In certain instances, however, the government's position can be found substantially justified "as a matter of law." *McLaughlin v. Hagel*, 767 F.3d 113, 119 (1st Cir. 2014); *see, e.g.*, *id.* at 119-20 (affirming denial of fees where government's "litigate-to-lose position" was "the most constitutionally appropriate available" in the circumstances).

32

The nature of the challenged conduct also informs the analysis. In deciding to permanently enact EAJA, Congress was particularly concerned with deterring "the use of excessive regulatory authority" and other "agency actions which go beyond Congress's intent." S. Rep. No. 98-586, at 7, 17 (1984). By contrast, where the agency's "position" is simply to defend Congress's own enactments, an award of attorney's fees will ordinarily not be appropriate. As this Court has explained when denying EAJA fees, "'there is no doubt that the Government is entitled—if not obligated—to put forth a good faith effort to defend the constitutionality of federal laws, especially those that have never been found unconstitutional'" at the time suit was brought. *Dvorkin v. Gonzales*, 173 F. App'x 420, 424 (6th Cir. 2006) (quoting *Vacchio v. Ashcroft*, 404 F.3d 663, 675-76 (2d Cir. 2005)); *see also Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005); *Kiareldeen v. Ashcroft*, 273 F.3d 542, 549 (3d Cir. 2001); *United States v. One Parcel of Real Prop.*, 960 F.2d 200, 210 (1st Cir. 1992); *United States v. 4880 S.E. Dixie Highway*, 838 F.2d 1558, 1562 (11th Cir. 1988); *Grace v. Burger*, 763 F.2d 457, 458 n.5 (D.C. Cir. 1985).

Indeed, the President's constitutional obligation to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, generally encompasses a duty to defend the constitutionality of statutes whenever reasonable arguments can be made in their defense. *See, e.g.*, *The Attorney General's Duty to Defend the*

33

*Constitutionality of Statutes*, 5 Op. O.L.C. 25 (1981); *The Attorney General's Duty to Defend and Enforce Constitutionally Objectionable Legislation*, 4A Op. O.L.C. 55 (1980). Given this duty, "it is implausible that Congress intended to penalize the government for defending the constitutionality of its own enactments through the imposition of attorney fee liability." *Kiareldeen*, 273 F.3d at 550-51.

Rather, "the substantial justification requirement in the EAJA means that the government, when adhering to the dictates of Congress, can be found to lack substantial justification only if, at the time the government acted, the statute's invalidity was clearly established." *One Parcel of Real Prop.*, 960 F.2d at 211. That rule protects Congress's interest in ensuring the effective defense of its own enactments. And it protects an agency's operating funds from being diverted to fee awards in cases where the agency itself has engaged in no "abuse," *Griffith*, 987 F.3d at 563, but instead has simply followed Congress's commands.

**b.** Under these principles, the government's position in this case was substantially justified as a matter of law. This case concerns not the reasonableness of any agency action but, rather, the constitutionality of a duly enacted federal statute. This case thus implicates the general rule that the

Executive Branch acts reasonably, and is therefore substantially justified, when defending Congress's enactments against constitutional challenge.

Though "exceptional" cases may exist, *Grace*, 763 F.2d at 458 n.5, nothing about this case remotely suggests that Congress would have viewed the government's actions in defending ARPA Section 1005 to be unjustified. First, as discussed at length in the preliminary-injunction briefing (and in subsequent summary-judgment briefing in *Miller*), Congress reasonably believed that Section 1005 was within its authority to enact. The statute was a direct response to "reprehensible historic practice[s]" of discrimination "that [plaintiff has] never disputed." Br. 3; *accord* PI Order 10, RE41, PageID#865 (acknowledging record of "systemic racial discrimination"). And the Supreme Court has repeatedly reaffirmed that the government has a compelling interest in remedying the effects of past discrimination that may sometimes justify use of race-based measures. *See, e.g.*, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 207 (2023); *Shaw v. Hunt*, 517 U.S. 899, 909 (1996); *United States v. Paradise*, 480 U.S. 149, 167 (1987).

To be sure, several district courts, ruling on partial records in a preliminary posture, doubted Congress's bottom-line judgment that all of the prerequisites for use of race-conscious measures were satisfied in the case of Section 1005. But Congress was not wrong that the Constitution affords it the

power to enact race-conscious remedial measures where a sufficient factual predicate exists, and other jurists (or even the same courts on a more complete record, *see, e.g.*, PI Order, RE 41, PageID#867 n.12; *Wynn*, 545 F. Supp. 3d at 1281 n.9) might well have concluded that Section 1005 would ultimately survive scrutiny. Indeed, plaintiff himself—in reiterating his demand for the duplicative injunction subsequently issued in this case—expressed concern that the government might succeed in "hav[ing] the[] [injunctions in *Wynn* and *Miller*] overturned," Pl.'s Resp. to Defs.' Suppl. Br. 5, RE95, PageID#1622, thus reflecting his own belief that reasonable jurists could disagree about the constitutionality of Section 1005.

