Case No. 23-5493

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

Robert Holman,

*Plaintiff – Appellant,*

v.

Thomas Vilsack, et al.,

*Defendants – Appellees.*

On Appeal from the United States District Court
for the Western District of Tennessee, No. 1:21-cv-02085 (Anderson, S.)

## REPLY BRIEF OF APPELLANT ROBERT HOLMAN

William E. Trachman
MOUNTAIN STATES LEGAL
FOUNDATION
2596 S. Lewis Way
Lakewood, CO
(303) 292-2021
wtrachman@mslegal.org

Braden H. Boucek
Kimberly S. Hermann
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Rd., Ste. 104
Roswell, GA 30075
(770) 977-2131
bboucek@southeasternlegal.org
khermann@southeasternlegal.org

# TABLE OF CONTENTS

ARGUMENT.......................................................................... 1

I.  The government's arguments for why Holman should not be
    found the prevailing party are unconvincing. .............................. 3

    A.  The government misunderstands this Circuit's precedents on
        when a preliminary injunction qualifies as enduring. ........ 3

    B.  The government failed to show that Holman's preliminary
        injunction was a status quo injunction.............................. 7

    C.  The government fails to establish that Holman's preliminary
        injunction was not enduring. ........................................... 8

    D.  Holman rejects the catalyst theory.................................... 12

    E.  The existence of nearly contemporaneous preliminary
        injunctions in other judicial districts does not mean that
        Holman's delivered no material benefit............................. 14

II. Nothing in EAJA's other factors supports the government. ......... 16

    A.  There is no exception under EAJA for the good faith duty
        of the government to defend laws. .................................... 16

    B.  The government's defense of Section 1005 contravened
        established law.............................................................. 20

    C.  The government's policy arguments for its defense of race
        preferences are also unconvincing.................................... 22

    D.  The government fails to show that a fee award would be unjust. 23

    E.  This Court should also award costs. ................................ 26

CONCLUSION ................................................................... 27

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                          **<u>Page(s)</u>**

*Bannister v. Knox Cnty. Bd. of Educ.*,
  49 F.4th 1000 (6th Cir. 2022) ............................................................ 7

*Bates v. United States*
  522 U.S. 23 (1998) .............................................................................. 17

*Bindas B. ex rel S.A. v. Gordon*,
  710 F.3d 608 (6th Cir. 2013) ............................................................. 14

*Bobay v. Wright State Univ.*,
  No. 22-4007, 2023 U.S. App. LEXIS 14825 (6th Cir. 2023) ............. 3

*Doe v. Univ. of Mich.*,
  78 F.4th 929 (6th Cir. 2023) ............................................................... 5

*Donnell v. United States*,
  682 F.2d 240 (D.C. Cir. 1982) ............................................................ 24

*Dowsing v. Berryhill*,
  No. 2:14-cv-02675, 2019 U.S. Dist. LEXIS 2522 (W.D. Tenn. 2019) 26

*Dubuc v. Green Oak Twp.*,
  312 F.3d 736 (6th Cir. 2002) ............................................................. 4

*Dvorkin v. Gonzales*,
  173 F. App'x 420 (6th Cir. 2006) ....................................................... 20

*Faust v. Vilsack*,
  519 F. Supp. 3d 470 (E.D. Wisc. 2021) ............................................. 11, 16

*G.S. v. Lee*,
  No. 22-5969, 2023 U.S. App. LEXIS 21419 (6th Cir. 2023) ............. 7, 9, 11

*Grace v. Burger*,
  763 F.2d 457 (D.C. Cir. 1985) ............................................................ 18

*Grason Elec. Co. v. NLRB,*
    951 F.2d 1100 (9th Cir. 1991) ............................................................ 24

*Green Party of Tenn. v. Hargett,*
    767 F.3d 533 (6th Cir. 2014) .......................................................... 5, 6

*Griffith v. Comm'r of Soc. Sec.,*
    987 F.3d 564 (6th Cir. 2021) ............................................................ 22

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ...................................................................... 18

*Hescott v. City of Saginaw,*
    757 F.3d 518 (6th Cir. 2014) ............................................................ 19

*Hutto v. Finley,*
    437 U.S. 678 (1978) ...................................................................... 19

*Keene Corp. v. United States,*
    508 U.S. 200 (1993) ...................................................................... 17

*League of Women Voters v. FCC,*
    798 F.2d 1255 (9th Cir. 1986) ...................................................... 17, 18

*McQueary v. Conway,*
    614 F.3d 591 (6th Cir. 2010) ...................................................... Passim

*Miller v. Caudill,*
    936 F.3d 442 (6th Cir. 2019) ........................................................ 9, 18

*Morscott, Inc. v. Cleveland,*
    936 F.2d 271 (6th Cir. 1991) ............................................................ 18

*Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.,*
    972 F.2d 669 (6th Cir. 1992) ...................................................... 17, 24

*Perket v. Sec'y of Health & Hum. Servs.,*
    905 F.2d 129 (6th Cir. 1990) ............................................................ 22

*Pierce v. Underwood,*
    487 U.S. 552 (1988) .................................................................. Passim

*Planned Parenthood Sw. Ohio Region v. Dewine,*
    931 F.3d 530 (6th Cir. 2019) ................................................................ Passim

*Plessy v. Ferguson,*
    163 U.S. 537 (1896) ................................................................ 23

*Riddell v. National Democratic Party,*
    624 F.2d 539 (5th Cir. 1980) ................................................................ 25

*Roberts v. Neace,*
    65 F.4th 280 (6th Cir. 2023) ................................................................ Passim

*Rosciszewski v. Adducci,*
    983 F. Supp. 2d 910 (E.D. Mich. 2013) ................................................................ 19

