# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

Robert Holman,

*Plaintiff – Appellant,*
v.

Thomas Vilsack, et al.,

*Defendants – Appellees.*

On Appeal from the United States District Court
for the Western District of Tennessee, No. 1:21-cv-02085 (Anderson, S.)

## PETITION FOR REHEARING EN BANC

William E. Trachman
MOUNTAIN STATES LEGAL FOUNDATION
2596 S. Lewis Way
Lakewood, CO
(303) 292-2021
wtrachman@mslegal.org

Braden H. Boucek
Kimberly S. Hermann
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Rd., Ste. 104
Roswell, GA 30075
(770) 977-2131
bboucek@southeasternlegal.org
khermann@southeasternlegal.org

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................ i

TABLE OF AUTHORITIES ................................................. ii

INTRODUCTION AND RULE 35(b) STATEMENT ........................... 1

BACKGROUND ............................................................... 2

ARGUMENT ................................................................... 6

I.     Standard for recovering fees under EAJA .................................. 6

II.    The majority opinion conflicts with *Vitolo's* strict scrutiny requirements  6

     A.    The majority failed to faithfully examine defendants' evidence against the compelling state interest requirements from *Vitolo*  7

     B.    The majority failed to employ the *Vitolo* standard for narrow tailoring ............................................................... 13

III.   The majority undervalued the string-of-losses defendants suffered by the time they defended in *Holman* ....................................... 15

IV.   The majority undermines the incentives for Americans to challenge state-sanctioned discrimination, an important and recurring issue ....... 16

CONCLUSION ................................................................ 18

CERTIFICATE OF COMPLIANCE ........................................ 19

CERTIFICATE OF SERVICE .............................................. 20

# TABLE OF AUTHORITIES

| Case | Page(s) |
|------|---------|

*Adarand Constructors, Inc. v. Pena,*
   515 U.S. 200 (1995)............................................................ 6, 7

*Aiken v. City of Memphis,*
   37 F.3d 1155 (6th Cir. 1994)............................................. 8

*Assoc. Gen. Contractors. of Ohio, Inc. v. Drabik,*
   214 F.3d 730 (6th Cir. 2000)................................. 7, 8, 11, 14

*Barlow v. M.J. Waterman & Assocs.,*
   227 F.3d 604 (6th Cir. 2000)............................... 2, 6, 12

*Brunet v. City of Columbus,*
   1 F.3d 390 (6th Cir. 1993)................................. 7, 8, 9

*Comm'r, INS v. Jean,*
   496 U.S. 154 (1990).......................................... 17

*D.T. v. Sumner Cty. Sch.,*
   942 F.3d 324 (6th Cir. 2019)............................... 12

*Faust v. Vilsack,*
   519 F. Supp.3d 470 (E.D.Wis. 2021).................... 3, 16

*Fisher v. Univ. of Tex.,*
   570 U.S. 297 (2013).......................................... 13

*Gratz v. Bollinger,*
   539 U.S. 244 (2003).......................................... 6

*Griffith v. Comm'r of Soc. Sec.,*
   987 F.3d 556 (6th Cir. 2021)............................... 15

*Hall v. Cole,*
   412 U.S. 1 (1973).......................................... 6, 18

*Holman v. Vilsack,*
   No.21-1085-STA-jay, 2021 U.S. Dist. LEXIS 127334 (W.D.Tenn. 2021)   2

*Mid-Am. Milling Co., LLC v. U.S. DOT*,
    No.3:23-cv-00072-GFVT, 2024 U.S. Dist. LEXIS 171113 (E.D. Ky. 2024)   16

*Miller v. Vilsack*,
    No.21-CV-0595, 2021 U.S. Dist. LEXIS 264778 (N.D.Tex. 2021)  2, 3, 8, 11, 16

*Nuziard v. Minority Bus. Dev. Agency*,
    No. 4:23-cv-00278-P, 2024 U.S. Dist. LEXIS 38050 (N.D. Tex. 2024)   17

*Pierce v. Underwood*,
    487 U.S. 552 (1988) ............................................................... 6

*Richmond v. J.A. Croson Co.*,
    488 U.S. 469 (1989) ........................................... 7, 8, 14

*Riverside v. Rivera*,
    477 U.S. 561 (1986) ................................ 2, 3, 8, 11, 16, 17

*Scarborough v. Principi*,
    541 U.S. 401 (2004) ........................................... 6, 16

