No. 23-5493

# In the United States Court of Appeals
## FOR THE SIXTH CIRCUIT

─────────

ROBERT HOLMAN,
PLAINTIFF-APPELLANT,

*v.*

THOMAS J. VILSACK, in his official capacity as
Secretary of Agriculture, et al.,
DEFENDANTS-APPELLEES.

─────────

On Appeal from the United States District Court for the
Western District of Tennessee at Jackson,
Case No. 1:21-cv-01085

The Honorable S. Thomas Anderson, District Judge

─────────

**AMICUS CURIAE BRIEF OF THE WISCONSIN INSTITUTE FOR
LAW & LIBERTY, INC., IN SUPPORT OF PLAINTIFF-
APPELLANT & REVERSING THE PANEL DECISION**

─────────

DANIEL P. LENNINGTON
*Counsel of Record*

WISCONSIN INSTITUTE FOR
LAW & LIBERTY

330 E. Kilbourn Ave., Suite 725
Milwaukee, WI 53202
Dan@will-law.org
(414) 727-9455

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...........................................1

INTEREST OF *AMICUS* ........................................................1

INTRODUCTION ..............................................................2

ARGUMENT ..................................................................5

   I.  These racial categories have been recognized as unconstitutional for decades. ................................................5

   II.  The federal government continues to employ dozens of racial presumptions. ....................................................8

   III. This Court should follow the reasoning of *Nuziard*. .....................9

CONCLUSION ................................................................11

# TABLE OF AUTHORITIES

## Cases

*City of Richmond v. J.A. Croson Co.*
488 U.S. 469 (1989)............................................................5, 8

*Comm'r, I.N.S. v. Jean*
496 U.S. 154 (1990)...............................................................13

*Faust v. Vilsack*
519 F. Supp. 3d 470 (E.D. Wis. 2021) ............................................ 2

*Fullilove v. Klutznick*
448 U.S. 448 (1980)........................................................ 8

*Holman v. Vilsack*
117 F.4th 906 (6th Cir. 2024)........................................... 7

*Mid-Am. Milling Co. v. U.S. Dep't of Transp.*
No. 3:23-cv-00072-GFVT, 2024 WL 4267183 (E.D. Ky. Sept.
23, 2024)............................................................... 1

*Nuziard v. Minority Bus. Dev. Agency*
721 F. Supp. 3d 431 (N.D. Tex. Mar. 5, 2024) ......................1, 9, 12

*Nuziard v. Minority Business Development Agency*
No. 4:23-cv-00278-P, 2024 WL 4416885 (N.D. Tex. Apr. 26,
2024)..............................................................12, 13

*Ozawa v. United States*
260 U.S. 178 (1922)........................................................ 8

*Shaw v. Reno*
509 U.S. 630 (1993)......................................................10

*Students for Fair Admissions, Inc. v. President & Fellows of
Harvard Coll.*
600 U.S. 181 (2023)........................................5, 6, 9, 10

*United Jewish Orgs. v. Carey*
430 U.S. 144 (1977)........................................................ 8

*United States v. Thind*
261 U.S. 204 (1923)........................................................ 8

*Vitolo v. Guzman*
    999 F.3d 353 (6th Cir. 2021) ............................................ 2, 5, 9, 11

*Wygant v. Jackson Bd. of Educ*.
    476 U.S. 267 (1986) .................................................................. 5, 8

## Other Authorities

*American Rescue Plan Debt Payments FAQ*, Farmers.gov (May 21,
    2021) ................................................................................ 7

Daniel P. Lennington & Skylar Croy, *The Twin
    Commands: Streamlining Equality Litigation Based on
    Students for Fair Admissions*, 25 Federalist Soc'y Rev. 349
    (2024) .............................................................................. 6

Julian Mark & Peter Whoriskey, *Biden Administration Declines to
    Defend Affirmative Action Programs*, Wash. Post (July 26,
    2024)................................................................................ 3

Lisa Friedman, *White House Takes Aim at Environmental Racism,
    but Won't Mention Race*, Wash. Post (Feb. 15, 2022) ..................... 4

White House, *Advancing Equity and Racial Justice* (last visited
    Oct. 29, 2024) ..................................................................... 4

## Rules and Regulations

15 U.S.C. § 9501(15)(B)............................................................12

15 U.S.C. § 9501(9)(A).............................................................12

## CORPORATE DISCLOSURE STATEMENT[1]

The Wisconsin Institute for Law & Liberty, Inc. ("WILL") is a non-profit, tax-exempt organization incorporated in Wisconsin. WILL has no parent corporation, and no publicly held company has 10% or greater ownership in WILL.

