No. 23-5493

◆

# IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

◆

ROBERT HOLMAN,
*Petitioner*,

v.

THOMAS VILSACK, et al.,
*Respondents*.

◆

On Petition for *En Banc* Rehearing

◆

## *AMICUS CURIAE* BRIEF OF THE BUCKEYE INSTITUTE IN SUPPORT OF PETITIONER AND REHEARING

◆

David C. Tryon
*Counsel of Record*
Alex M. Certo
Thomas J. Gillen
The Buckeye Institute
88 East Broad Street
Suite 1300
Columbus, OH 43215
(614) 224-4422
D.Tryon@BuckeyeInstitute.org

*Attorneys for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

*Amicus* states that it has no parent corporation and issues no stock, thus no publicly held corporation owns more than ten percent of its stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ..........................................................i

TABLE OF AUTHORITIES ................................................................... iii

INTEREST OF *AMICUS CURIAE* ...........................................................1

ARGUMENT ...................................................................................1

   I.   Introduction ..........................................................................1

   II.  The EAJA was enacted to assist private litigants, not to protect the government..........................................................................2

   III. The Government—not the private litigant—should take the risk of continuing to assert a losing position ...........................................4

   IV. This case exemplifies that the "substantially justified" standard has been interpreted too favorably toward the government .................7

CONCLUSION ................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*Ardestani v. I.N.S.*,
  502 U.S. 129 (1991) ........................................................................4

*Comm'r, I.N.S. v. Jean*,
  496 U.S. 154 (1990) ....................................................................3, 6

*Faust v. Vilsack*,
  No. 21-C-548, 2021 WL 2806204 (E.D. Wis. July 6, 2021) ................6

*Holman v. Vilsack*,
  117 F.4th 906 (6th Cir. 2024).........................................................5

*Holman v. Vilsack*,
  No. 21-1085-STA-JAY, 2021 WL 2877915 (W.D. Tenn. July 8, 2021)..............6

*Louisiana v. Becerra*,
  20 F.4th 260 (5th Cir. 2021)..........................................................6

*Miller v. Vilsack*,
  No. 4:21-CV-0595-O, 2021 WL 11115194 (N.D. Tex. July 1, 2021),
  *amended*, 2021 WL 11115227 (N.D. Tex. Oct. 18, 2021)....................6

*Pierce v. Underwood*,
  487 U.S. 552 (1988) ....................................................................7, 8

*Scarborough v. Principi*,
  541 U.S. 401 (2004) ........................................................................4

*Sullivan v. Hudson*,
  490 U.S. 877 (1989) ........................................................................4

*W. Virginia v. Env't Prot. Agency*,
  597 U.S. 697 (2022) ........................................................................2

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ...........................................................................7

*Wynn v. Vilsack*,
  545 F. Supp. 3d 1271 (M.D. Fla. 2021) ..........................................6

**Other Authorities**

Abraham Lincoln, The Gettysburg Address (Nov. 19, 1863) ...................................2

C. Coglianese, *Illuminating Regulatory Guidance*, 9 Mich. J. Env. & Admin. L. 243 (2020)..........................................................................................................2

Grant Gilmore, *The Ages of American Law* (2d. ed. 2014) ......................................3

H.R. Rep. No. 96–1005 ...............................................................................................4

Judith E. Kramer, *Equal Access to Justice Act Amendments of 1996: A New Avenue for Recovering Fees from the Government*, 51 Admin. L. Rev. 363 (1999) ..................................................................................................................3, 8

Neil Gorsuch, *Over Ruled: The Human Toll of Too Much Law* (Harper, 2024).......3

R. Cass, *Rulemaking Then and Now: From Management to Lawmaking*, 28 Geo. Mason L. Rev. 683 (2021)...........................................................................2

