No. 23-5493

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

—————————

ROBERT HOLMAN,

Plaintiff-Appellant,

v.

THOMAS VILSACK, et al.,

Defendants-Appellees.

—————————

On Appeal from the United States District Court
for the Western District of Tennessee

—————————

**DEFENDANTS-APPELLEES' RESPONSE TO
PETITION FOR PANEL REHEARING OR REHEARING EN BANC**

—————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant
  Attorney General*

THOMAS PULHAM
JEFFREY E. SANDBERG
  *Attorneys, Appellate Staff
  Civil Division, Room 7214
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 532-4453*

# **TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY ........................................................ 1

STATEMENT...................................................................................... 2

A.  Statutory and Factual Background ........................................... 2

B.  Procedural History ................................................................... 5

C.  Panel Decision ......................................................................... 6

ARGUMENT ...................................................................................... 9

A.  The Panel Properly Affirmed The Fee Denial Because The
     Government's Position Was Substantially Justified In This Case. ............ 9

B.  This Case Does Not Meet The Criteria For En Banc Review. ................ 12

C.  En Banc Review Is Unwarranted Given Other Grounds For
     Affirmance. ............................................................................ 16

CONCLUSION.................................................................................. 19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## INTRODUCTION AND SUMMARY

This dispute concerns a motion for attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d).  After obtaining a duplicative preliminary injunction against a statute that had already been enjoined nationwide and was later repealed (thus rendering this case moot), plaintiff filed this motion seeking $44,000 in fees.  The district court denied the motion, concluding that the temporary injunctive relief it had earlier afforded did not qualify plaintiff as a prevailing party.  This Court then affirmed on the independently dispositive basis that, on the particular facts of this case, the government's "position" had been "substantially justified."  *Cf. id.*

This case does not warrant en banc review.  The panel properly concluded, for numerous fact- and case-specific reasons, that the Executive Branch was justified here in defending Congress's statute against constitutional attack.  That factbound resolution does not conflict with any decision of the Supreme Court, this Court, or any other court of appeals.  Though Judge Larsen dissented from the panel decision, she expressed no disagreement with the legal framework that the panel majority applied.  Plaintiff does not identify any question of exceptional importance, but instead merely asserts that the panel erred in applying well-settled legal principles to the facts of this case.  In

all events, rehearing on the ground urged by plaintiff is unwarranted because the judgment is independently supported by other grounds for affirmance.

## STATEMENT

### A.    Statutory and Factual Background

**1.**  "[U]nder what is known as the 'American Rule,' each party pays his, her, or its own fees unless a statute explicitly provides otherwise."  *Miller v. Caudill*, 936 F.3d 442, 447 (6th Cir. 2019).  As relevant here, EAJA provides that a court "shall award to a prevailing party … fees and other expenses … incurred by that party in any civil action … unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  Thus, "a plaintiff must satisfy three conditions: (1) [he] must be a 'prevailing party'; (2) the Government's opposing position must have been without substantial justification; and (3) there must be no special circumstances that warrant denying relief."  *DeLong v. Commissioner of SSA*, 748 F.3d 723, 725 (6th Cir. 2014).

**2.**  The underlying litigation involved a constitutional challenge to one provision of the American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat. 4 (ARPA).  Congress enacted ARPA to provide various emergency assistance to "vulnerable communities" who "b[ore] the brunt of" the COVID-

19 pandemic.  H.R. Rep. No. 117-7, at 2 (2021).  Among them were minority farmers and ranchers, groups that previously suffered "longstanding and widespread discrimination" in the administration of U.S. Department of Agriculture (USDA) programs.  *Id.* at 12.