Second, the government's defense of this litigation has been entirely reasonable. From the outset, it acknowledged that the statute was subject to strict scrutiny and that the government accordingly bore the burden of demonstrating its constitutionality. *See* Defs.' Opp'n to Mot. for P.I. 13, RE28-1, PageID#570. Endeavoring to carry that burden, the government put forward the most thorough factual presentation available in a preliminary posture, *see id.* at 14-31, PageID#571-88, and it made this record available to every court considering preliminary relief. Once multiple injunctions were entered, rather than pursue immediate appeals, the government elected to proceed to summary judgment so that further litigation would occur on a fuller

record, and it sought to stay duplicative litigation pending the class action in
*Miller*. These decisions streamlined the overall litigation, reduced costs for
opposing counsel, and appropriately focused courts' attention on the key legal
and factual questions. This reasonable course of conduct provides no basis to
impose an award of fees against the Executive Branch. *See, e.g.*, *Griffith*,
987 F.3d at 572 (denying fees where "the government's arguments on the
'prominent' issues in the litigation were reasonable").

    **c.** Plaintiff identifies no sound basis for finding that the government's
position here was anything other than substantially justified. Plaintiff
challenged no conduct by USDA other than its effort to implement a duly
enacted statute, and plaintiff does not assert that the Executive Branch was
wrong to defend this litigation. On the contrary, he recognizes that the
"government's attorneys are duty-bound to defend congressional statutes,"
Br. 31; *see also* Pl.'s Mem. in Supp. of Mot. for Costs, Fees & Expenses 2,
RE85-1, PageID#1291 (same), and has never suggested that such a duty did
not attach here. Nor has plaintiff offered any reason why Congress would
desire to penalize USDA by diverting the agency's operating funds—funds
needed to administer important programs benefiting farmers and ranchers—
toward fee awards premised solely on the agency's faithful implementation and
defense of Congress's laws. *Cf., e.g.*, *Orner v. Shalala*, 30 F.3d 1307, 1309

(10th Cir. 1994) (recognizing that EAJA fees, which are "paid out of agency funds," are designed to "penalize the Secretary for assuming an unjustified legal position").

Plaintiff posits that this is the rare case in which the government's constitutional defense should nonetheless be deemed unreasonable, but fails to justify that conclusion. Plaintiff principally relies on this Court's May 2021 decision directing entry of injunctive relief in *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021), which it characterizes as "controlling—and very recent— circuit precedent." Br. 31. But, for numerous reasons, *Vitolo* does not render the government's defense of this case unjustified: (1) *Vitolo* concerned a different statutory program with a different factual record, which (*inter alia*) lacked the compelling evidence of historical government discrimination that indisputably exists for Section 1005; (2) *Vitolo* was not issued until months after Congress enacted Section 1005, and after the government was already defending the statute against constitutional challenges; (3) the question resolved by *Vitolo* was itself "controversial, thorny, and unsettled," *Vitolo*, 999 F.3d at 366 (Donald, J., dissenting); and (4) the panel majority in *Vitolo* expressly reaffirmed that "remedial policies can sometimes justify preferential treatment based on race," *id.* at 361 (majority op.), in response to past government discrimination.

38

Plaintiff likewise misses the mark in asserting that the government's defense of this case should be deemed unreasonable because of its "string of losses" in other district courts in *Faust*, *Wynn*, and *Miller*.  *Cf.* Br. 31 (citing *Pierce*, 487 U.S. at 569).  None of those courts issued final decisions on the merits.  And although they entered rulings adverse to the government in a preliminary posture, none of those opinions were issued until after Congress enacted Section 1005, after plaintiff here had already brought suit, and after he moved for a preliminary injunction.  Neither Congress nor the Executive Branch can be deemed to have acted unreasonably based upon a failure to acquiesce in preliminary, out-of-circuit rulings that did not yet exist at the time the government's "position" in this case was formulated.

## 2.    A Fee Award Would Be Unjust In These Circumstances.

For many of the same reasons, this Court could also properly determine that a fee award is simply not warranted as an equitable matter.  *See* 28 U.S.C. § 2412(d)(1)(A) (precluding award of attorney's fees where "special circumstances make an award unjust"); H.R. Rep. No. 96-1418, at 11 (1980) (explaining that this provision confers "discretion to deny awards where equitable considerations dictate an award should not be made"); *cf. Air Transp. Ass'n of Canada v. FAA*, 156 F.3d 1329, 1333 (D.C. Cir. 1998) (viewing Section 2412(d)(1)(A) as "express[ing] a congressional directive for courts 'to apply

traditional equitable principles' in determining whether a prevailing party should receive a fee award under EAJA").[11]

First, as discussed, plaintiff's claimed success in this case provided him no additional benefit beyond already-existing nationwide injunctions entered by other courts. *See supra* p. 24. Courts recognize that the circumstances may warrant denial of fees where a plaintiff's efforts added little to those of other litigants. *See United States v. 27.019 Acres of Land, More or Less*, 43 F.3d 769 (2d Cir. 1994) (denying fees to party who played only marginal role in litigation); *Wilder v. Bernstein*, 965 F.2d 1196, 1204-05 (2d Cir. 1992) (similar and citing cases); *Riddell v. National Democratic Party*, 624 F.2d 539, 544-45 (5th Cir. 1980) (citing several cases that "denied an award of attorneys' fees because, even though the plaintiffs received the benefits desired from their litigation, their efforts did not contribute to achieving those results"); *Donnell v. United States*, 682 F.2d 240, 247-48 (D.C. Cir. 1982) (citing *Riddell* and noting that "[a]n example is where a lawsuit was filed to achieve an objective that was already being achieved independently").