*Sakhawati v. Lynch,*
    839 F.3d 476 (6th Cir. 2016) ................................................................ 24

*Shaw v. Hunt,*
    517 U.S. 899 (1996) ................................................................ 20

*Stinnie v. Holcomb,*
    77 F.4th 200 (4th Cir. 2023) ................................................................ 6, 13

*Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.,*
    143 S. Ct. 2141 (2023) ................................................................ 23

*Taucher v. Brown-Hruska,*
    396 F.3d 1168 (D.C. Cir. 2005) ................................................................ 22

*Taylor v. United States,*
    815 F.2d 249 (3d Cir. 1987) ................................................................ 19

*Tenn. State Conf. of NAACP v. Hargett,*
    53 F.4th 406 (6th Cir. 2022) ................................................................ Passim

*United States ex rel. Wall v. Circle C. Constr., LLC,*
    868 F.3d 466 (6th Cir. 2017) ................................................................ Passim

*United States v. 27.09 Acres of Land, More or Less,*
    43 F.3d 769 (2d Cir. 1994) ................................................................ 24

*United States v. Health Possibilities, P.S.C.*,
   207 F.3d 335 (6th Cir. 2000) ................................................................. 17

*United States v. One Parcel of Real Prop.*,
   960 F.2d 200 (1st Cir. 1992) ................................................................. 15

*Ultima Servs. v. United States Dep't of Agric.*,
   No. 2L20-cv-00041, 2023 U.S. Dist. LEXIS 124268 (E.D. Tenn. 2023)  22-23

*Vitolo v. Guzman*,
   999 F.3d 353 (6th Cir. 2021) ................................................... Passim

*Watson v. Cnty. of Riverside*,
   300 F.3d 1092 (9th Cir. 2002) ................................................................. 6

*Wilder v. Bernstein*,
   965 F.2d 1196 (2d Cir. 1992) ................................................................. 25

*Wilson v. Long*,
   No. 3:14-cv-01492, 2020 U.S. Dist. LEXIS 13904 (M.D. Tenn. 2020)    6

*Wilson v. Williams*,
   961 F.3d 829 (6th Cir. 2020) ................................................................. 4

*Wooldridge v. Marlene Indus. Corp.*,
   898 F.2d 1169 (6th Cir. 1990) ................................................................. 26

*Wynn v. Vilsack*,
   545 F. Supp. 3d 1271 (M.D. Fla. 2021) ........................................... 10, 17, 18

## **Statutes**

7 U.S.C. § 2003 ................................................................. 23

28 U.S.C. 2412(b) ................................................................. 17

28 U.S.C. § 2412(a) ................................................................. 26

28 U.S.C. § 2412(d)(1)(A) ................................................................. 16, 18

**<u>Rules</u>**

Fed. R. App. P. 32(a)(5)..................................................................    28

Fed. R. App. P. 32(a)(6)..................................................................    28

Fed. R. App. P. 32(a)(7)(B)............................................................    28

Fed. R. App. P. 32(f).......................................................................    28

Fed. R. App. Proc. 32(g)(1)............................................................    28

**<u>Regulations</u>**

7 C.F.R. § 764.202.........................................................................    23

7 C.F.R. § 767.151.........................................................................    23

88 Fed. Reg. 62,285 (Sept. 11, 2023)............................................    23

2021 S.278 § 2 ..............................................................................    20

## ARGUMENT

The government barely addresses Holman's primary argument that the district court's unequivocal finding of his likely success should justify fees. It merely asserts that all preliminary injunctions are based on the likelihood of success, as if the district court's finding was unimportant. But this Court has consistently maintained a distinction between preliminary injunctions granted based on a strong likelihood of success and those issued to preserve the status quo. The government's argument that the preliminary injunction issued here aimed—above all else—at preserving the status quo, is both raised for the first time on appeal and undermined by a cursory review of the order. Rather, it was based on an emphatic finding of Holman's likelihood of success. The government's failure to appeal the injunction, and its consistent string of losses in courts that have considered the constitutionality of Section 1005, further underscore the strength of Holman's case. Moreover, the government's failure to acknowledge that it was spending Section 1005 funds before court intervention and at the timing of the ruling, which came after full briefing and argument, make it impossible to argue this was a status quo injunction.

The government's insistence that a preliminary injunction be made permanent before it can qualify as enduring fundamentally inverts the standard for fees. Preliminary injunctions based upon the merits are enduring unless they are reversed on the merits, not only when they are upheld in a final judgment. Holman's

injunction qualifies as enduring because it lasted as long as it was needed. The repeal of Section 1005 never undermined the finding that it was likely unconstitutional.

Equally unconvincing is the government's insistence that Holman obtained no irrevocable benefit. Participating in a one-time event is not a requirement. Holman need not show that he capitalized on a benefit from the injunction at all. Besides, he halted an irreparable injury, and the preliminary injunction kept the government from spending all the money set aside for Section 1005 before the program could be reviewed. These are irrevocable benefits. The government also fails to show that Holman relies on the catalyst theory when he did not lose on the merits and the merits-based preliminary injunction changed the relationship between the parties.

Finally, the existence of other injunctions in other cases that immediately preceded Holman's does not mean he was not the prevailing party in *his* case. Courts look to whether the preliminary injunction obtained relief requested in the complaint, not for practical significance, when evaluating whether a party prevailed. The government does not address other Sixth Circuit cases that reject similar arguments. And at the time that Holman filed his preliminary injunction, no court had ruled.