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    143 S. Ct. 2141 (2023) ........................................... 17

*Strickland v. USDA*,
    No.2:24-cv-60-Z, 2024 U.S. Dist. LEXIS 101547 (N.D.Tex. 2024) .. 17

*U.S. ex rel. Wall v. Circle C Constr., LLC*,
    868 F.3d 466 (6th Cir. 2017) ................................. 15

*Ultima Servs. v. USDA*,
    No.2:20-cv-00041, 2023 U.S. Dist. LEXIS 124268 (E.D.Tenn. 2023)   16

*Vitolo v. Guzman*,
    999 F.3d 353 (6th Cir. 2021) ............................ 1, 6, 7, 8, 9, 11, 13, 14

*Wynn v. Vilsack*,
    545 F. Supp.3d 1271 (M.D.Fla. 2021) ..................... 3, 16

**Statutes**

7 U.S.C. § 2279(a)(5) ............................................................ 2

7 U.S.C. § 2279(a)(6) ............................................................ 2

28 U.S.C. § 2412(d)(1).............................................................. 6

28 U.S.C. § 2412(d)(1)(A)......................................................... 6

Pub.L.No.117-2, § 1005 (2021) (ARPA)................................. 2

**Rules**

Fed. R. App. P. 35(b)(1)(B) ..................................................... 16

**Regulations**

7 C.F.R. § 760.1702 (2023) ................................................ 16, 17

7 CFR § 760.1704(a) (2023)................................................... 16

Notice of Funds Availability; American Rescue Plan Act of 2021 Section 1005
   Loan Payment (ARPA),
   86 Fed.Reg. 28329 (May 26, 2021) ..................................... 2

**Other Authorities**

Alice Miller, *Comment: Calling Sierra Club for Help?: Attorney Fees Under the Equal Access to Justice Act and its Effects on Litigation Involving Large Environmental Groups*, 9 Dick. J. Env. L. Pol. 553, 565 (2001) ……. 15

# INTRODUCTION AND RULE 35(b) STATEMENT

The panel majority denied an award of attorney fees because it determined the federal government's defense of a flagrantly discriminatory law was "substantially justified." That decision deserves further review because it is (1) "flatly at odds with controlling case law," SlipOp.14 (Larson, J., dissenting), and (2) rewards the government for trying its hardest to use race to discriminate against everyday Americans. Defendants' hollow efforts to defend the law are borne out by an unmitigated string of losses in numerous cases and courts. If the decision stands, it will both conflict with this Circuit's strict scrutiny analysis and undermine the incentives for attorneys to challenge state-sanctioned discrimination.

En banc review is necessary to protect uniformity across this Court's decisions and the Supreme Court. The majority's decision that reasonable jurists might find defendants' evidence sufficient to justify race-based programs directly conflicts with *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021), where this Court ruled no reasonable jurist could conclude more-detailed evidence in support of that similar program satisfied strict scrutiny.

Last, this case involves questions of exceptional importance. The Equal Access to Justice Act (EAJA) encourages litigants to pursue cases in the public interest. The government has increasingly used race-based preferences in numerous programs, only to have courts repeatedly strike down the preferences. Yet litigants

1

often find that program-funds are exhausted by the time a court issues an injunction, leaving litigants, and their counsel, little incentive to pursue these meritorious cases.

## BACKGROUND

In 2021, President Biden signed into law the American Rescue Plan Act of 2021. Pub.L.No.117-2, § 1005 (2021) (ARPA). Section 1005 of ARPA directed the Secretary of Agriculture to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer" on any qualifying farm loan. § 1005(a)(2). The government defined "socially disadvantaged" as: "American Indians or Alaskan Natives;" "Asians;" "Blacks or African Americans;" "Native Hawaiians or other Pacific Islanders;" and "Hispanics or Latinos," irrespective of whether a farmer individually experienced any prejudice. Notice of Funds Availability; American Rescue Plan Act of 2021 Section 1005 Loan Payment (ARPA), 86 Fed.Reg. 28329, 28330 (May 26, 2021); *see also* 7 U.S.C. § 2279(a)(5)-(6).