## INTEREST OF *AMICUS*

WILL is a public-interest law firm that frequently litigates against programs with racial preferences. WILL has successfully challenged multiple programs that prioritize the "socially disadvantaged," a euphemism for certain preferred racial groups. *See, e.g.*, *Mid-Am. Milling Co. v. U.S. Dep't of Transp.*, No. 3:23-cv-00072-GFVT, 2024 WL 4267183 (E.D. Ky. Sept. 23, 2024) ("*MAMCO*"); *Nuziard v. Minority Bus. Dev. Agency*, 721 F. Supp. 3d 431 (N.D. Tex. Mar. 5, 2024) ("*Nuziard I*"); *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021); *Faust v. Vilsack*, 519 F. Supp. 3d 470 (E.D. Wis. 2021).

---

[1] No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief. No person—other than the *amicus curiae*, its members, or its counsel—contributed money that was intended to fund preparing or submitting this brief.

In this action, the panel unreasonably interpreted the Equal Access to Justice Act ("EAJA"), restricting the ability of WILL and similar organizations to recover attorney fees and costs. WILL, like other public-interest law firms, hardly ever charges its clients. The ability to recover fees allows WILL to help more clients safeguard their constitutional rights.

All parties have consented to the filing of this amicus brief under Fed. R. App. P. 29.

## INTRODUCTION

The Biden-Harris Administration is 0 for 9 in defending racial preferences.[2] Press accounts report that the Department of Justice has "backed down from defending" some racial preferences in court and has

---

[2] *See Vitolo*, 999 F.3d 353 (Restaurant Revitalization Fund); *Faust*, 519 F. Supp. 3d 470 (Farmer Loan Forgiveness); *Wynn v. Vilsack*, 545 F. Supp. 3d 1271 (M.D. Fla. 2021) (same); *Miller v. Vilsack,* No. 4:21-cv-0595, 2021 WL 11115194 (N.D. Tex. July 1, 2021) (same); *Holman v. Vilsack,* No. 21-1085, 2021 WL 2877915 (W.D. Tenn. July 8, 2021) (same); *Ultima Serv. Corp. v. USDA*, 683 F. Supp. 3d 745 (E.D Tenn. 2023) (SBA's Section 8(a) Program); *Nuziard I,* 721 F. Supp. 3d 431 (MBDA); *Strickland v. USDA*, No. 2:24-CV-60-Z, 2024 WL 2886574 (N.D. Tex. June 7, 2024) (disaster relief); *MAMCO*, 2024 WL 4267183 (DBE program).

even admitted that going forward, new programs must be race neutral or else "legal challenges . . . would stymie their efforts." Julian Mark, *Biden Administration Declines to Defend Affirmative Action Programs*, Wash. Post (July 26, 2024), https://archive.ph/Vq2EL; Lisa Friedman, *White House Takes Aim at Environmental Racism, but Won't Mention Race*, Wash. Post (Feb. 15, 2022), https://archive.ph/AV8e2.

Yet, by WILL's count, over sixty programs with racial preferences are still enshrined in federal law. Federal officials do not care. They have reformed these unconstitutional programs only when ordered to by a court.

So public interest law firms must keep litigating, chipping away at the so-called "Equity Agenda" one unconstitutional program at a time. *See* White House, *Advancing Equity and Racial Justice* (last visited Oct. 29, 2024), https://www.whitehouse.gov/equity/. A lot of work lies ahead.

Yet the racial preferences at issue here are not novel—analogous preferences have been around for decades. And since at least the 1980s, precedent has made clear that such preferences are indefensible. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 506 (1989) (citing *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 284 n.13 (1986) (plurality opinion)).

Federal officials still lazily categorize certain races as "disadvantaged" without any evidence. Race is credited as a benefit to some races and a "negative" to others—all based on "stereotype[s]," not evidence. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 218 (2023). No court has held these categories to be narrowly tailored.