## INTEREST OF AMICUS CURIAE[1]

The Buckeye Institute was founded in 1989 as an independent research and educational institution—a think tank—to formulate and promote free-market policy in the states. The Buckeye Institute accomplishes its mission by performing timely and reliable research on key issues, compiling and synthesizing data, formulating free-market policies, and marketing those policy solutions for implementation in Ohio and replication across the country. The Buckeye Institute works to restrain governmental overreach at all levels of government. In fulfillment of that purpose, The Buckeye Institute files lawsuits and submits amicus briefs. The Buckeye Institute is a nonpartisan, nonprofit, tax-exempt organization, as defined by I.R.C. section 501(c)(3). The Buckeye Institute and other public interest law firms rely on fee-shifting mechanisms like those within the EAJA to facilitate lawsuits to vindicate personal rights and constitutionally protected freedoms.

## ARGUMENT

### I.  Introduction

There are two structural problems with the way the court evaluated the government's asserted substantial justification. First, it overlooked the underlying purpose of the Equal Access to Justice Act's (EAJA) fee-shifting action. Second,

---

[1] The Buckeye Institute states that no counsel for any party has authored this brief in whole or in part and no person other than the amicus has made any monetary contribution to this brief's preparation or submission.

1

when the government's position has been struck down elsewhere, the government should bear the risk of continuing to assert that position if it is wrong.

## II. The EAJA was enacted to assist private litigants, not to protect the government.

The EAJA was a recognition of the deeply held American belief that the American government is "of the people, by the people, for the people." Abraham Lincoln, The Gettysburg Address (Nov. 19, 1863). The people's representatives in Congress recognized the problem with a powerful government with nearly unlimited resources to sue, prosecute, and punish its citizens. "Today, Congress issues 'roughly two hundred to four hundred laws' every year, while 'federal administrative agencies adopt something on the order of three thousand to five thousand final rules.'" *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 742 n.2 (2022) (Gorsuch, J., concurring) (quoting R. Cass, *Rulemaking Then and Now: From Management to Lawmaking*, 28 Geo. Mason L. Rev. 683, 694 (2021)). *See also id.* (Gorsuch, J., concurring) (quoting C. Coglianese, *Illuminating Regulatory Guidance*, 9 Mich. J. Env. & Admin. L. 243, 247–248 (2020)) (noting that agencies also "'produce thousands, if not millions,' of guidance documents which, as a practical matter, bind affected parties too"). With these ever-changing, thousands of laws on the books, citizens' actions are increasingly put under a microscope and they can scarcely

breathe without running afoul of federal law.[2] This excessive and reckless lawmaking often results in the government's laws or other actions going beyond the scope of the Constitution, and the Department of Justice is sometimes overzealous in pursuing citizens or defending these knowingly questionable laws. When Americans endeavor to defend themselves or challenge these laws, they must hire lawyers to protect their rights. But lawyers have become increasingly more expensive—far beyond what Abraham Lincoln could have envisioned when he proclaimed that our government was "for the people."

In any event, Congress recognized the problem when it enacted the EAJA. The EAJA "provides a statutory exception to the American Rule, by which attorney fees are not ordinarily recoverable by a prevailing litigant in federal litigation in the absence of statutory authorization or an enforceable contract providing for the payment of fees." Judith E. Kramer, *Equal Access to Justice Act Amendments of 1996: A New Avenue for Recovering Fees from the Government*, 51 Admin. L. Rev. 363, 364 (1999). The stated purpose of EAJA, among other things, is to "diminish the deterrent effect of seeking review of, or defending against, governmental action by providing" for the award of certain costs and fees against the United States. *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 165 n. 11 (1990) (quoting Congressional

---

[2] "The worse the society, the more law there will be. In Hell there will be nothing but law." Neil Gorsuch, *Over Ruled: The Human Toll of Too Much Law* 9 (Harper, 2024) (citing Grant Gilmore, *The Ages of American Law* 99 (2d. ed. 2014)).