In Section 1005 of ARPA, Congress directed USDA to pay "up to 120 percent of the outstanding indebtedness" for certain loans held by a "socially disadvantaged farmer or rancher" as of January 1, 2021.  ARPA § 1005(a)(1)-(2), 135 Stat. at 12-13.  It specified that the term "socially disadvantaged farmer or rancher" means a "farmer or rancher who is a member of" a group "whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities."  7 U.S.C. § 2279(a)(5)-(6); *see* ARPA § 1005(b)(3), 135 Stat. at 13.[1]

**3.**  Numerous lawsuits were brought challenging Section 1005.  Among them was this suit by plaintiff Robert Holman, who would have been eligible for assistance but for the social-disadvantage requirement.  Instead of seeking equal access to benefits, plaintiff moved for a preliminary injunction barring

---

[1] Applying those criteria, USDA stated that "[m]embers of socially disadvantaged groups include, but are not limited to[,] American Indians or Alaskan Natives; Asians; Blacks or African Americans; Native Hawaiians or other Pacific Islanders; and Hispanics or Latinos."  86 Fed. Reg. 28,329, 28,330 (May 26, 2021).  The Secretary also would "determine on a case-by-case basis whether additional groups qualify."  *Id.*

implementation of the program.  In the interim, multiple other courts had already entered the same relief on nationwide and classwide bases.[2]  The district court here nonetheless granted plaintiff's requested relief as a further protective measure.  *See* PI Order 9-17, RE41, PageID#864-72.

As to likelihood of success, the court found that the government had not yet met its burden under strict scrutiny of showing that Section 1005's eligibility requirement served a compelling governmental interest.  The record did contain ample "evidence … reveal[ing] systemic racial discrimination by the USDA."  PI Order 10-11.  But the court determined that the government had not tendered all forms of evidence described by this Court's (then-one-month-old) decision in *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021), applying strict scrutiny to a different federal program.  PI Order 14.  It also reasoned that "at this stage in the case, it does not appear that Section 1005 is narrowly tailored such that it 'eliminates no more than the exact source of the 'evil' it seeks to remedy.'"  *Id.* at 16-17.  But it emphasized that the government "will have the opportunity to present such evidence at a trial on the merits," where the government might well prevail "'[o]n a more fully developed record.'"  *Id.* at 12 n.12.

---

[2] *See Faust v. Vilsack*, 519 F. Supp. 3d 470, 478 (E.D. Wis. 2021); *Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1295 (M.D. Fla. 2021); *Miller v. Vilsack*, No. 4:21-cv-595, 2021 WL 11115194, at *3, 12 (N.D. Tex. July 1, 2021).

**4.** The government did not appeal that preliminary injunction (or the prior injunctions entered in parallel cases), instead choosing to further develop the record supporting Section 1005's constitutionality. This case was eventually stayed pending summary-judgment proceedings in the class action in *Miller v. Vilsack* (N.D. Tex.). But Congress then acted to repeal the challenged statute. *See* Inflation Reduction Act, Pub. L. No. 117-169, § 22008, 136 Stat. 1818, 2023 (2022). As a result, this case—and all other pending Section 1005 litigation—was dismissed as moot. *See* Joint Stipulation, RE83, PageID#1284 (agreeing that "Plaintiff's challenge to Section 1005 is moot").

**B.    Procedural History**

Plaintiff moved for attorney's fees under EAJA. The government opposed on multiple grounds, including that plaintiff did not qualify as a "prevailing party"; that the government's position had been "substantially justified"; and that "special circumstances ma[de] an award unjust." 28 U.S.C. § 2412(d)(1)(A).

The district court denied plaintiff's fee motion on the first ground. *See* Fee Decision, RE96, PageID#1637-45. It explained that "[t]o be considered a prevailing party," a plaintiff must have obtained a "'court-ordered, material,' and 'enduring'" change "to 'the legal-relationship between the parties.'" *Id.* at 4-6, PageID#1640-42 (quoting *Miller*, 936 F.3d at 448). It concluded that

plaintiff did not qualify as a prevailing party because his sole court-ordered success—the preliminary injunction—did not result in any material, enduring benefit but rather only temporarily preserved the status quo. *See id.* at 8-9.

### C.    Panel Decision

Plaintiff appealed, and the panel affirmed without oral argument.

**1.**  The panel majority declined to decide whether plaintiff had been a prevailing party, "neither adopt[ing] nor definitively reject[ing]" the district court's determination.  Op. 2.  Instead, after "find[ing] that the Government's position during th[is] litigation was 'substantially justified' within the EAJA's meaning," the panel affirmed solely "[o]n that basis."  *Id.*

The panel explained that "[e]ven if a litigant is a prevailing party under the EAJA, he is not entitled to fees if 'the position of the United States was substantially justified.'"  Op. 6 (quoting 28 U.S.C. § 2412(d)(1)(A)).  To avoid fee liability, the government need not have a "winning argument"; rather, its position "need only be 'justified to a degree that could satisfy a reasonable person'" when "considered 'as a whole.'"  Op. 6-7 (quoting *Griffith v. Commissioner of Soc. Sec.*, 987 F.3d 556, 563-64 (6th Cir. 2021)).