---

[11] Plaintiff's assertion that "special circumstances" can only be "'substantive issues, such as close or novel questions of law,'" Br. 32 (quoting *National Truck Equip. Ass'n v. National Highway Traffic Safety Admin.*, 972 F.2d 669, 672 (6th Cir. 1992)), would render the special-circumstances prong superfluous. The substantial-justification inquiry already ensures the government's ability to argue a close or "novel" question without incurring fees. *See, e.g.*, *Griffith*, 987 F.3d at 572.

Second, as also discussed, this case involved the Executive Branch's defense of the constitutionality of a duly enacted federal statute. Even if Congress's action in enacting Section 1005 were somehow deemed to be unjustified and to infect the government's "position" as a whole, *cf.* 28 U.S.C. § 2412(d)(2)(D), an award of attorney's fees under EAJA constitutes redress not against Congress but against the Executive Branch. *See id.* § 2412(d)(4). In these circumstances, where a fee award would effectively penalize an agency simply for complying with its statutory obligations, an award is unjust.

Third, the fee award sought by plaintiff is out of all proportion to any modest success he could be deemed to have achieved. Plaintiff seeks some $50,000 in fees on the basis of obtaining the July 8, 2021 preliminary injunction. *Cf.* Pl.'s Suppl. Br. 8, RE95, PageID#1625. But the majority of hours for which plaintiff seeks a fee award were incurred for work performed *after* the preliminary injunction was entered and which resulted in no further relief to plaintiff. And as to the remainder of the hours (*i.e.*, those preceding entry of the preliminary injunction), plaintiff did not persuade the district court to adopt any rationale that had not already been adopted by other courts. *See generally* PI Order 9, 11, 13, 16-19, 21, 23-24, RE41, PageID#864, 866, 868, 871-74, 786, 878-89 (expressly relying upon reasoning of *Faust*, *Wynn*, and *Miller*). Congress did not intend for attorney's fees in these circumstances.

41

## CONCLUSION

For the foregoing reasons, the judgment should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
    *Principal Deputy Assistant*
    *Attorney General*

THOMAS PULHAM
  *s/ Jeffrey E. Sandberg*
JEFFREY E. SANDBERG
    *Attorneys, Appellate Staff*
    *Civil Division, Room 7214*
    *U.S. Department of Justice*
    *950 Pennsylvania Avenue NW*
    *Washington, DC 20530*
    *(202) 532-4453*
    *jeffrey.e.sandberg@usdoj.gov*

    *Counsel for Defendants-Appellees*

OCTOBER 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,292 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Calisto MT 14-point font, a proportionally spaced typeface.

*s/ Jeffrey E. Sandberg*
Jeffrey E. Sandberg

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2023, I electronically filed the foregoing response brief with the Clerk of Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*s/ Jeffrey E. Sandberg*
Jeffrey E. Sandberg

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 28(b)(1)(A)(i), the government designates

the following district court documents as relevant:

| Record Entry | Description | Page ID# |
|---|---|---|
| RE 1 | Complaint | 1-17 |
| RE 41 | Order Granting Preliminary Injunction | 856-880 |
| RE 72 | Order Granting Defendants' Motion for Partial Dismissal | 1189-1209 |
| RE 79 | Order Granting Defendants' Renewed Motion to Stay | 1273-1274 |
| RE 83 | Joint Stipulation of Dismissal | 1284-1285 |
| RE 84 | Judgment | 1286 |
| RE 85 | Plaintiff's Motion for Costs, Attorney Fees, and Expenses | 1287-1344 |
| RE 88 | Defendants' Opposition to Plaintiff's Motion for Attorney's Fees and Costs | 1380-1406 |
| RE 91 | Plaintiff's Reply in Support of Motion for Costs, Attorney Fees, and Expenses | 1593-1608 |
| RE 93 | Order Requiring Additional Briefing | 1610-1611 |
| RE 94 | Defendants' Supplemental Brief in Opposition to Plaintiff's Motion for Attorney's Fees and Costs | 1612-1617 |
| RE 95 | Plaintiff's Response to Defendants' Supplemental Brief in Opposition to Plaintiff's Motion for Attorney Fees | 1618-1636 |
| RE 96 | Order Denying Attorney's Fees | 1637-1644 |
| RE 97 | Notice of Appeal | 1646-1647 |