The other factors under EAJA further support an award of fees. The plain text and purpose of EAJA does not support the assertion that a mere good-faith defense under the government's duty to defend laws grants it a special exemption. The government's defense of such blatantly discriminatory enactments had just been

2

rejected by this Court. Its defenses of this very program failed in other courts as well. This pattern of failure shows a complete absence of a justified legal defense. Merely litigating in good faith is not enough to shield the government from EAJA's fee-shifting provision. Concerns about chilling the government's ability to litigate are subordinate to Holman's interest in overcoming the deterrent effect of suing the government over its unconstitutional laws.

Finally, awarding fees in a case that successfully stopped brazen racial discrimination would not be unjust. The government's efforts to find authority to support its position have yielded nothing.

## I.    The government's arguments for why Holman should not be found the prevailing party are unconvincing.

### A.    The government misunderstands this Circuit's precedents on when a preliminary injunction qualifies as enduring.

Nowhere does the government rebut Holman's central point: a preliminary injunction based on an "unambiguous indication of probable success" can "vault" a party over the threshold for fee-shifting. (Pl.'s Br. 16) (quoting *Bobay v. Wright State Univ.*, No. 22-4007, 2023 U.S. App. LEXIS 14825, at *4–5 (6th Cir. June 13, 2023) (citing *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 753 (6th Cir. 2002)).

The government dismisses the significance of a likelihood of success finding by claiming that all preliminary injunctions are based on likelihood of success. (USDA's Br. 25.) While true that courts should not issue preliminary injunctions

when the movant presents "no likelihood of merits success," *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020), it is not true that courts cannot distinguish between those based on likely success, and those based on status quo preservation, or that this distinction is immaterial.

Since *McQueary v. Conway*, 614 F.3d 591, 600-601 (6th Cir. 2010), this Court has consistently drawn this distinction when evaluating whether fees are appropriate. *Id*. ("Some preliminary injunctions have nothing to do with the merits . . . [they] turn more on the grave risks of irreparable harm to one party or the public interest than on the legal virtues of the parties' positions."); *see also Tenn. State Conf. of NAACP v. Hargett*, 53 F.4th 406, 411 (6th Cir. 2022); *Roberts v. Neace*, 65 F.4th 280, 284 (6th Cir. 2023). The dispositive finding in *Hargett* was that the district court's opinion represented an "emphatic and 'unambiguous indication of probable success on the merits' of the plaintiffs' claims." 53 F.4th at 411 (quoting *McQueary*, 614 F.3d at 598). The government is trying to erase an evaluation that lies at the center of this Court's analysis.[1] *See Roberts*, 65 F.4th 284 (preliminary injunctions qualify as enduring because they were based on merits, long lasting, and irrevocable).

---

[1] The government attempts to retain a remnant of the abuse-of-discretion standard of review by quoting *McQueary*. (USDA's Br. 17) (citing *McQueary*, 614 F.3d at 604, for the proposition that a prevailing party determination entails an inquiry "ordinarily best undertaken by the district court"). But prevailing party status is reviewed de novo. *Univ. of Mich.*, 78 F.4th at 940.

The government's assertion that any enduring benefit Holman secured stemmed from its voluntary repeal of Section 1005 fundamentally misapprehends the applicable legal standard. A preliminary injunction based on the merits typically qualifies as enduring *unless* it is reversed, not *only* if it is upheld. *Hargett*, 53 F.4th at 410 (explaining that a preliminary injunction "must not have been reversed, dissolved, or otherwise undone by the final decision in the same case" to be enduring); *see Green Party of Tenn. v. Hargett*, 767 F.3d 533, 553 (6th Cir. 2014) ("The plaintiffs have *not* been stripped of their prevailing party status by the legislature's decision to amend the relevant statute two months after the district court issued its order . . . ."). Even a reversal "does not necessarily upset the prevailing party's status" when it is not on the merits. *Doe v. Univ. of Mich.*, 78 F.4th 929, 951 n.8 (6th Cir. 2023) (quoting *Green Party*, 767 F.3d at 552).

The government's logic would require a preliminary injunction reach final ruling, or at least a permanent injunction. But this Court has said that is not required in order to obtain fees. *See Roberts*, 65 F.4th at 286 ("[E]nduring relief is not synonymous with permanent relief."); *McQueary*, 614 F.3d at 599 ("Rule 65 is not the Rosetta Stone to prevailing-party inquiries."). Once Holman achieved a merits-based preliminary injunction, he was on track for fees unless some subsequent ruling called the reasoning into question. That is certainly not what happened when the government repealed Section 1005. The injunction was dissolved, but only when it

5

had achieved its goal of securing Holman's equal protection rights, not due to a "lack of entitlement." *See Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 540 (6th Cir. 2019) (quoting *Watson v. Cnty. of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002)). It does not matter that the injunction was "temporary and revocable." (USDA's Br. 14.) All preliminary injunctions are. It would be particularly backwards to insist on this standard when governmental cessation denies a plaintiff the opportunity to make the preliminary injunction permanent. This Court has already recognized that fees are appropriate the government moots the case while on appeal but before a judgment becomes final. *See Green Party*, 767 F.3d at 553. The difference here is but "one of degree." *Hargett*, 53 F.4th at 411.

Legislative repeal only cemented the win. *See Wilson v. Long*, No. 3:14-cv-01492, 2020 U.S. Dist. LEXIS 13904, at *15 (M.D. Tenn., Jan. 28, 2020) (legislative repeal "did not negate the court-ordered change"). Repeal "simply guarantee[d] that this enduring, merits-based relief will not lose its judicial imprimatur." *Stinnie v. Holcomb*, 77 F.4th 200, 216 n.12 (4th Cir. 2023). Now "there is no longer any risk that the court-ordered relief will lose its judicial imprimatur." *Id*. at 216.