Robert Holman is a farmer with outstanding farm loans. SlipOp.2. He was ineligible to have USDA pay off his loans because of his skin color. *See id.* He and other farmers sued, challenging the program's racial and ethnic preferences under the Fifth Amendment's guarantee of equal protection. *Id.* at 2–3; *see, e.g., Holman v. Vilsack*, No.21-1085-STA-jay, 2021 U.S. Dist. LEXIS 127334 (W.D.Tenn. July 8, 2021); *Miller v. Vilsack*, No.21-CV-0595, 2021 U.S. Dist. LEXIS 264778 (N.D.Tex.

Jul. 1, 2021); *Wynn v. Vilsack*, 545 F. Supp.3d 1271 (M.D.Fla. 2021); *Faust v. Vilsack*, 519 F. Supp.3d 470 (E.D.Wis. 2021). Because the program imposed a race-preference, strict scrutiny applied. SlipOp.2–3.

Defendants argued § 1005 remedied "the lingering effects of the unfortunate but well documented history of racial discrimination" in government lending programs. (OrderPrelim.Inj. R.41, PageID#858.) Notably, though, the historic victims of this discrimination had already received over $2.4 billion in government settlements. (*Id.* at PageID#859–60.) Defendants also contended § 1005 remedied previous pandemic relief that disproportionately went to white farmers. (*Id.* at PageID#862.)

The district court heard Holman's request for a preliminary injunction on June 29, 2021. (OrderPrelim.Inj., R.41, PageID#877–79.) By then, two other district courts prevented defendants from implementing § 1005. *Wynn*, 545 F. Supp.3d 1271; *Faust*, 519 F. Supp.3d at 478. These losses did not dissuade defendants from opposing Holman's motion. Nor did this Court's precedential ruling in *Vitolo* that the Small Business Administration's (SBA) use of race- and sex-based preferences when distributing COVID-19 relief funds violated equal protection.

Nine days later, the district court enjoined the loan forgiveness program nationwide. (OrderPrelim.Inj., R.41, PageID#877–79.) In that interim period, another district court enjoined defendants. *Miller*, 2021 U.S. Dist. LEXIS 264778,

at *35. Thus, defendants went **0-for-4** in defending the race-based classifications in § 1005, and the government went **0-for-1** in the Sixth Circuit defending nearly-identical preferences in the COVID-19 relief program.

Congress repealed § 1005, mooting the merits portion of Holman's litigation. SlipOp.4. Holman moved for attorney's fees, contending he was the prevailing party because the merits-based preliminary injunction wasn't dissolved until Congress repealed § 1005. SlipOp.4. The district court denied the motion, concluding only that Mr. Holman was not a "prevailing party." *Id.* He appealed.

In a *two-to-one published decision*, the panel affirmed the denial of fees on an alternative ground. *Id.* at 2. The majority concluded defendants were "substantially justified" in their defense of § 1005, thereby sidestepping the "thorny" prevailing party issue.[1] *Id.* at 6–14. The majority relied upon governmental reports that documented allegations of discrimination by some, but not all, of the groups that received preferential treatment under § 1005. *Id.* at 9–10.

Judge Larson dissented. *Id.* at 16–17. The dissent reasoned that "[a]bsent at least some specific evidence of intentional discrimination against each racial group, the government cannot show a compelling remedial interest in benefitting that

---

[1] The issue of whether a litigant who obtains a preliminary injunction before the merits of the litigation are mooted by government action is a "prevailing party" is before the Supreme Court in *Lackey v. Stinnie*, No.23-621. The en banc court may allow the Supreme Court to address the prevailing party issue in the first instance.

group." *Id.* at 17. Because defendants only presented evidence as to discrimination against black and African-American farmers, and not the other preferred races, the dissent concluded a reasonable jurist could not find defendants' litigation position substantially justified. *Id.* at 16–17.

**ARGUMENT**

## I.     Standard for recovering fees under EAJA

Departing from the American Rule, EAJA permits a prevailing party to recover its attorney's fees. 28 U.S.C. § 2412(d)(1). The government, as the losing litigant, can defeat an award of fees "by showing that its litigation position 'was substantially justified.'" *Scarborough v. Principi*, 541 U.S. 401, 405 (2004) (quoting 28 U.S.C. § 2412(d)(1)(A)). A litigation position is substantially justified "if there is a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). To avoid fees, the government's position must be "more than merely undeserving of sanctions for frivolousness." *Id.* at 566.