In fact, just a few years ago, this Court recognized the absurdity of federal officials helping members of certain races over others. *See Vitolo*, 999 F.3d at 361–62. Despite this clarity, these programs are expensive to challenge and sometimes cases trudge along for years, often because government attorneys take unreasonable positions. *See* Daniel P. Lennington & Skylar Croy, *The Twin Commands: Streamlining Equality Litigation*, 25 Federalist Soc'y Rev. 349 (2024).

Because federal officials persist in defending the indefensible, their defenses cannot be "substantially justified." Just like in *SFFA*, no defense attorney can explain why some races are preferred while others are not. *See* 600 U.S. at 216 (recounting a defense attorney saying, "I do not know the answer to that question"). If defense attorneys cannot explain why

each specific race is either included or excluded from a racial preference, then a defendant's legal position cannot be "substantially justified."

The panel erred in holding otherwise. This Court should grant the *en banc* petition, reverse the panel opinion, and hold that the defense of these racial preferences is not substantially justified under the EAJA.

## ARGUMENT

### I. These racial categories have been recognized as unconstitutional for decades.

The crux of this action, like other challenges to programs with racial preferences, is that the program is offered only to individuals who are members of races deemed "socially disadvantaged." In this action, USDA defined the following groups as "socially disadvantaged": American Indians or Alaskan Natives, Asians, Blacks or African Americans, Hispanics or Latinos, and Native Hawaiians or other Pacific Islanders. *Debt Payments FAQ*, (May 21, 2021), https://archive.ph/8xA43. As this action ensued, federal officials could not explain why certain races were included in or excluded from this list. *Holman v. Vilsack*, 117 F.4th 906, 919 (6th Cir. 2024) (Larson, J., dissenting). In WILL's experience, federal

officials always struggle to explain how and why "socially disadvantaged" designations are made.[3]

For at least four decades, the United States Supreme Court has deemed such racial categories indefensible. In 1986, three justices criticized similar categories as "undifferentiated" with no explanation as to why certain groups were included and others excluded.[4] *See Wygant,* 476 U.S. at 284 n.13. Then in 1989, the Court called such a practice "random" in *Croson,* 488 U.S. at 506, rhetorically asking why black victims of discrimination should be "forced to share this 'remedial relief' with an Aleut citizen who moves to Richmond tomorrow?" *Id.* That question remains unanswered—even for the program at issue in this action. About thirty years later, this Court lampooned the federal government for again relying on racial preferences with no evidence to support such categorizations: "the schedule of racial preferences detailed in the government's regulation…is not supported by any record evidence

---

[3] *See* cases cited *supra* note 2.

[4] This 1986 decision was by no means the first time the Court struggled with arbitrary racial categories. *See, e.g., United States v. Thind,* 261 U.S. 204, 210–13 (1923); *Ozawa v. United States,* 260 U.S. 178, 196–97 (1922); *see also United Jewish Orgs. v. Carey,* 430 U.S. 144, 185 (1977) (Burger, C.J., dissenting); *Fullilove v. Klutznick,* 448 U.S. 448, 530 n.12 (1980) (Stewart, J., dissenting).

at all." *Vitolo*, 999 F.3d at 361; *see also Nuziard I*, 721 F. Supp. 3d at 491 ("Oprah Winfrey is presumptively disadvantaged, while Plaintiffs and even more disadvantaged Americans are not").

No judge has closely examined the federal racial categories, matched them to the evidence, and then held that such a scheme is logical. Quite bluntly, defense attorneys cannot explain the how or why of these categories either. As far as USDA is concerned, farmers from Japan, Korea, and Indonesia are all the same: they're just "Asian." *Cf. SFFA*, 600 U.S. at 216 ("[R]espondents are apparently uninterested in whether *South* Asian or *East* Asian students are adequately represented."). That fact, by itself, shows that an abominable racial stereotype is at play.

It was no surprise, therefore, that the Supreme Court derided Harvard and North Carolina's racial categories (nearly identical to USDA's categories here), calling them "arbitrary," "opaque," "overbroad," "undefined," and "underinclusive." *Id.* at 216–17. The Court, based on decades of precedent, explained that "[w]e have *time and again* forcefully rejected the notion that government actors may intentionally allocate preference to those 'who may have little in common with one another but

the color of their skin.'" *Id.* at 220 (emphasis added) (quoting *Shaw v. Reno*, 509 U.S. 630, 647 (1993)).