Findings and Purposes, note following 5 U.S.C. § 504). Congress enacted the EAJA

> "to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government." H.R.Rep. No. 96–1005, p. 9. Among other reforms, [the] EAJA amended 28 U.S.C. § 2412, which previously had authorized courts to award costs, but not attorney's fees and expenses, to prevailing parties in civil litigation against the United States. [The] EAJA added two new prescriptions to § 2412 that expressly authorize attorney's fee awards against the Federal Government. First, § 2412(b) made the United States liable for attorney's fees and expenses "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."

*Scarborough v. Principi*, 541 U.S. 401, 406 (2004).

Courts should, and do, recognize the underlying purpose of laws when applying those laws. This is particularly important in evaluating EAJA claims. The "EAJA is to be read in light of its purpose 'to diminish the deterrent effect of seeking review of, or defending against, governmental action.'" *Ardestani v. I.N.S.*, 502 U.S. 129, 145 (1991) (Blackmun, J., dissenting) (quoting *Sullivan v. Hudson*, 490 U.S. 877, 890 (1989)). The panel opinion seems to ignore *Sullivan's* admonition.

## III. The Government—not the private litigant—should take the risk of continuing to assert a losing position.

The idea of a reasonable person is a hard one. Courts often have no choice but to guess what a reasonable person would consider a correct position in the context of the EAJA. A real "reasonable" person is more useful than a theoretical one. In this case, we need not speculate as to how a theoretically reasonable person might view

4

this law. And as the panel recognized, "[w]hat 'matter[s] most' to the substantial justification analysis is 'the actual merits of the Government's litigating position.'" *Holman v. Vilsack*, 117 F.4th 906, 912 (6th Cir. 2024) (citations omitted). Two well-regarded jurists—certainly the epitome of a "reasonable person"—had already found the merits of the government's position to be wrong. Courts should look to prior cases addressing the government's position. *See Spencer v. N.L.R.B.*, 712 F.2d 539, 557 (D.C. Cir. 1983), *superseded by statute on other grounds*. And "[w]hether the government's position was substantially justified depends to an important degree on the clarity of the governing law *at the time the government made its litigating decision*" to defend another case on the same issue. *Battles Farm Co. v. Pierce,* 806 F.2d 1098, 1101–02 (D.C. Cir. 1986), *cert. granted, judgment vacated*, 487 U.S. 1229 (emphasis added).

Consequently, when all other judges considering the government's position have already rejected it, the government is taking a risk in continuing to assert a losing argument. And the government should bear the consequences of taking that risk.

> Several considerations suggest that when the government loses such a case, it should be obliged to reimburse the private party for its attorneys' fees. To begin with, in controversies of this sort, it is especially important that the private litigant not be deterred, by the prospect of high litigation expenses, from defending his interests; only if they are

5

subjected to vigorous adversarial testing will such important issues receive the attention they deserve.

*Spencer*, 712 F.2d at 558. And given "the greater resources and expertise of the United States," *Jean*, 496 U.S. at 165 n.11 (quoting Congressional Findings and Purposes, note following 5 U.S.C. § 504), the government should be held to a higher standard.

In this case, the government was confronted with three cases that had rejected its position, two of which granted preliminary injunctions[3]—holding that the plaintiffs challenging the government's racially tainted law were likely to succeed on the merits. *See Holman v. Vilsack*, No. 21-1085-STA-JAY, 2021 WL 2877915, at *5 (W.D. Tenn. July 8, 2021) (citing *Wynn v. Vilsack*, 545 F. Supp. 3d 1271 (M.D. Fla. 2021); *Miller v. Vilsack*, No. 4:21-CV-0595-O, 2021 WL 11115194 (N.D. Tex. July 1, 2021), *amended*, 2021 WL 11115227 (N.D. Tex. Oct. 18, 2021); and *Faust v. Vilsack*, No. 21-C-548, 2021 WL 2806204 (E.D. Wis. July 6, 2021) ("[T]he Court notes that four cases in particular have informed its decision" to grant a preliminary injunction).