Applying those standards, the panel found that the government's litigating position in this case had been substantially justified.  It noted that the government had "[a]cknowledg[ed] the high bar set by" strict scrutiny and

"presented substantial record evidence to defend the program's constitutionality." Op. 9. In particular, the government substantiated Congress's compelling interest in remedying racial discrimination by providing "evidence of intentional USDA discrimination against socially disadvantaged farmers and ranchers generally" as well as "specific examples of intentional discrimination against nearly every group included in the socially disadvantaged category." Op. 9, 11. And the government "support[ed] its argument that Section 1005 was narrowly tailored" by pointing to the inefficacy of race-neutral alternatives, the time-limited nature of the Section 1005 program, and the exigencies of "quickly administering relief to minority farmers disproportionately harmed by the pandemic." Op. 10. Although its arguments did not succeed, they nonetheless afforded "a 'strong basis'" for defending the statute. *Id.*

The panel majority rejected plaintiff's assertion that the government's litigating position should be deemed unjustified in light of this Court's May 2021 decision in *Vitolo*, which had ordered a preliminary injunction against a race-conscious priority period in a different ARPA program. The panel explained that the government's defense of this case was "categorically distinct from the evidentiary presentation in *Vitolo*, which did 'not identify specific incidents of past discrimination' and relied entirely on 'general social

disparities.'"  Op. 11.  Moreover, other aspects of this case—not present in *Vitolo*—"reinforce[d] the reasonableness of the Government's position 'as a whole,'" including that the government also advanced other reasonable grounds for opposing plaintiff's request for duplicative emergency relief, and later won dismissal of plaintiff's remaining claims.  Op. 12.

**2.**  Judge Larsen dissented, explaining that she would have applied the same legal framework, but reached a different conclusion.  Without addressing other aspects of the government's litigation position, she expressed the view that its merits defense of Section 1005 was substantially unjustified in light of *Vitolo*.  For example, although the "government cited evidence of past intentional discrimination against Black farmers and ranchers," the government had offered no "evidence of past intentional discrimination by USDA against Native Hawaiian and Pacific Islander farmers and ranchers."  Op. 16 (Larsen, J., dissenting).  "Absent at least some specific evidence of intentional discrimination against each racial group" benefited by the program, she suggested, it was unreasonable for the government to argue "that § 1005 should not be preliminarily enjoined."  Op. 17 (Larsen, J., dissenting).[3]

---

[3] Judge Larsen also opined that plaintiff should be deemed a prevailing party and special circumstances did not render an award unjust.  Op. 17-22.

# ARGUMENT

## A.    The Panel Properly Affirmed The Fee Denial Because The Government's Position Was Substantially Justified In This Case.

The panel acted properly, and in all events within reasonable discretion, in concluding that the government's defense of the constitutionality of Section 1005 had been substantially justified on these facts.  *Cf. Pierce v. Underwood*, 487 U.S. 552 (1988) (adopting abuse-of-discretion standard for substantial-justification inquiry); *Griffith v. Commissioner of Soc. Sec.*, 987 F.3d 556, 573 (6th Cir. 2021) (recognizing that "different jurists" may permissibly reach "different results" as to substantial justification).

**1.**  EAJA authorizes attorney's fees only when the government's position is not "substantially justified."  28 U.S.C. § 2412(d)(1)(A).  To be substantially justified, a position need only be " 'justified in substance or in the main' "—that is, "justified to a degree that could satisfy a reasonable person." *Griffith*, 987 F.3d at 563 (quoting *Pierce*, 487 U.S. at 565).  When opposing a motion for preliminary injunction, the Government's position is substantially justified "if a reasonable person could think it correct" (*id.*) that the movant had failed to make a "clear showing that [it] is entitled to such relief," *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  The determination is made "as a whole" and includes the government's arguments "during litigation as well as its pre-litigation conduct."  *Griffith*, 987 F.3d at 564; *see* 28 U.S.C.