The government also suggests that the preliminary injunction does not qualify because it was not a judgment on the merits, or a court-ordered consent decree, (USDA's Br. 23), but this argument is foreclosed by the precedent of this Circuit.

*See Planned Parenthood*, 931 F.3d at 539 (holding preliminary injunction qualifies as a decision on the merits). Others agree. *Stinnie*, 77 F.4th at 213 (citing cases).

### B.    The government failed to show that Holman's preliminary injunction was a status quo injunction.

Sensing that a merits-based ruling makes Holman's prevailing party status all but certain, the government argues (for the first time) that Holman's injunction was actually a "stay put" injunction.[2]  (USDA's Br. at 25–26.) That does not withstand scrutiny. The district court spent ten pages explaining why Section 1005 was likely to fail. (Order Prelim. Inj., R. 41, Page ID # 864–72.) Even a glance at the district court's ruling shows that its finding of likelihood of success can only be called "emphatic." *Hargett*, 53 F.4th at 411.

A preliminary injunction is merits-based when it results from a full hearing with evidence and testimony. *G.S. v. Lee*, No. 22-5969, 2023 U.S. App. LEXIS 21419, at *12 (6th Cir. Aug. 14, 2023) ("The Governor cannot dispute that the district court's preliminary-injunction order was the result of substantive hearings and briefing as opposed to an effort to maintain the status quo in light of equity considerations."). Holman's injunction was also entered after "full briefing and an

---

[2] The government previously had no trouble acknowledging that the injunction was issued because Holman "was likely to succeed on the merits." (Resp. Pl.'s Mot. Att. Fees, R. 88, Page ID # 1396.) This Court should find that the government forfeited any argument on appeal that the injunction was anything but merits-based. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1016 (6th Cir. 2022).

opportunity for each side to present evidence supporting its position." *Hargett*, 53 F.4th at 410.

In characterizing the order as one preserving the status quo, the government also overlooks the key fact: it was spending money before it was enjoined. (Cobb Decl., R. 31-1, Page ID # 676–79.) Court action then *changed* the status quo by halting the spending. By forcing the government to act in ways that it had "previously resisted," the preliminary injunction forced a change. *Roberts*, 65 F.4th at 284 (quoting *McQueary*, 614 F.3d at 600). It did not maintain the status quo.

To argue that Holman only got a "holding pattern" injunction, (USDA's Br. 23), the government points to the portion of the district court's ruling where it said the phrase, "status quo." But that statement only came after the district court explained that the likelihood of success factor "is typically dispositive," before turning to "consider[ing] the remaining factors." (Order Prelim. Inj., R. 41, Page # 873 n.14.) The district court then bolstered its ruling by finding that it was important to make sure the funds didn't run out before courts could review the program. Still, even if the preliminary injunction were only based on the merits "in part," *Planned Parenthood*, 931 F.3d at 539, it would still qualify for fees.

### C.  The government fails to establish that Holman's preliminary injunction was not enduring.

The government clings to the argument that preliminary injunctions are only eligible for fees if they provide an irrevocable benefit like participation in a one-time

8

event. (USDA's Br. 16, 21-22, 30). It refused to address the recent *G.S.* opinion, where this Court rejected this exact argument. *See G.S.*, 2023 U.S. App. LEXIS 21419, at \*16 ("Notably, we have not imposed this one-time rule in every case."). Holman explained in his opening brief that this Court has consistently rejected the argument that relief qualifies only when a party capitalizes on the benefit. (Pl.'s Br. 22). The government simply makes no effort to address *G.S.* or Holman's brief.

Of course, the ability to participate in a one-time irrevocable event is certainly one way in which relief can be enduring. But this Court has gone to great lengths to explain that it isn't the only way or required. *See G.S.,* 2023 U.S. App. LEXIS 21419, at \*17 ("Under the Governor's proposed 'one-time' blanket rule, the plaintiffs in *Hargett* would not have prevailed for purposes of attorneys' fees because the case became moot before the election, so the specific time and event had not occurred."); *Miller v. Caudill*, 936 F.3d 442, 448 (6th Cir. 2019) ("Here, what happened doesn't fit neatly into those examples."); *Planned Parenthood*, 931 F.3d at 540 ("*McQueary* did not announce a strict rule. The language the state points to [in *McQueary*] was merely an example . . . ."); *id*. at 541 ("Had we intended to announce a *per se* rule, we certainly could have resolved the dispute on the basis of that articulation, but we did not."). Plaintiffs need not even show that they capitalized on the benefits from a preliminary injunction in order to prevail. *Planned Parenthood*, 931 F.3d at 541.

9

Participation in a one-time event is a consideration courts assess, among others. *See Hargett*, 53 F.4th at 410–11 (considering fact that relief came after suits were filed, both sides fully briefed the issue, ruling was "emphatic," and never vacated or appealed); *Roberts*, 65 F.4th at 284 (considering forcefulness of ruling, prospect of reversal, unanimity with other rules, and the longevity of the preliminary injunction).

But even this consideration favors Holman for two reasons. First, the law of this circuit is that suffering race discrimination is an irreparable injury and so courts must immediately enjoin such unconstitutional misconduct to prevent further harm that cannot be undone. *See Vitolo v. Guzman*, 999 F.3d 353, 360, 365 (6th Cir. 2021). It follows then that each day that elapsed after the preliminary injunction was a day when Holman obtained an irrevocable benefit—he did not suffer harm that could never be undone. That is irrevocable.