## II.    The majority opinion conflicts with *Vitolo*'s strict scrutiny requirements

Race preferences are subject to strict scrutiny. Under strict scrutiny, the government "must demonstrate that the . . . use of race in its current . . . program employs 'narrowly tailored measures that further compelling governmental interests.'" *Gratz v. Bollinger*, 539 U.S. 244, 270 (2003) (quoting *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995)). Meeting the compelling interest and narrow tailoring requirements "is a very demanding standard, which few programs will survive." *Vitolo*, 999 F.3d at 360. Thus, the government rarely, if ever, can plausibly say it was *substantially justified* to defend a race preference. And to

6

avoid EAJA fees, defendants needed to show their position was "substantially justified" under *both* prongs of strict scrutiny.

Before the government defended § 1005 in district court, *Vitolo* held a nearly-identical program failed both elements of strict scrutiny. 999 F.3d at 356, 360. In doing so, this Court drew from numerous Supreme Court decisions. The majority did not faithfully apply *Vitolo* and the Supreme Court cases upon which it rests when concluding defendants' litigation position was substantially justified.

### A. The majority failed to faithfully examine defendants' evidence against the compelling state interest requirements from *Vitolo*

This Court recognized in *Vitolo*, that race preferences "are presumptively invalid." *Id.* at 360. "To overcome that presumption, the government must show that favoring one race over another is necessary to achieve a compelling state interest." *Id.* (citing *Adarand Constructors, Inc.*, 515 U.S. at 235). While remedying past discrimination can be a compelling state interest, the government must make three showings.

First, the program "must target a specific episode of past discrimination. It cannot rest on a 'generalized assertion that there has been past discrimination in an entire industry.'" *Id.* at 361 (quoting *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989)). Moreover, the evidence must be of "prior unremedied or current discrimination.'" *See Assoc. Gen. Contractors. of Ohio, Inc. v. Drabik*, 214 F.3d 730, 735 (6th Cir. 2000) (quoting *Brunet v. City of Columbus*, 1 F.3d 390, 409 (6th Cir.

1993)); *cf. Miller*, 2021 U.S. Dist. LEXIS 264778, at *9 (concluding USDA "put[]

forward no evidence of intentional discrimination . . . in at least the past decade"

when defending loan forgiveness program). Evidence of decade-old discrimination

is insufficient. *Assoc. Gen. Contractors*, 214 F.3d at 734. Second, "there must be

evidence of *intentional* discrimination in the past. Statistical disparities don't cut

it[.]" *Vitolo,* 999 F.3d at 361 (citing *J.A. Croson Co.*, 488 U.S. at 503; *Aiken v. City

of Memphis*, 37 F.3d 1155, 1163 (6th Cir. 1994)). Third, "the government must have

had a hand in the past discrimination it now seeks to remedy." *Id.*

The evidence relied upon by the majority in concluding that defendants'

position was substantially justified can only be described as vague, generalized, and

dated. This contravenes *Vitolo*. The majority offered two types of evidence,

generalized reports and unsupported allegations by members of different racial

groups. *See* SlipOp.9. The reports suffered from two flaws. One, the only report

documenting actual instances of discrimination is from 1997. But "this [C]ourt has

ruled that seventeen-year-old evidence of discrimination is 'too remote to support a

finding of compelling government interest to justify the affirmative action plan,'"

because "outdated evidence does not reflect 'prior unremedied or current

discrimination.'" *Assoc. Gen. Contractors*, 214 F.3d at 735 (quoting *Brunet*, 1 F.3d

at 409). Thus, twenty-four-year-old evidence is too stale.

Two, the report suffers from the same vagueness and generality issues as the evidence of discrimination in *Vitolo* because, it merely asserted that "the USDA had 'done more to hurt than to help small and minority farmers' because many minority farmers' loan applications and discrimination complaints languished within the Agency." SlipOp9. But this is less specific than the statistical evidence rejected in *Vitolo*.[2] *See* 999 F.3d at 361–62 (evidence of 19% greater business failure rate in minority population insufficient). And the *Vitolo* court described this more powerful statistical evidence as "not nearly enough." *Id.* at 361. Accordingly, the generalized and vague allegations from the reports could not meet the substantial justification standard, for if the evidence in *Vitolo* was "not nearly enough," defendants' lesser evidence in support of § 1005 could not cause a reasonable jurist to believe the defendants had met their burden.