If the Supreme Court has rejected the imprecise racial categories "time and again," going back at least to 1986, then how can Defendants' legal position be deemed "substantially justified" under the EAJA? It cannot, which is why an *en banc* rehearing is appropriate.

## II.    The federal government continues to employ dozens of racial presumptions.

What makes this action of "exceptional public importance," 6 Cir. I.O.P. 35, supporting *en banc* rehearing, is that the program at issue—the Farmer Loan Forgiveness Program—is like dozens of other programs granting nearly identical preferences to "socially disadvantaged" individuals belonging to certain preferred racial categories. This action is not a one-off about a repealed federal loan-forgiveness program.

There are over sixty such programs codified in federal statutes. *See* Wisconsin Institute for Law & Liberty, "Current U.S. Code Preferences, Priorities, or other Benefits for Certain Racial Groups Presumed to be "Socially    Disadvantaged    Individuals"    (SDIs)," https://will-law.org/equalityresource. No federal official has committed to disabling these unconstitutional racial preferences. They are ongoing programs,

undoubtedly affecting millions of Americans every day, and it is up to public-interest law firms, like WILL, to bear the burden of litigating against these programs one at a time.[5]

If the government persists in implementing and enforcing these unconstitutional categories, and their legal defense is "not supported by any record evidence at all," *Vitolo*, 999 F.3d at 361, then prevailing parties should be compensated for their fees and costs under the EAJA.

## III. This Court should follow the reasoning of *Nuziard*.

This Court should follow the reasoning in *Nuziard,* 721 F. Supp. 3d 431. In that case, three small business owners challenged the MBDA, which only served "socially or economically disadvantaged individuals." *See* 15 U.S.C. § 9501(9)(A). Like Defendants in this action, MBDA deployed the familiar list of racial groups it thought worthy of racial preferences. 15 U.S.C. § 9501(15)(B). The district court held that those racial categories were not narrowly tailored. After quoting the *Croson* passages cited above, it wrote: "The same is true here, as the Agency

---

[5] In *MAMCO*, for example, WILL is litigating in the Eastern District of Kentucky. The court has granted a preliminary injunction based in part on irrational racial presumptions like those in this case. At the conclusion of that case, WILL may very well end up back at this Court with an EAJA fee-petition appeal if this issue is not resolved *en banc*.

seeks to justify a ramshackle presumption without concrete evidence establishing why certain groups make the list and others don't." *Nuziard I*, 721 F. Supp. 3d at 491.

After the small business owners moved for fees, the district court held that the defendants' position was not substantially justified. *Nuziard*, No. 4:23-cv-00278-P*,* 2024 WL 4416885, *3 (N.D. Tex. Apr. 26, 2024) ("*Nuziard II*"). The defendants' arguments not only had no "reasonable basis in law or fact," they had no basis "in common sense." *Id.* WILL attorneys spent 1,498 hours prosecuting that action. *Id.* at *1. The district court said it was "surprised" certain time entries were not "*higher*." *Id.* at *7.

The same is true here; the racial categories are nearly identical. Like the defendants in *Nuziard*, Defendants here had no reasonable defense yet pursued one anyway, running up a legal bill.

\* \* \*

Given the dozens of "socially disadvantaged" racial preferences still on the books, tens of thousands of hours will be expended to dismantle these unconstitutional programs unless federal officials come to their senses. If the federal government chooses to stick with these programs

and continue their enforcement, and then their defense in court, they should pay fees and costs. That is the purpose of the EAJA. *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990). Continually defending the indefensible "socially disadvantaged" category is, to say the least, "unreasonable."

## CONCLUSION

This Court should grant the motion for rehearing *en banc*.

Dated: November 12, 2024

Respectfully Submitted,

WISCONSIN INSTITUTE FOR
LAW & LIBERTY

s/ *Daniel P. Lennington*

DANIEL P. LENNINGTON
*Counsel of Record*

330 E. Kilbourn Ave., Suite 725
Milwaukee, WI 53202
Dan@will-law.org
(414) 727-9455

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(G), I certify the following:

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because this brief contains 1,903 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: November 12, 2024

s/ *Daniel P. Lennington*
DANIEL P. LENNINGTON

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2024, I filed the foregoing Amicus Brief with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

Dated: November 12, 2024

*s/ Daniel P. Lennington*

DANIEL P. LENNINGTON