Courts do not grant preliminary injunctions lightly, especially when, as here, it results in a nationwide injunction. *See Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (noting that "nationwide injunctions are [not] required or even the norm,

---

[3] *Faust* granted a temporary restraining order but stayed the preliminary injunction motion because an existing nationwide injunction in *Wynn* was already in place.

and "the scope of the injunction must be justified based on the 'circumstances'"); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (concluding that a "plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits").

So, considering these other judicial declarations, the government should continue to assert its highly questionable legal position at its own risk, and it is not substantially justified in doing so at the plaintiff's cost.

## IV. This case exemplifies that the "substantially justified" standard has been interpreted too favorably toward the government.

In *Pierce*, the dissent expressed its concerns that the Court was being too lax in its interpretation of the term "substantially justified" because "the test of reasonableness," a standard rejected by Congress and significantly more forgiving than the one actually adopted." *Pierce v. Underwood,* 487 U.S. 552, 576 (1988) (Brennan, J., dissenting) (cleaned up).

The *Pierce* dissent further cited a congressional committee report with approval, explaining that

> "substantial" has a very different definition: "in substance or in the main." Thus, the word connotes a solid position, or a position with a firm foundation. While it is true "reasonable" and "substantial" overlap somewhat (substantial at its weakest and reasonable at its strongest) an overlap is not an identity. Therefore, although Congress may well have intended to use "substantial" in its weaker sense, there is no reason to believe, and substantial reason to disbelieve . . . that Congress intended

7

the word to mean "reasonable" in its weaker sense.

*Id.* at 577 (Brennan, J., dissenting).

Justice Brennan's concerns seem to have been realized, not only in this case, but in the halls of Congress.

> According to Senator Feingold, EAJA was not the deterrent its sponsors had hoped. "[T]he cost has been much smaller than originally anticipated. The Equal Access to Justice Act was originally estimated to cost at least $68 million per year, but . . . annual EAJA awards from 1988 to 1992 generally hovered around $5 to $7 million." Senator Feingold feared that, instead of providing a deterrent to government agencies, EAJA may have created a "'perverse incentive to litigate' on the part of Government attorneys."

Kramer, *supra*, at 374 (alterations in original).

Courts should recognize the congressional intent behind the EAJA was to protect the private litigant. So, to the extent that there is a close question, courts should give the benefit of the doubt to the private party trying to vindicate personal rights and constitutionally protected freedoms. This case presents an opportunity to clarify the proper application of the EAJA. And this court may do so consistent with *Pierce*. *Pierce* set forth a broad interpretation of the EAJA but did not provide a full explanation of how to apply the EAJA to specific circumstances. An *en banc* examination of the EAJA can add clarity in the Sixth Circuit that courts need to be more critical of the government's justifications for its positions and actions. Specifically:

1. Courts need to examine if the application of the EAJA satisfies the statutorily

expressed purpose of the EAJA.

2.  The reasonable person standard needs to recognize the view of judges already
    addressing the government's position and place the risk of proceeding in the
    face of adverse rulings on the government rather than the small private entities
    Congress was trying to protect with the EAJA.

## CONCLUSION

Amicus urges the Court to accept a review of this case *en banc*.

Respectfully submitted,

*/s/ David C. Tryon*
David C. Tryon
   *Counsel of Record*
Alex M. Certo
Thomas J. Gillen
The Buckeye Institute
88 East Broad Street, Suite 1300
Columbus, Ohio 43215
(614) 224-4422
D.Tryon@BuckeyeInstitute.org

November 14, 2024

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. Rule 29(b)(4) because, excluding the exempted parts of the document, this document contains 2,048.

This document complies with the typeface requirements of Fed. R. App. R. 32(a)(5) and the type-style requirements of Fed. R. App. R. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for the most current version of Office 365 in 14-point type, Times New Roman.

   /s/ David C. Tryon
David C. Tryon
*Attorney of record for*
*The Buckeye Institute*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing amicus brief was served on all counsel of record via the Court's electronic filing system this 14th day of November 2024.

Respectfully submitted,

/s/ David C. Tryon
David C. Tryon
*Attorney of record for*
*The Buckeye Institute*

11