§ 2412(d)(2)(D). "[S]imply because it lost the case" does not "raise [any] presumption that the Government position was not substantially justified." *Scarborough v. Principi*, 541 U.S. 401, 415 (2004) (quotation marks omitted).

**2.** Applying those well-settled principles, the panel properly determined that, for various case-specific reasons, the government's position in this particular litigation had been substantially justified.

With respect to "[t]he first issue in [plaintiff's] preliminary injunction motion—the likelihood of success on the merits," the panel carefully examined the government's arguments in defense of Section 1005's constitutionality. Op. 8. The government had readily acknowledged that strict scrutiny applied, meaning it "had to show that the program was narrowly tailored to further a compelling governmental interest." *Id.* And the government accordingly "presented substantial record evidence to defend the program's constitutionality." Op. 9. With respect to compelling-interest analysis, the government had cited multiple reports addressing "evidence of past discrimination by the USDA against socially disadvantaged farmers generally" and also provided "examples of past discrimination by the USDA against many specific groups," including Black, Hispanic, Native American, and Asian farmers. *Id.* And with respect to narrow tailoring, the government had supported its defense by "point[ing] to 'the inefficacy of the race-neutral

alternatives that Congress tried for years before enacting § 1005,' the time-limited nature of the [program's] relief, and the administrative difficulty of quickly administering relief to minority farmers disproportionately harmed by the pandemic."  Op. 10.

The panel also explained that other considerations supported a finding of substantial justification in this particular case.  Though several other courts had issued prior adverse rulings involving Section 1005, those rulings were "issued in a preliminary posture," meaning that "no court had definitively deemed the program unconstitutional."  Op. 12.[4]  In fact, it was reasonable for the government to argue that the "injunctions against Section 1005 already issued by other courts eliminated the threat of irreparable harm to [plaintiff]," making further equitable relief unnecessary.  *Id.*  And the government "won a later motion to dismiss" the remaining counts of plaintiff's complaint.  *Id.*

The panel recognized that the government failed to "convince the district court to deny [plaintiff's] preliminary injunction motion."  Op. 13.  But to be substantially justified, the government's position "need not represent a winning argument."  Op. 6.  Here, it was enough that "the Government took positions throughout this litigation that recognized governing precedent and attempted

---

[4] Indeed, the district court here emphasized that its merits assessment was preliminary and contemplated that the government might well prevail at trial.  *See* PI Order 12 n.12, 16-17.

to satisfy it through the presentation of extensive evidence," Op. 13, and that its litigating approach was otherwise reasonable. Because the government's position was thus "'justified to a degree that could satisfy a reasonable person,'" Op. 6, this case is not one in which Congress intended to impose fee liability upon the Executive Branch. *Cf. Griffith*, 987 F.3d at 563 (observing that EAJA liability exists to "'redress[] governmental abuse,'" not to "'chill the government's right to litigate'").

## B. This Case Does Not Meet The Criteria For En Banc Review.

In all events, this case does not present the kind of exceptional dispute that warrants the full Court's attention. The panel majority and dissent agreed on the legal standards governing the substantial-justification inquiry and simply disagreed about whether the facts of this case met those standards. This Court does not ordinarily sit en banc to review the allegedly erroneous application of settled law. Indeed, "[t]he trust implicit in delegating authority to three-judge panels to resolve cases as they see them would not mean much if the delegation lasted only as long as they resolved the cases correctly as others see them." *Issa v. Bradshaw*, 910 F.3d 872, 877-78 (6th Cir. 2018) (Sutton, J., concurring in denial of rehearing en banc).

**1.** Plaintiff does not allege that the panel decision conflicts with any decision of the Supreme Court or any other court of appeals. Nor does

13

plaintiff allege that the panel decision is inconsistent with any of this Court's precedents applying EAJA. *Cf* Fed. R. App. P. 40(b)(2)(A)-(C). Instead, he posits (Pet. 12-15) that the panel decision should be deemed "functionally" in "conflict[]" with *Vitolo v. Guzman*, 999 F.3d 353 (6th Cir. 2021), which had applied strict scrutiny in ordering an injunction against a different program.