The preliminary injunction delivered a second irrevocable benefit by preventing Section 1005 funds from being expended before the case could reach a final ruling. Had those funds been fully spent, Holman would have struggled to find a remedy because courts are powerless to order monetary relief against the government absent a waiver of sovereign immunity. *See Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1290 (M.D. Fla. 2021). To reiterate, the government was already spending Section 1005 funds and on the brink of spending much more when the

10

injunctions issued. (Cobb Decl., R. 31-1, Page ID # 676–77); *see Faust v. Vilsack*, 519 F. Supp. 3d 470, 477 (E.D. Wisc. 2021) (finding that the government had begun forgiving 49% of the loans prior to preliminary injunctions). Without court action, the government's unconstitutional law would have escaped review.

While relying solely on an argument rejected in *G.S.*, the government also does not address the other factors that make Holman's preliminary injunction qualify as enduring. Like *Roberts*, 65 F.4th at 285, Holman's forceful ruling resulted in an injunction that lasted thirteen months—far longer than other, later mooted injunction that got fees. *See Hargett*, 53 F.4th at 408, 410 (seven months); *G.S.*, 2023 U.S. App. LEXIS 21419, at *18 (two months). The government wrongly asserts that Holman "effectively restates" the catalyst theory just because he argued that the thirteen months that the injunction lasted made it "enduring." (USDA's Br. 27–28.) But that argument ignores this Court's binding precedents, which hold that the "enduring" inquiry affirmatively considers the longevity of the preliminary injunction. (Pl.'s Br. 20–21) (citing *Roberts*, 65 F.4th at 284, for the proposition that courts consider the "nature of the injunction[], the longevity of the relief, and the irrevocability of the relief"); *Hargett*, 53 F.4th at 410-411 (preliminary injunction based on merits that was not appealed is "enduring enough"). Rightly so. An injunction that protects a plaintiff from constitutional injury for so long is a major victory for any plaintiff.

11

And of course, the findings made in other courts only further support the finding that Holman's injunction was enduring. They show that there was "little prospect" of reversal in the end. *Roberts*, 65 F.4th at 285. Even though none reached that stage, this Court looks at the "nature of the injunction" to see whether the plaintiff prevailed. *See id*. The government claims that perhaps it could have managed to somehow defend Section 1005 in the end (USDA's Br. 26, 39), but this Court in *Roberts* rejected an identical argument that the "possibility" of a different result for other restrictions was enough when the preliminary injunction forced a change in action. 65 F.4th at 286.

## D.    Holman rejects the catalyst theory.

The government fails in its effort to mischaracterize Holman's argument as reliant upon the catalyst theory. *Planned Parenthood*, 931 F.3d at 542 (catalyst theory is not invoked where a party did not lose on the merits and the merits-based preliminary injunction "materially changed the relationship between the parties").

Holman did not lose. The district court found that he was likely to prevail, and the preliminary injunction changed the relationship between the parties. *McQueary*, 614 F.3d at 598; *see Roberts*, 65 F.4th at 285 ("Once a plaintiff earns some relief [through a preliminary injunction], however, he steps outside *Buckhannon*'s domain.") (internal quotation marks omitted). Nothing about the decision to halt spending the Section 1005 funds was voluntary on the government's part. It took

"[a]n immediately enforceable preliminary injunction" to stop it. *McQueary*, 614 F.3d at 599. The government fails to engage these points, instead insisting that Holman adopted the catalyst theory.

Neither the district court nor Holman did anything to cast doubt on the reasoning of the preliminary injunction. Holman just agreed that the preliminary injunction was "no longer necessary" after Section 1005 was repealed. *Planned Parenthood*, 931 F.3d at 540. But the joint stipulation of dismissal did not undermine his prevailing party status.

If the government could let itself off the hook after a court gives it a sure sign that it is likely to lose, such an outcome would have perverse consequences. It invites the sort of gamesmanship is sure to result in "fewer attorneys willing to represent civil rights plaintiffs in even clearly meritorious actions—particularly those whose urgent situations call for interim relief." *Stinnie*, 77 F.4th at 210. That is a particularly dangerous result for challenges to discriminatory benefits programs like this one. Discrimination over a rapidly depleting pot of funds is an "urgent situation [that] call[s] for interim relief." *Id*. If the government can just quit once it gets a whiff of a loss in its nostrils and avoid paying the fees for the attorneys necessary to protect the constitutional guarantee of equality, then many forms of straightforward race discrimination will go unchallenged due to government gamesmanship.

**E.    The existence of nearly contemporaneous preliminary injunctions in other judicial districts does not mean that Holman's delivered no material benefit.**

Finally, the government contends that Holman obtained no benefit because other courts in other circuits had issued similar injunctions that protected Holman. (USDA's Br. 24.) But this Court recently awarded fees in an instance of overlapping injunctions in *Roberts*, without pausing to consider which of the injunctions delivered a practical benefit. 65 F.4th at 283. According to this Court, the "injunctions"—plural—qualified plaintiffs as prevailing parties because they delivered "some" of the benefits sought by the plaintiffs. *Id*. This was correct and unchallenged by either party in *Roberts*.

Courts evaluate the "plaintiff's gain based on the relief requested in the complaint, *not based on the practical significance of the relief obtained*." *McQueary*, 614 F.3d at 602 (emphasis added); *see Bindas B. ex rel S.A. v. Gordon*, 710 F.3d 608, 620 (6th Cir. 2013) (holding party need only succeed on "any significant issue . . . which achieves some of the benefit the parties sought"). That is why nominal damages in the amount of $1—"the pinnacle of worthless relief," *McQueary*, 614 F.3d at 602 (and far less valuable than an injunction halting a billion-dollar program, however duplicative)—qualifies.

The State of Kentucky made a similar argument in *McQueary* when it contended that the plaintiff got no practical benefit from his preliminary injunction

because other laws still prohibited his protest. 614 F.3d at 602. Like Kentucky, the government argues that Holman's preliminary injunction gave him no practical benefit because others already protected him. This argument should fail again. Success is determined based on what the plaintiff requested and what the plaintiff got, not a subjective appraisal of whether it had any practical benefit. *See id*.