---

[2] The other two reports relied upon by the majority, while more recent, are even vaguer and more generalized than the 1997 report. The majority cites a 2011 Civil Rights Assessment for "continued 'claims of denial of equal program access' by minority applicants" and "'continuing institutional discrimination' by the [USDA]." SlipOp.9. Meanwhile, the 2019 report cited by the majority stated that "allegations of unlawful discrimination against [socially disadvantaged farmers and ranchers] in the management of USDA are long-standing and well-documented." *Id.* Aside from being generalized, allegations of discrimination are not synonymous with evidence of discrimination. But even if allegations qualified as evidence, without more detail they are evidence of only generalized discrimination. It lacks the level of specificity needed to support a race-based program. Indeed, a composite of allegations of discrimination is akin to a "vague reference to a 'theme' of governmental discrimination" found to be "not enough" by this Court in *Vitolo*. 999 F.3d at 362.

9

The second form of evidence went to the specific five groups receiving preferences under § 1005. *See* 86 Fed. Reg. at 28330 (listing preferred races). Defendants, by defending all aspects of § 1005, needed to produce evidence of a compelling interest for each category. They did not. All agree defendants offered no evidence of discrimination against Native Hawaiians/Pacific Islanders. *See* SlipOp.9–10 (discussing evidence offered as to each group but making no mention of Native Hawaiians/Pacific Islanders), 11 (conceding that defendants did not offer evidence as to every category). Thus, their defense of § 1005 as to Native Hawaiians/Pacific Islanders was per se unreasonable.

While defendants attempted to provide some group-specific information on Asian and Hispanic farmers, their evidence, even in the words of the majority, amounted to generalized allegations. For instance, the majority cited evidence that Asians "were among those who alleged in the late 1990s that the USDA had hurt rather than helped minority farmers, and some reported in 2011 'a general consensus . . . that they are not always treated fairly by the USDA.'" *Id.* at 10–11. As to Hispanics, the majority cited evidence that this group had "stated that they had been 'stereotyped as being farm workers, rather than owners,' and received 'inconsistent or incomplete' information from the USDA; one farmer said Hispanic growers had been 'systemically excluded' from USDA programs." *Id.* at 9.

This evidence isn't nearly good enough. First, like with the reports, the evidence identifies a "generalized assertion" of discrimination, *see Vitolo*, 999 F.3d at 361, rather than any specific occurrence of discrimination. Second, the feelings of a group, without additional evidence, cannot demonstrate that any discrimination was "intentional." Evidence of this nature is no stronger than the statistical disparity incapable of satisfying the second *Vitolo* requirement. *See id.* Third, the allegations by Asians are from the late 1990s, a quarter-century old and too old to support a compelling interest. *See Assoc. Gen. Contractors*, 214 F.3d at 735; *cf. Miller*, 2021 U.S. Dist. LEXIS 264778, at *9. No reasonable jurist could conclude that defendants offered sufficient evidence as to Asians and Hispanics. This means defendants lacked a substantial justification for the racial categories they chose to employ in § 1005.

Defendants also failed to show a compelling interest for Native Americans, as the evidence was nothing more than generalized allegations. *See* SlipOp.10 (majority describing evidence as "in 2019, Native American farmers reported that 'discrimination has contributed to the lack of commercial lending on tribal lands'; similar allegations resulted in a large settlement between the USDA and Native farmers and ranchers." (brackets omitted). Furthermore, whatever instances of discrimination may have occurred, the majority failed to consider that a settlement remedied the discrimination. *See supra*, p. 3.

In sum, for 80% of these categories, defendants didn't even muster a colorable showing.[3] En banc review is needed as the majority failed to faithfully review the evidence against the *Vitolo* requirements, creating an intra-circuit conflict.

The majority opinion conflicts with *Vitolo* even though *Vitolo* did not include an EAJA substantial justification analysis. This is because *Vitolo* reviewed a district court's denial of a preliminary injunction, which was governed by an abuse of discretion standard. *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019). An abuse of discretion, however, only exists if reasonable jurists could not reach different outcomes regarding the sufficiency of evidence. *See Barlow v. M.J. Waterman & Assocs.*, 227 F.3d 604, 608 (6th Cir. 2000) ("[I]f reasonable persons could differ as to the issue, then there is no abuse of discretion."). Thus, for *Vitolo* to have reversed the district court, the evidence in *Vitolo* must not have permitted a reasonable jurist to conclude the race-based program furthered a compelling state interest, a ruling that conflicts with the majority. And where the evidence in *Vitolo* was stronger than the evidence as to at least four of five categories here, the majority's substantial justification analysis fundamentally reworks and undermines the strict scrutiny requirements from *Vitolo*.