No conflict exists, as the panel majority here itself explained (Op. 11). *Vitolo* involved an entirely different federal program, the Restaurant Revitalization Fund (RRF), which was supported by a distinct and more limited evidentiary record that notably did not involve any history of intentional discrimination by the particular agency in question. Here, unlike in *Vitolo*, the "Government provided evidence of intentional USDA discrimination against socially disadvantaged farmers and ranchers generally, and buttressed that evidence with specific examples of intentional discrimination against nearly every [relevant] group." *Id.* Such factual differences matter, particularly insofar as the evaluation of strict scrutiny presents "'controversial, thorny, and unsettled'" issues and often involves "matters of degree rather than cleanly drawn lines." Op. 10 (quoting *Vitolo*, 999 F.3d at 366 (Donald, J., dissenting)).

In all events, the question in *Vitolo* was whether the RRF's statutory priority period was likely unconstitutional, not (as here) whether the

government was substantially justified in defending the statute at all. These are legally distinct inquiries conducted under different standards. *Cf. Speech First, Inc. v. Schlissel*, 939 F.3d 756, 763 (6th Cir. 2019) (explaining that "likelihood of success on the merits" is reviewed "de novo"). Certainly, nothing in *Vitolo* supports plaintiff's argument (Pet. 6) that it is presumptively unreasonable for the Executive Branch even to defend the constitutionality of Acts of Congress whenever strict scrutiny applies.

Plaintiff finds no more support in a "string of losses" in cases concerning the same statute brought in other district courts. Pet. 15. As the panel here explained, "each of the decisions concerning Section 1005 were issued in a preliminary posture," so "no court had definitively deemed the program unconstitutional." Op. 12. And in any event, "those decisions matter less than the actual merits of the Government's litigating position." Op. 13. Notably, the only other Section 1005 plaintiff to seek attorney's fees was similarly unsuccessful. *See Wynn v. Vilsack*, No. 3:21-cv-514, 2023 WL 6158488 (M.D. Fla. Sept. 21, 2023).

**2.** Nor does this case involve any "question[] of exceptional importance." Fed. R. App. P. 40(b)(2)(D). This is a comparatively small attorney's-fee dispute in which the only question resolved by the panel was whether the government's position in this particular litigation was sufficiently

reasonable.  Nothing about the panel's resolution of that factbound question directly implicates the Constitution, EAJA, or any other federal statute. Plaintiff provides no authority to support his suggestion (Pet. 16) that the application of the well-established EAJA framework automatically presents an issue of exceptional importance when the underlying litigation "challeng[es] race-based programs."  And to the extent that plaintiff urges this Court to address an alleged "reflexive[] adopt[ion]" of "[r]ace-based preferences in government programs" (*id.*), any such consideration can and should await a case in which the constitutional merits remain a live question, not (as here) where they are only a collateral factor in a post-hoc attorney's-fee analysis, refracted through the lens of a substantial justification standard.

Because the panel decision involved only a straightforward application of well-settled EAJA precedent, and the only disagreement is "which side of the line the facts of this case fall," further review is not warranted.  *Fenner v. General Motors, LLC*, 121 F.4th 1117, 1119 (6th Cir. 2024) (Moore, J., concurring in denial of rehearing en banc).

**C.    En Banc Review Is Unwarranted Given Other Grounds For Affirmance.**

Moreover, the Court need not consider the factbound question presented by plaintiff's petition because of other available grounds for affirmance.

**1.** The primary issue briefed on appeal was whether plaintiff is a "prevailing party." *See* Pl. Br. 8-28; Gov't Br. 15-16, 18-30.  Here, plaintiff obtained only "preliminary relief that was by nature 'temporary and revocable'" and received "nothing lasting—no permanent change of status, no irrevocable benefit, and no enduring opportunity to profit from the Court's order."  Fee Decision 8-9.  Though permanent relief was ultimately provided by Congress's repeal of Section 1005, "a legislative repeal of a challenged statutory provision ... does not amount to a 'court-ordered change in the legal relationship'" between the parties.  *Id.* at 5 (quoting *McQueary v. Conway*, 614 F.3d 591, 597 (6th Cir. 2010)).  For those reasons, the district court concluded that plaintiff did not qualify as a prevailing party.