If the analysis did take in the court's appraisal of practical benefit, Holman would still prevail. The district court did not think that overlapping injunctions protected Holman. (Order Prelim. Inj., R. 41, Page ID # 876.) To be clear, no court had issued an injunction when Holman moved for a preliminary injunction. So, *at the time the work was performed*, Holman was unprotected. Even after other courts ruled, the government could have appealed and sought a stay. (Order Prelim. Inj., R. 41, Page ID # 876). It could have even sought an order from the U.S. Supreme Court staying any of the injunctions. One thing is certain. When Holman requested his preliminary injunction, he had no reason to think that he did not need to act.

Also, none of the other orders were in the Sixth Circuit where *Vitolo*, with its holding that an equal protection violation is a *per se* irreparable injury, was binding law. The district court was the only one to rule so decisively on this basis. (Order Prelim. Inj., R. 41, Page ID # 876) ("*Vitolo* was clear that the impairment of a constitutional right supports a finding of irreparable injury.") In the other two nationwide injunctions in other circuits, courts found irreparable injury based solely

on the inability to recoup damages upon a favorable entry of judgment. *Wynn*, 545 F. Supp. 3d at 1291 (rejecting argument that equal protection violation is an irreparable harm); *Faust*, 519 F. Supp. 3d at 477 (holding irreparable harm found based on inability to seek damages).

Elsewhere, the government defends its decision to defend Section 1005 after these rulings because these "out-of-circuit rulings did not yet exist" at the time it opposed Holman's motion. (USDA's Br. 39.) And it contradicts its own position a second time, arguing that proof that the "statute's invalidity was clearly established," (USDA's Br. 34) (quoting *United States v. One Parcel of Real Prop.*, 960 F.2d 200, 211 (1st Cir. 1992)) would be a reason why fees should be *granted*. If the government can't be expected to factor in the other rulings when it made its litigation decisions, it can't demand a different standard for Holman.

## II. Nothing in EAJA's other factors supports the government.

### A. There is no exception under EAJA for the good faith duty of the government to defend laws.

The government urges this Court to adopt a new rule—that its good faith duty to defend its laws makes its position substantially justified. But in any constitutional challenge to a statute, the government would have this duty. This would amount to a new exception to EAJA. This Court should reject the government's request to enact such a sweeping rule.

The text of EAJA precludes this interpretation. *See League of Women Voters v. FCC*, 798 F.2d 1255, 1259 (9th Cir. 1986) ("There are no exceptions for constitutional attacks on statutes."). EAJA applies to *any* civil, non-tort action. *Id.* (citing 28 U.S.C. § 2412(d)(1)(A)). EAJA's plain language provides no basis for a general exception like the government wants. *United States ex rel. Wall v. Circle C. Constr., LLC*, 868 F.3d 466, 471 (6th Cir. 2017) ("Typically, when a statute articulates a general rule, the burden of proving an exception rests with the party invoking it."); *Bates v. United States*, 522 U.S. 23, 29 (1998) (noting courts are to resist "reading words or elements into a statute"); *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (reminding courts of their duty to avoid reading a phrase into a statute when Congress has left it out); *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 339-40 (6th Cir. 2000) (citing cases). EAJA further precludes an interpretation that would provide special treatment to the United States. *See* 28 U.S.C. 2412(b) ("The United States shall be liable for such fees and expenses *to the extent that any other party would be liable* … under the terms of any statute which specifically provides for such an award.") (emphasis added).

EAJA's "basic" purpose, *Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 972 F.2d 669, 672 (6th Cir. 1992)—to eliminate the economic deterrent faced by citizens confronting the government—is at its peak (1) when a citizen is suffering race discrimination by an enactment of Congress (2) involving a

dwindling pot of funds and (3) cannot seek damages because of sovereign immunity. *See Wynn*, 545 F. Supp. 3d at 1289 (noting challengers to Section 1005 are barred from damages claims owing to sovereign immunity). It "would be frustrated by a ruling that the [government's] decision to defend the constitutionality of a statute is reasonable regardless of whether the statute itself might reasonably be thought to be constitutional." *League of Women Voters*, 798 F.2d at 1259; *see Grace v. Burger*, 763 F.2d 457, 458 (D.C. Cir. 1985) (rejecting the idea that the government's duty to defend "forever and always" was a substantial justification). The government's proposed exception would impermissibly alter the statutory scheme. *Accord League of Women Voters*, 798 F.2d at 1259 (EAJA's fee shifting provision "supports the availability of fees when constitutional rights are vindicated").

States and cities, too, have a duty to defend their laws, but courts still award fees against those entities. *See, e.g., Hargett*, 53 F.4th at 410 (granting fees for challenge to Tennessee law). This Court has consistently rejected good faith as a defense under Section 1988. *See Caudill*, 936 F.3d at 452; *Morscott, Inc. v. Cleveland*, 936 F.2d 271, 273 (6th Cir. 1991). Nothing in EAJA would support giving the federal government a special privilege. The standards for fees against state and local governments under Section 1988 are "generally applicable" to all cases where Congress has authorized fee shifting. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983).