---

[3]Although defendants presented some evidence of discrimination against blacks/African-Americans, their evidence was dated, didn't account for the significant efforts of remediating past wrongs, and lacked the specificity required by *Vitolo*.

**B.** **The majority failed to employ the *Vitolo* standard for narrow tailoring**

Defendants also failed to demonstrate that § 1005's race preferences were narrowly tailored. *See Vitolo*, 999 F.3d at 360. To meet the narrow tailoring requirement, the government must prove that "'no workable race-neutral alternative' would achieve the compelling interest." *Id.* at 362 (quoting *Fisher v. Univ. of Tex.*, 570 U.S. 297, 312 (2013)). A program "is not narrowly tailored if it is either overbroad or underinclusive in its use of racial classifications." *Id.* A "scattershot approach [to selecting groups for preference] does not conform to the narrow tailoring strict scrutiny require[ment]." *Id.* at 364.

The majority accepted legally insufficient evidence for narrow tailoring that conflicts with this Court's carefully circumscribed approach in *Vitolo*. "[T]he Government pointed to 'the inefficacy of the race-neutral alternatives that Congress tried for years before enacting § 1005,' the time-limited nature of the Section 1005's relief, and the administrative difficulty of quickly administering relief to minority farmers disproportionately harmed by the pandemic."[4] SlipOp.10 This does not resemble the scalpel approach required under *Vitolo*. However administratively convenient a blunt race preference may be, it is not even a remotely tailored

---

[4] Notably, pandemic relief as a justification directly contradicts *Vitolo* since the pandemic's disproportionate impact on minority groups had nothing to do with the government. *See Vitolo*, 999 F.3d at 361.

approach. "A narrowly-tailored set-aside program must be 'linked to identified discrimination.' Its criteria and measures of success must be particularized, not reduced to rigid quotas driven by '*simply administrative convenience.*'" *Assoc. Gen. Constrs.*, 214 F.3d at 730 (emphasis added) (quoting *J.A. Croson Co.*, 488 U.S. at 507–08). The majority did not just undo the *Vitolo* standard for narrow tailoring; by allowing for administrative convenience to justify a race preference, it appeared to abandon narrow tailoring altogether.

More problematic, the preferred races were not tailored with a scalpel. It was made crystal clear to them in *Vitolo*, 999 F.3d at 364 (nearly these exact categories "do[] not conform to the narrow tailoring strict scrutiny requires"). Yet, defendants refused to concede that Holman was likely to prevail on the merits as to these groups, presumably because they knew it would be fatal. *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll. (SFFA)*, 600 U.S. 181, 291 (2023) (Gorsuch, J., concurring) ("Where do these [groups] come from? Bureaucrats."). That means they could not possibly have had a substantial justification unless well-settled caselaw is erroneous.

Moreover, defendants knew their approach was at once "overbroad and underinclusive" under *Vitolo*. 999 F.3d at 363. For if these groups, why not Jews, Middle Easterners, Indian-Americans, and Arabs who have experienced generalized discrimination? *See id*. at 364 (questioning why some groups are included and others

excluded as "racial gerrymandering"). By finding that the government had a substantial justification for these exact same categories based on the evidence it presented, the majority has functionally created a clear split in how narrow tailoring works.

En banc review is needed to bring the panel decision in line with the teachings of *Vitolo* and Supreme Court decisions regarding narrow tailoring.

### III. The majority undervalued the string-of-losses defendants suffered by the time they defended in *Holman*

By the time the government sought in vain to defend § 1005, it had already suffered a string of losses on this very program, to say nothing of *Vitolo*. By discounting that record, the majority conflicts with Sixth Circuit law.

"[O]bjective indicia" of the lack of substantial reasonableness in the government's position include, "the views of other courts" and "'a string of losses.'" *Griffith*, 987 F.3d at 563 (quoting *U.S. ex rel. Wall v. Circle C Constr., LLC*, 868 F.3d 466, 471 (6th Cir. 2017)). "Courts often will refuse to label a governmental position reasonable if other justices voted against that very position." Alice Miller, *Comment: Calling Sierra Club for Help?: Attorney Fees Under the Equal Access to Justice Act and its Effects on Litigation Involving Large Environmental Groups*, 9 Dick. J. Env. L. Pol. 553, 565 (2001).