The panel majority chose to "neither adopt nor definitively reject that conclusion," Op. 2, finding the analysis to be "particularly fraught," Op. 6; *accord* Op. 14 (Larsen, J., dissenting) ("The majority[] rightly recogniz[es] that the prevailing-party issue is difficult … .").  But if the panel decision were vacated, that question would again be front-and-center before the Court.  And

as plaintiff acknowledges (Pet. 4 n.1), the Supreme Court is currently considering substantially similar questions in *Lackey v. Stinnie*, No. 23-621 (U.S. argued Oct. 8, 2024).  Depending on the Supreme Court's resolution of *Lackey*, the prevailing-party issue may well become sufficiently clear that there would be no occasion to reach the substantial-justification issues for which plaintiff seeks en banc review.

**2.**  Further undermining the value of en banc review is the additional, likewise independently dispositive, question whether "special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  Multiple such circumstances exist here.  First, as already noted, the preliminary injunction entered in this case was duplicative of injunctions previously entered by other courts, both in its reasoning and scope of relief.  Plaintiff's advocacy in this case was ultimately unnecessary and yielded him no additional benefit. Several courts have recognized that fees are unwarranted where a plaintiff's efforts added little to those of other litigants.  *See, e.g.*, *United States v. 27.09 Acres of Land, More or Less*, 43 F.3d 769 (2d Cir. 1994); *Riddell v. National Democratic Party*, 624 F.2d 539, 544-45 (5th Cir. 1980); *Donnell v. United States*, 682 F.2d 240, 247-48 (D.C. Cir. 1982).

Second, any fee award must be paid by the affected agency, 28 U.S.C. § 2412(d)(4), and the Executive Branch here has done nothing more than

18

faithfully implement and defend Congress's own enactments. *Cf. Orner v. Shalala*, 30 F.3d 1307, 1309 (10th Cir. 1994) (EAJA fees are "paid out of agency funds" and designed to "penalize the Secretary for assuming an unjustified legal position"). As this Court has recognized, "'the Government is entitled—if not obligated—to put forth a good faith effort to defend the constitutionality of federal laws, especially those that have never been found unconstitutional.'" *Dvorkin v. Gonzales*, 173 F. App'x 420, 424 (6th Cir. 2006) (per curiam); *see also* U.S. Const. art. II, § 3 (imposing on the President an obligation to "take Care that the Laws be faithfully executed"); *Attorney General's Duty to Defend the Constitutionality of Statutes*, 5 Op. O.L.C. 25 (1981). That duty does not disappear when the statute at issue attempts to remediate past racial discrimination.

No one disputes that USDA has faithfully implemented its statutory instructions and that the government's conduct of this litigation has been otherwise beyond reproach. It is implausible that Congress intended the specter of attorney-fee liability to make agencies second-guess whether they should implement and defend congressional enactments, lest their funds be diverted from important programs to paying opposing counsel's bills. Thus, even if a court deemed it unreasonable for the Executive Branch to follow Congress's instructions, it would, at least from Congress's perspective, be

19

"unjust" to penalize the agency for having done so. *See Kiareldeen v. Ashcroft*, 273 F.3d 542, 550-51 (3d Cir. 2001) (finding it "implausible that Congress intended to penalize the government for defending the constitutionality of its own enactments").

## CONCLUSION

For the foregoing reasons, the rehearing petition should be denied.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

THOMAS PULHAM
*s/ Jeffrey E. Sandberg*
JEFFREY E. SANDBERG
*Attorneys, Appellate Staff*
*Civil Division, Room 7214*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 532-4453*
*jeffrey.e.sandberg@usdoj.gov*

*Counsel for Defendants-Appellees*

JANUARY 2025

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limit of Federal Rule of

Appellate Procedure 40 because it contains 3,897 words.  This brief also

complies with the typeface and type-style requirements of Federal Rule of

Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for

Microsoft 365 in Calisto MT 14-point font, a proportionally spaced typeface.


 *s/ Jeffrey E. Sandberg*
Jeffrey E. Sandberg

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2025, I electronically filed the

foregoing response with the Clerk of Court for the United States Court of

Appeals for the Sixth Circuit by using the appellate CM/ECF system.  Service

will be accomplished by the appellate CM/ECF system.

*s/ Jeffrey E. Sandberg*

Jeffrey E. Sandberg