18

Finding substantial justification merely because the government has acted in good faith sets a low bar. EAJA *separately* provides for fees when the government "acted in bad faith," so the government's argument would render this provision redundant. 28 U.S.C. § 2412(d)(1)(A). Substantial justification "means, of course, more than merely undeserving of sanctions for frivolousness." *See Pierce v. Underwood*, 487 U.S. 552, 566 (1988). Good faith defenses alone are not an appropriate basis to deny fees. *See Hutto v. Finley*, 437 U.S. 678, 693 (1978); *Hescott v. City of Saginaw*, 757 F.3d 518, 526 (6th Cir. 2014); *Taylor v. United States*, 815 F.2d 249, 254 (3d Cir. 1987) (Becker J., concurring) ("Good faith or laudatory motives are not a defense to an EAJA claim."). The government's reward for not making specious arguments about the level of scrutiny or requiring separate records in all of the challenges to Section 1005 (USDA's Br. 36-37) is that the amount of the fees will be less because less time was spent on unnecessary work.

The government mistakenly believes it can construct the rule it wants using *Dvorkin v. Gonzales*, 173 F. App'x 420 (6th Cir. 2006) (per curiam) (unpublished). There, this Court recognized that the government has a duty to defend its laws and ruled the government's defense was "substantially justified" because the law "was far from settled." *Id.* at 424. By contrast, the district court made an easy ruling based on well-settled and recent law. Indeed, there will rarely be circumstances where four courts have so firmly passed judgment on the likelihood of the unconstitutionality

19

of a specific statute, or that the Sixth Circuit will have issued authority so directly on point as it did in *Vitolo*. *See Rosciszewski v. Adducci*, 983 F. Supp. 2d 910, 917 (E.D. Mich. 2013) (government's position substantially justified based on "absence of a definitive decision from the Sixth Circuit" and fact "that courts across the country cannot agree on this issue"). This is the classic example of a "string of losses" that provides objective indicia that the government's position was not justified. *Pierce*, 487 U.S. at 569.

## B.  The government's defense of Section 1005 contravened established law.

The government's position in this case was not substantially justified. When evaluating whether it had a substantial justification, "what matters is 'the actual merits of the government's litigation position.'" *Circle C. Constr.*, 868 F.3d at 471. This Court had just ruled that "an effort to alleviate the effects of societal discrimination is not a compelling interest." *Vitolo*, 999 F.3d at 361 (quoting *Shaw v. Hunt*, 517 U.S. 899, 909–10 (1996)). Yet the challenged program was broadly intended to "advance equity and remove systemic discrimination." *See* American Rescue Plan Act Section 1005 Litigation FAQs.[3] The findings in the Emergency Relief for Farmers of Color Act—the bill the government called the "predecessor" (Resp. to Pl.'s Mot. Prelim. Injunc., R. 31, Page ID # 637)—consist of the sort of

---

[3] https://perma.cc/7SZW-G9VE.

impermissible systemic goals that would never justify a racial preference under settled case law. *See* 2021 S.278 § 2 (findings including mass and systemic loss of farmland, institutional civil rights violations, Native American removal beginning in 1830).

The government tried to make the same improper, statistics-based that failed in defense of a nearly identical program in *Vitolo*. (Order Prelim. Inj., R. 41, Page ID # 866–67); *accord Vitolo*, 999 F.3d at 361 (characterizing the government's evidence as "not nearly enough"). The government relied on stale instances of discrimination as its compelling interest. It defended the same arbitrary racial categories in Section 1005 that were hotly criticized in *Vitolo*, 999 F.3d at 361, only without women. (Order Prelim. Inj., R. 41, Page ID # 859 n.7, 870–71.) The government failed to address the many extraordinary steps taken to remediate past discrimination from the Department of Agriculture and could not make "any" straight-faced claim that race-neutral alternatives were considered. (Order Prelim. Inj., R. 41, Page ID # 867, 870.) Substantial grounds never existed to argue that Section 1005 was one of the narrow instances when a direct racial preference was justifiable. *See Circle C. Constr.*, 868 F.3d at 471 (holding under EAJA, "the more clearly established are the governing norms, and the more clearly they dictate a result in favor of the private litigant, the less 'justified' it is for the government to pursue

or persist in litigation" (quoting *Perket v. Sec'y of Health & Hum. Servs.*, 905 F.2d 129, 135 (6th Cir. 1990)).

Put simply, the government "vainly pressed a position flatly at odds with the controlling case law." *Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 564 (6th Cir. 2021) (quoting *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1174 (D.C. Cir. 2005) (Roberts, J.)).

## C. The government's policy arguments for its defense of race preferences are also unconvincing.

The government worries that a fees assessment would "chill[]" or "penalize" it for litigating its defense of this unconstitutional statute. (USDA's Br. 32, 34.) But this argument flips both EAJA and Equal Protection principles on their head. Racial classifications are presumptively unconstitutional, *see Vitolo*, 999 F.3d at 360, and thus they should be difficult to justify. And EAJA's statutory preference for fee shifting makes these concerns subordinate to Holman's. *See Circle C. Constr.,* 868 F.3d at 472.

The government knew that it had just recently lost in multiple courts and pressed forward with the same losing arguments. *Accord Pierce*, 487 U.S. at 569 (holding that a "string of losses" shows lack of substantial justification). Little suggests, unfortunately, that the government will be deterred from defending future race-based programs, even when the government itself seems so unsure of its arguments that it declines to appeal. *See, e.g., Ultima Servs. v. United States Dep't*

*of Agric.*, No. 2:20-cv-00041, 2023 U.S. Dist. LEXIS 124268 (E.D. Tenn. July 19, 2023) (enjoining enforcement of racial preference provision in the Small Business Act for socially disadvantaged small businesses). The "socially disadvantaged farmer" euphemism may have been abandoned in Section 1005, but the racially exclusive term yet remains embedded throughout the United States Code and the Federal Register—many promulgated by the USDA. *See, e.g., id.*; 7 U.S.C. § 2003 (target participation rates for farm loans based on race for socially disadvantaged groups); 7 C.F.R. § 764.202 (downpayment loan program based on race for socially disadvantaged farmers); 7 C.F.R. § 767.151 (preferential treatment based on race in buying foreclosed property); 88 Fed. Reg. 62,285, 62,286 (Sept. 11, 2023) (greater reimbursement for socially disadvantaged farmers for losses associated with milk losses for dairy farmers).