Defendants' litigation position must be viewed in light of the government having lost its efforts to defend a similar race-based program in *Vitolo* and

defendants having lost multiple attempts to defend § 1005 at the preliminary injunction/temporary restraining order stage. *See Miller*, 2021 U.S. Dist. LEXIS 264778; *Wynn*, 545 F. Supp. 3d 1271; *Faust*, 519 F. Supp. 3d 470. After it suffered these losses, it still relied on the same evidence in *Holman* rather than hit pause.

## IV. The majority undermines the incentives for Americans to challenge state-sanctioned discrimination, an important and recurring issue

This case meets Federal Rule of Appellate Procedure 35(b)(1)(B)'s exceptional importance threshold for en banc review because it presents a recurring issue facing litigants challenging race-based programs. EAJA "ensure[s] that [litigants] will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved." *Scarborough*, 541 U.S. at 407 (quoting H.R.Rep.No.99-120 at 4).

Race-based preferences in government programs have lately become reflexively adopted by the federal government. ARPA, which yielded both § 1005 and the provision challenged in *Vitolo,* is but one of many iterations. More recently, a court in this circuit enjoined the Department of Transportation from implementing a program that provided race- and sex-based preferences in government contracting. *See Mid-Am. Milling Co., LLC v. U.S. DOT*, No.3:23-cv-00072-GFVT, 2024 U.S. Dist. LEXIS 171113 (E.D. Ky. Sept. 23, 2024). A similar program in USDA and SBA contracting was also enjoined. *Ultima Servs. v. USDA*, No.2:20-cv-00041, 2023 U.S. Dist. LEXIS 124268, at *60 (E.D.Tenn. July 19, 2023). And an entire federal agency

16

has existed to provide preferential treatment to minority business owners. *See Nuziard v. Minority Bus. Dev. Agency*, No. 4:23-cv-00278-P, 2024 U.S. Dist. LEXIS 38050 (N.D. Tex. Mar. 5, 2024). USDA is even using race- and sex-preferences to compensate farmers in its disaster relief programs and its milk loss program. *See Strickland v. USDA*, No.2:24-cv-60-Z, 2024 U.S. Dist. LEXIS 101547, at *2 (N.D.Tex. June 7, 2024); *see also* 7 C.F.R. § 760.1702. Instead of winding down, they are ramping up.

If "[e]liminating racial discrimination means eliminating all of it," *SFFA*, 143 S. Ct. at 2161, then attorneys must be incentivized to move swiftly when the discrimination at hand involves a rapidly expiring pot of funds. An injunction must occur before the money runs out. Otherwise, a particularly noxious form of race discrimination would manage to evade judicial review by simply working as it intended: to deliver finite benefits in a discriminatory manner. *See Strickland*, 2024 U.S. Dist. LEXIS 101547, at *30 (enjoining only one of eight programs that likely violated equal protection because it was "[t]he only active" program with money remaining). Congressional purposes in designing fee-shifting provisions would be undermined in the very cases where incentives matter most. *See Comm'r, INS v. Jean*, 496 U.S. 154, 163, n.11 (1990) (EAJA's purpose was to "eliminate" deterrent effect individuals face when challenging unreasonable governmental action); *Riverside v. Rivera*, 477 U.S. 561, 577 (1986) (fee-shifting under § 1988 "is

particularly important and necessary if Federal civil and constitutional rights are to be adequately protected." (quotation omitted)); *Hall v. Cole*, 412 U.S. 1, 13 (1973) (lack of fees under § 29 U.S.C. 412 "frustrat[es] its basic purpose," rendering "grant of federal jurisdiction … but a gesture").

## CONCLUSION

The majority's decision conflicts with Circuit and Supreme Court precedent by concluding defendants' evidence, although legally incapable of supporting strict scrutiny, was substantially justified. Accordingly, en banc review is needed.

**CERTIFICATE OF COMPLIANCE**

This brief complies with Fed. R. App. P. 35(b)(2)(A) because it contains 3,865 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). The foregoing complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared on a computer in a proportionally spaced font using Times New Roman font (14 point).

 November 7, 2024.      /s/ Braden H. Boucek
                BRADEN H. BOUCEK

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent through the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access the filing through the Court's electronic filing system.

November 7, 2024.                    /s/ Braden H. Boucek
                                     BRADEN H. BOUCEK