Without a fee award here, persons discriminated against because of their race will face the substantial deterrent effect of knowing the government can defend a discriminatory law and avoid fees by mooting out the likely loss. "One should hope" that a fee award will deter the government from continuing to litigate this way. *Circle C. Constr.,* 868 F.3d at 472. It bears repeating: "[o]ur Constitution is color-blind, and it neither knows nor tolerates classes among citizens." *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 143 S. Ct. 2141, 2168 (2023) (quoting *Plessy v. Ferguson*, 163 U.S. 537, 559 (1896) (Harlan, J., dissenting)).

**D.** **The government fails to show that a fee award would be unjust.**

The Sixth Circuit has "never (to our knowledge) found a 'special circumstance' justifying the denial of fees." *McQueary,* 614 F.3d at 604. This is not the case in which to break new ground.

The government questions whether "special circumstances" are only "substantive issues, such as close or novel questions of law," (USDA's Br. 40 n. 11), but that is this Court's settled definition. *See National Truck Equipment.* 972 F.2d at 672 (finding persuasive and agreeing with a sister circuit decision holding that "'special circumstances' *are only* substantive issues, such as close or novel questions of law.") (citing *Grason Elec. Co. v. NLRB*, 951 F.2d 1100, 1103–05 (9th Cir. 1991) (emphasis added)). The government does not allege that this is the sort of situation where fees have been denied in the past based on equitable considerations, such as unclean hands. *Sakhawati v. Lynch*, 839 F.3d 476, 478 (6th Cir. 2016).

The cases cited by the government are not analogous. (USDA's Br. 40.) Three of the four cases concerned fees for intervenors, not plaintiffs in their own case. *See United States v. 27.09 Acres of Land, More or Less*, 43 F.3d 769, 770 (2d Cir. 1994) (denying fees to intervenor who provided no additional value); *Wilder v. Bernstein*, 965 F.2d 1196, 1204–05 (2d Cir. 1992) (granting fees for intervenors only when they "contribute[] importantly to the creation of remedies"); *Donnell v. United States*, 682 F.2d 240, 247 n.16 (D.C. Cir. 1982). It is inaccurate to characterize these cases

as recognizing that fees should be denied where "a *plaintiff's*" efforts added little. (USDA's Br. 40.) It is impossible to say that Holman's efforts added little when he was the sole plaintiff in his case—without him, this case could not have been brought. The fourth case awarded fees to the primary plaintiffs rather than intervenors, finding no special circumstances. *See Riddell v. National Democratic Party*, 624 F.2d 539, 544–45 (5th Cir. 1980). The government's authority only demonstrates how unlike Holman's case is from the cases where fees were denied.

Last, the government contends that the fees sought are disproportionate to Holman's success, because most of the fees are for hours billed after the injunction. But it was the government that chose to continue to litigate after it lost the preliminary injunction. None of its repeated requests for stays hinted that it was considering repeal. Holman cannot be faulted for not knowing that the government planned to give up eventually. *See Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990) (rejecting striking portions of a fee application based on grounds that the hours "did not contribute to the ultimate success"; the question is not "whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved"). And the government fails to show precisely which hours it thought were unnecessary or duplicative. This is the sort of general objection that should be denied. *See Dowsing v. Berryhill*, No. 2:14-cv-02675, 2019 U.S. Dist. LEXIS 2522,

at *6 (W.D. Tenn. Jan. 7, 2019) ("General objections to an attorneys' efficiency without any specificity may be denied.").

The government is also incorrect that the district court adopted no "rationale that had not already been adopted by other courts." (USDA's Br. 41.) As discussed above, Holman's case is the only one in which a nationwide injunction was based on the irreparable injury of the substantive equal protection violation itself. That alone is an important proposition.

### E.    This Court should also award costs.

As Holman argued, EAJA separately provides for costs for a prevailing plaintiff, *see* 28 U.S.C. § 2412(a), regardless of the other EAJA factors. (Pl.'s Br. 11.) The government does not appear to dispute that Holman is entitled to costs if he is determined to be the prevailing party.

## CONCLUSION

This Court should reverse the finding of the district court that Holman was not the prevailing party, and instead find that he is entitled to fees and costs. This Court should then hold that he meets the other EAJA factors and remand this case to the district court to determine the precise amount of fees and costs, adjusted to include time spent on the appeal, including on this reply.

Respectfully submitted,

/s/ Braden H. Boucek
BRADEN H. BOUCEK
KIMBERLY S. HERMANN
Southeastern Legal Foundation
560 W. Crossville Road, Suite 104
Roswell, Georgia 30075
Telephone: (770) 977-2131
bboucek@southeasternlegal.org
khermann@southeasternlegal.org

WILLIAM E. TRACHMAN
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
Telephone: (303) 292-2021
E-mail: wtrachman@mslegal.org

## CERTIFICATE OF COMPLIANCE

Under Fed. R. App. Proc. 32(g)(1), this is to certify the foregoing complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,395 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). The foregoing complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared on a computer using Times New Roman font (14 point).

November 15, 2023.                        /s/ Braden H. Boucek
                                          BRADEN H. BOUCEK

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent through the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail and/or facsimile. Parties may access the filing through the Court's electronic filing system.

November 15, 2023.                    /s/ Braden H. Boucek
                                      BRADEN H. BOUCEK